No. 19-2244

# In the United States Court of Appeals for the First Circuit

PAUL MARAVELIAS,

*Plaintiff – Appellant*

v.

JOHN J. COUGHLIN, Senior Judge, 10th Circuit Court - District Division, in his individual and official capacity; GORDON J. MACDONALD, New Hampshire Attorney General; PATRICIA G. CONWAY, Rockingham County Attorney, in her official capacity; TOWN OF WINDHAM, NH; GERALD S. LEWIS, Chief of Police, Town of Windham, in his official capacity, WINDHAM POLICE DEPARTMENT,

*Defendants – Appellees*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF NEW HAMPSHIRE CASE NO 1:19-CV-00143(SM)

## APPENDIX TO APPELLANT'S BRIEF

PAUL J. MARAVELIAS
34 Mockingbird Hill Rd
Windham, NH 03087
*paul@paulmarv.com*
603-475-3305

May 13th, 2020

# TABLE OF CONTENTS

NH Circuit Court Order Dated 3/1/20 Indicating 2/4/20 Expiration Of State Restraining Order ................................................................... 1

NHSC Final Order Dated 1/16/19 in The "2018 NHSC Appeal" (No. 2018-0483) (Distrct ECF Doc #26-1) ............................................. 2

Maravelias 5/31/19 Rule 7 Notice of Mandatory Appeal Initating The Subsequent "2019 NHSC Appeal" (District ECF Doc #33-2) .................... 13

NHSC Docket Report of The "2018 NHSC Appeal" (No. 2018-0483) Showing 2/21/19 Date of Mandate (District ECF Doc #33-3) .................... 23

Excerpted Pages 11 – 12, 18 of Appendix to Maravelias's Brief in The "2018 NHSC Appeal" (Case No. 2018-0483) (District ECF Doc #33-4) ......................................................................................... 24

Excerpted Pages 12 – 29 of Maravelias's Brief in The "2018 NHSC Appeal" (Case No. 2018-0483) (ECF Doc #26-3) ....................................... 27

Excerpted Pages 1, 27 – 33 of Maravelias's 6/3/19 Memorandum in Support of Opposition to Rule 12(b)(1) Motion to Dimiss in the District Court To Show Issue Was Raised (District ECF Doc #33-1) ..................... 45

2/11/19 District Court Order (*McAuliffe*, J.) Denying Motion for Temporary Restraining Order (District ECF Doc #4) .................................. 53

Maravelias's Dismissed Amended Complaint (ECF Doc #22) and Exhibits ....................................................................................... 55

## CERTIFICATE OF SERVICE

I, Paul Maravelias, being a registered electronic filer in the Court's ECF system, certify that on this date an electronic original copy of the within Appellant's Appendix is being filed through the Court's electronic-filing system pursuant to <u>Fed. R. App. Proc</u>. 25(a)(B)(ii)  and <u>Local Rule</u> 25.0 and, further stating pursuant to <u>Fed. R. App. Proc.</u> 25(d)(1)(B), that the following registered electronic service contacts of counsel of record for defendants are being electronically served thereby:

**Nancy J. Smith, Esq.**
*Counsel for Defendant John J. Coughlin*
NH Attorney General's Office (Civil)
Civil Bureau
33 Capitol St
Concord, NH 03301−6397
603 271−3650
Email: <u>nancy.smith@doj.nh.gov</u>

**Samuel R.V. Garland, Esq.**
*Counsel for Defendant New Hampshire Attorney General*
NH Attorney General's Office (Civil)
Civil Bureau
33 Capitol St
Concord, NH 03301−6397
603 271−3650
Email: <u>samuel.garland@doj.nh.gov</u>

**Anthony Galdieri, Esq.**
*Counsel for Defendant New Hampshire Attorney General*
Office of the Attorney General (NH)
Civil Bureau
33 Capitol St
Concord, NH 03301−6397
603 271−1214
Email: <u>anthony.galdieri@doj.nh.gov</u>

**Christopher Cole, Esq.**
*Counsel for Defendant Patricia G. Conway*
Sheehan Phinney Bass & Green PA
1000 Elm St
PO Box 3701
Manchester, NH 03105−3701
603 627−8223
Email: <u>ccole@sheehan.com</u>

**Eric Alexander Maher, Esq.**
*Counsel for the Windham*
*Defendants, Gerald S. Lewis, Chief of*
*Police, and Town of Windham ex rel.*
*Windham Police Department*
Donahue Tucker & Ciandella PLLC
16 Windsor Lane
Exeter, NH 03833
603 778−0686
Fax: 603 772−4454
Email: emaher@dtclawyers.com

Dated: May 13th, 2020

/s/ Paul J. Maravelias

Paul J. Maravelias
34 Mockingbird Hill Road
Windham, New Hampshire
03087
paul@paulmarv.com
(603) 475-3305

# THE STATE OF NEW HAMPSHIRE
## JUDICIAL BRANCH
### NH CIRCUIT COURT

10th Circuit - District Division - Derry
10 Courthouse Lane
Derry NH 03038

Telephone:1-855-212-1234
TTY/TDD Relay: (800) 735-2964
http://www.courts.state.nh.us

## ORDER ON MOTION FOR RETURN OF FIREARMS AND/OR WEAPONS PERMITS
### Pursuant to RSA 633:3-a

Case Name:  **Christina DePamphilis v. Paul Maravelias**    PNO: <u>4731620124</u>
Case Number:  **473-2016-CV-00124**

A Stalking Protective Order was issued on December 28, 2016 against the defendant, Paul Maravelias, in which firearms (including ammunition and/or a weapons permit) were seized.  The Stalking Protective Order was dismissed as of February 04, 2020 by court order.

At a hearing on March 02, 2020, where the plaintiff and State were noticed and provided the opportunity to appear, the defendant under oath stated that no reason exists as of the date of hearing to prevent the return of firearms and ammunition.

The defendant has completed a Motion for Return of Firearms and Ammunition pursuant to RSA 633:3-a.  The New Hampshire Department of Safety, which maintains the State Protective Order Registry, and accesses the NCIC and NICS systems, has conducted the necessary criminal records checks and has:

☒ **Found no record** that would preclude the return of firearms and ammunition and therefore the Motion to Return Firearms and Ammunition is GRANTED.

OR

☐ **Found** a record that precludes the return of firearms and ammunition and therefore the Motion to Return Firearms and Ammunition is DENIED.

**Recommended:**

_____
Date

_____
Signature of Marital Master

_____
Printed Name of Marital Master

**So Ordered:**
I hereby certify that I have read the recommendation(s) and agree that, to the extent the marital master/judicial referee/hearing officer has made factual findings, she/he has applied the correct legal standard to the facts determined by the marital master/judicial referee/hearing officer.

<u>MARCH 2, 2020</u>
Date  NO OBJECTION FILED BY PLAINTIFF
OR POLICE DEPT. HOLDING FIREARM

_____
Signature of Judge

Kerry P. Steckowych
Printed Name of Judge

NHJB-2806-DFS (08/20/2014)
**Appendix Page 01 of 117**

# THE STATE OF NEW HAMPSHIRE

# SUPREME COURT



**EXHIBIT A**

## In Case No. 2018-0483, <u>Christina DePamphilis v. Paul Maravelias</u>, the court on January 16, 2019, issued the following order:

The plaintiff's motions to strike exhibits to the defendant's brief and reply brief are granted in part and denied in part. Pages 197 to 221 of the appendix to the defendant's brief and pages 1 to 23 of the appendix to the defendant's reply brief are stricken because they consist of pleadings and documents that were not submitted to the trial court in connection with the decisions that are the subject matter of the present appeal, but were instead submitted in related matters. <u>See</u> <u>Sup. Ct. R.</u> 13(1). The remaining relief requested by the plaintiff in both motions is denied.

Having considered the briefs and those portions of the record that are properly before us, we conclude that oral argument is unnecessary in this case. <u>See</u> <u>Sup. Ct. R.</u> 18(1). We affirm.

The defendant, Paul Maravelias, appeals orders of the Circuit Court (<u>Coughlin</u>, J.), following a three-day evidentiary hearing, extending a civil stalking final order of protection in favor of the plaintiff, Christina DePamphilis, for one year, <u>see</u> RSA 633:3-a, III-c (Supp. 2018), and modifying the order's terms. He argues that: (1) RSA 633:3-a, III-c is unconstitutional, both facially and as applied; (2) the decision to extend the protective order was unsupported by the evidence and an unsustainable exercise of discretion; (3) the trial court allegedly violated due process by not timely holding the hearing under RSA 633:3-a, III-c, not permitting him to record video of the plaintiff during her testimony, allowing the plaintiff to introduce certain photographs into evidence, and allegedly "ignoring" his motion to dismiss; (4) the trial court was biased against him; and (5) the trial court erred by modifying the protective order.

We address first the defendant's argument that the trial court failed to timely holding the hearing. We note that, beyond his offhand reference to due process, the defendant has not developed a due process argument with respect to the timeliness of the hearing under RSA 633:3-a, III-c. Accordingly, any such argument is waived. <u>See</u> <u>State v. Blackmer</u>, 149 N.H. 47, 49 (2003).

RSA 633:3-a, III-c provides a defendant with the right to a "hearing on the extension" of a protective order "to be held within 30 days of the extension." The record reflects that the plaintiff moved to extend the protective order on January 5, 2018, that the trial court extended the protective order on January

12, 2018, and that, following the defendant's objection, the court scheduled a
hearing for February 15, 2018.  According to the plaintiff, however, that
hearing did not go forward on the motion to extend, but instead went forward,
without objection, on a separate stalking petition that the defendant had
brought against the plaintiff's father, David DePamphilis (DePamphilis).  The
defendant asserts that he was not offered an opportunity to commence the
hearing on the motion to extend until February 20, 2018, an offer that he
apparently declined.  The hearing ultimately went forward over the course of
three days, May 3, May 4, and June 8, 2018, and the trial court granted the
motion to extend on June 15, 2018.  The defendant first raised his timeliness
objection in a motion for reconsideration filed on June 25, 2018.

When the legislature has mandated a time limit for the holding of a
hearing "out of liberty interest concerns," "personal jurisdiction over a
defendant is lost, absent waiver, if the case is not heard within the statutory
period."  McCarthy v. Wheeler, 152 N.H. 643, 645 (2005) (emphasis added).  In
McCarthy, we held that a trial court's failure to comply with the time limits for
temporary and final domestic violence protective order hearings required
dismissal of any temporary orders issued and of the petition, unless the
defendant was responsible for the delays.  Id. at 646.  The defendant argues
that, because the hearing in this case was not held within thirty days of
January 12, 2018, the trial court necessarily lacked personal jurisdiction over
him, and he is now entitled to have the protective order vacated.

It is well established, however, that by participating in the merits of a
proceeding without first objecting to the trial court's lack of personal
jurisdiction, a defendant consents, and thereby waives any objection, to the
court's exercise of personal jurisdiction.  Compare Estate of Lunt v. Gaylor, 150
N.H. 96, 97-98 (2003) (defendant's motion to strike default based solely on
defective service of process did not address merits of the case so as to
constitute a waiver of personal jurisdiction), with Beggs v. Reading Company,
103 N.H. 156, 158 (1961) (defendant waived challenge to personal jurisdiction
by failing to timely move to dismiss and by participating in hearings relating to
merits of the case).  Unlike the defendant in McCarthy, who moved to dismiss
the domestic violence petition at the hearing due to the trial court's failure to
timely hold it, see McCarthy, 152 N.H. at 644, the defendant here fully
participated in a merits hearing lasting three days and resulting in a transcript
nearly 500 pages in length, without once objecting on timeliness grounds.
Under these circumstances, even if we were to assume that a failure to timely
hold the hearing under RSA 633:3-a, III-c results in the loss of personal
jurisdiction, the defendant's participation in the hearing, without objecting on
timeliness grounds, amounted to his voluntary submission to the trial court's
jurisdiction and, thus, to the waiver of the timeliness requirement.

We next address the defendant's challenges to the merits of the trial
court's decision to extend the protective order.  The trial court has discretion to

extend a civil stalking final order of protection, initially for one year and thereafter for periods of up to five years, if it finds "good cause" for the requested extension.  RSA 633:3-a, III-c; see MacPherson v. Weiner, 158 N.H. 6, 9 (2008).  In ruling on a motion to extend a protective order, the trial court is required to "review the [protective] order, and each renewal thereof and . . . [to] grant such relief as may be necessary to provide for the safety and well-being of the plaintiff."  RSA 633:3-a, III-c.

In MacPherson, we construed RSA 633:3-a, III-c to mean that "whether 'good cause' exists directly relates to the safety and well-being of the plaintiff." MacPherson, 158 N.H. at 10.  "Good cause" exists to extend a protective order, we held, if "the trial court determines that the circumstances are such that, without a protective order, the plaintiff's safety and well-being would be in jeopardy."  Id.  In applying this standard, the trial court is required to assess whether the current conditions are such that there is still concern for the safety and well-being of the plaintiff, and in so doing, to review the circumstances of the original petition and any violation of the protective order, taking into account any present and reasonable fear by the plaintiff.  Id.

"The trial court is in the best position to view the current circumstances, as well as the defendant's prior acts, and determine whether an extension is necessary for the safety and well-being of the plaintiff."  Id. at 11.  We will uphold the trial court's findings and rulings unless they lack evidentiary support or are tainted by error of law, id. at 10, mindful that it is for the trial court to accept or reject, in whole or in part, whatever evidence was presented, and that our role is not to determine whether we would have ruled differently, but whether a reasonable person could have reached the same decision as the trial court based upon the same evidence, Cook v. Sullivan, 149 N.H. 774, 780 (2003); see also MacPherson, 158 N.H. at 10.  We view the evidence in the light most favorable to the plaintiff.  Fisher v. Minichiello, 155 N.H. 188, 190 (2007).

At the outset, we note that the defendant, both on appeal and in the trial court, has repeatedly attacked the initial protective order as based upon alleged falsehoods testified to both by the plaintiff and DePamphilis.  The protective order is, however, a final judgment that we upheld following the defendant's appeal of it.  See DePamphilis v. Maravelias, No. 2017-0139, 2017 WL 3468651 (N.H. July 28, 2017).  The defendant is, therefore, precluded from challenging the trial court's determination that he stalked the plaintiff, or its findings of fact in granting the initial protective order.  See, e.g., Gray v. Kelly, 161 N.H. 160, 164 (2010).

The record establishes that the initial stalking petition was precipitated by the defendant's December 2016 attempted gift to the plaintiff, on her sixteenth birthday when she was a high school sophomore and he was a twenty-one-year-old college senior, of a new Maserati sports car, and by his contemporaneous profession of "love" for her.  In granting the protective order,

Case 1:19-cv-00143-SM Document 26-1    Filed 05/15/19 Page 4 of 12

the trial court found that the defendant had in fact been obsessed with the plaintiff from the time she was only eleven years old.  The trial court further found that the defendant had referred to sixteen as the "age of consent," and that when the plaintiff rejected the gift, he stated that he would continue to wait for her and would be back when she turned eighteen.  The trial court observed that the defendant continued to profess his love for the plaintiff in his testimony, and that his demeanor "demonstrated his obsession for the plaintiff, including his constant communication directly to the plaintiff commenting on her mannerisms and professing his love for her."  The trial court found that the defendant's "level of obsession and relentless pursuit of a girl beginning at the age of 11 or 12 gives rise to reasonable fear."  The protective order restrained the defendant from stalking or abusing the plaintiff or her family members, or from contacting her, directly or indirectly.

In March 2017, less than two months after the protective order had gone into effect, DePamphilis received an anonymous letter purporting to have been written by a "girl from Windham" who was a "friend" of the defendant.  The letter accused DePamphilis of allowing the plaintiff to have a "fling" and an alleged sexual relationship with a twenty-year-old man with whom the defendant had gone to high school.  The letter contained graphic allegations concerning the alleged sexual behavior and character of the alleged boyfriend, referred to DePamphilis as a "warped a**hole," "derelict father," and a "total f*cking liar," referred to the plaintiff's mother as DePamphilis's "EVIL B*TCH wife" and "sh*t wife," and referred to the plaintiff as a "spoiled nice-girl-turned-whore," a "whorish girl[]," a "sick bitch," and an "EVIL f*cking slut."  By contrast, the letter referred to the defendant as an "innocent gentleman," "the only guy who truly loved" the plaintiff, and a person who had waited five years, and had maintained his virginity, for the plaintiff.

The March 2017 letter expressed outrage that DePamphilis and the plaintiff had allegedly lied to obtain the protective order, that as a result of the order, the defendant's "property" had been seized by the police, and that the plaintiff's alleged boyfriend was almost the same age as the defendant.  The letter additionally claimed that the defendant had an audio recording that allegedly proved that DePamphilis and the plaintiff had lied, and accused the plaintiff of successfully excluding that recording from evidence in the stalking trial.  The record in fact establishes that, at the hearing on the initial stalking petition, the trial court excluded from evidence an audio recording that the defendant had surreptitiously made of the birthday encounter with the plaintiff on the basis that he had violated RSA 570-A:2 (Supp. 2018) in recording the encounter.  See RSA 570-A:6 (2001).  The record further establishes that the defendant subsequently pleaded guilty to violating RSA 570-A:2.

Finally, the March 2017 letter accused the plaintiff of consuming alcohol with older men.  Attached to the letter were photographs from the plaintiff's social media accounts that, according to the letter, depicted the plaintiff with

her alleged boyfriend, depicted the alleged boyfriend in the plaintiff's bedroom, and depicted the plaintiff consuming alcohol.  The letter "demand[ed]" that DePamphilis "not share or communicate any part of [it] to anyone else."

At the hearing on the motion to extend the protective order, the defendant claimed that he was not the March 2017 letter's author.  He readily admitted, however, that he had "aided" in its "composition," and that he had been aware that it had been sent to DePamphilis at the plaintiff's home.  Moreover, he created a webpage with the address, "https://davidtheliar.com/," to which he linked pleadings that included a copy of the March 2017 letter.  When either the plaintiff's name or DePamphilis's name is entered into the Google search engine, the webpage appears.

In April 2017, the Windham Police Department executed a search warrant in connection with its investigation of the defendant's violation of RSA 570-A:2.  During the search, police officers found, and photographed, several soft drink bottles bearing the plaintiff's name that the defendant had lined up on a desk.  Police officers additionally found, and photographed, a scripted quotation on the defendant's bedroom wall above his bed that matched an identical quotation on the plaintiff's bedroom wall.  During his testimony at the hearing on the motion to extend the protective order, the defendant claimed that he had placed the quotation on his bedroom wall merely as a "joke" for the benefit of his sister, who had once been the plaintiff's "best friend," and he admitted that the quotation had been there for some time prior to 2017.

On November 2, 2017, the defendant wrote a letter to counsel for the plaintiff in response to a request to take down the "David the Liar" webpage.  In the November letter, the defendant referred to the plaintiff as "[t]he Windham-gossip-object slut," "that ugly and disreputable whore," and a "pathetic 16 year-old delinquent," and asserted sexually-charged allegations concerning the plaintiff and her alleged boyfriend similar in content and tone to the allegations in the March 2017 letter.  He further asserted that he "possess[ed] troves of reputationally damaging information and assorted digital artifacts of [DePamphilis's] family members which [he had] not shared," and threatened that if DePamphilis pursued a defamation case against him, he would "go nuclear and utterly destroy [the plaintiff's] academic and professional future by publishing these embarrassing artifacts on the internet."  At the hearing on the motion to extend the protective order, the defendant testified that by this statement, he was referring to "artifacts that [he possessed] from [the plaintiff's] social media" accounts that, he claimed, put her in compromising positions.  The defendant readily admitted that, in collecting such artifacts, he was "very . . . preoccupied with what [the plaintiff] does."

Approximately one month later, the defendant wrote an e-mail to four teachers at the plaintiff's high school "demand[ing]" that she be dismissed from the school's National Honor Society chapter.  In the e-mail, the defendant

5

accused the plaintiff of committing perjury at the hearing on her stalking
petition, causing him to lose his firearms, and claimed that she had engaged in
other crimes as well.  He called the plaintiff "a delusional criminal," accused
her of being "an out-of-control abuser of alcohol and psychoactive substances,"
and stated that if the teachers "need[ed] documentation on [the plaintiff's]
addictive marijuana habits," he would "happily send further documentation."
He "welcomed" the sharing of the e-mail with others and invited the teachers to
"contact [him] for further info regarding the dismissal," but he requested that
the e-mail not be "relay[ed] . . . in any manner . . . to [the plaintiff] lest she and
her vindictive father have [him] arrested" for violating the protective order.

    At the hearing on the motion to extend the protective order, the plaintiff
testified that she continued to fear the defendant because, despite the
existence of the protective order, he was attempting to harm her.  She had
surmised that the defendant was behind the March 2017 letter because she
"could not fathom someone writing that other than" the defendant, and was
"scared of the anger and tone that was in th[e] letter."  She further explained
that the defendant could not have obtained the photographs attached to the
March 2017 letter unless he had obtained nonpublic information about her
social media account, and that upon learning that the defendant was accessing
her social media photographs, she felt "[h]opeless," and as though she had lost
her "private life."  The plaintiff felt intimidated by the defendant's threat to
publish "troves of reputationally damaging information and assorted digital
artifacts" concerning her, and was concerned that his obsession had gone
"from a love obsession to now a hate obsession."  The defendant's attempt to
have the plaintiff expelled from the National Honor Society, she explained,
further caused her to "feel hopeless" because, if the defendant's claims were
believed, her "future could change because of him."  She expressed fear "that
he would continue doing this for the rest of [her] life," testifying that he was
"taking everything [she had] built for [her]self and trying to tear it to pieces and
trying to have other people believe that as well."  She expressed concern that,
in the absence of a protective order, the defendant would "go further than just
send letters to my school to try to get me kicked off the National Honor Society.
I believe he's going to try to ruin my chances of college, ruin my chances of
having a career, . . . or try[] to ruin relationships in the future."  She observed
that "just with getting a boyfriend flipped a switch."

    During his cross-examination of the plaintiff, the defendant introduced a
photograph and a video of the plaintiff that he had possessed from when she
was only twelve years old, both of which he claimed contradicted her
testimony.  With respect to the photograph, the defendant suggested that it
showed her in a "flirtatious pose" with him, and that her leg was "scantily
clad."  The plaintiff testified that she had not been aware at the time of the
picture or video that she was being photographed.  At another point during the
plaintiff's cross-examination, the defendant implied, when he thought she had

**Appendix Page 07 of 117**

misunderstood a question, that she must have been intoxicated, drawing a
pointed reprimand from the trial court.

During his own testimony, the defendant referred to the plaintiff as a
"delusional criminal," a "slandering, dissolute criminal," a "perjuring,
fornicating daughter," and a "lying pig." He additionally testified that the
plaintiff "deserved" to be called the terms he had referred to her as in his
November 2, 2017 letter to her attorney, such as "slut" and "ugly and
disreputable whore," that such language was "justified, merited, and
appropriate," and that he was happy that she had seen the letter. With respect
to his threat to "go nuclear and utterly destroy [the plaintiff's] academic and
professional future," the defendant testified that he "still [had not] made good
on [the] threat," but that if the court did not "give [him] justice" and he was
"still branded a stalker" after the hearing, he would "combat that on the
internet, on YouTube." He admitted to using login credentials of other persons
to gain access to the plaintiff's social media accounts and take "screenshots"
from them, claiming that, even though the plaintiff had not granted him access
to the accounts, her "quasi-private" posts were necessarily "public."

In finding good cause for the extension, the trial court concluded that the
March 2017 letter that the defendant had aided in composing, the November 2,
2017 letter, the e-mail to the high school teachers, the soft drink bottles
bearing the plaintiff's name, and the scripted quotation on the defendant's
bedroom wall duplicating the quotation on the plaintiff's bedroom wall
"demonstrate[d] a strange, perverse and unhealthy obsession . . . that appears
to have begun when the [plaintiff] was approximately 11-12 years old . . . and
continues to this day." The trial court further found that the defendant's
conduct was "without any legitimate purpose and for the sole purpose of
harassing and stalking the [plaintiff]," that the plaintiff had a "reasonable basis
to fear for her personal safety and that of her family members," and that she
"does, in fact, so fear for her personal safety and that of her family members."

Upon this record, we conclude that the trial court's findings of fact were
supported by the evidence. Viewed in the plaintiff's favor, the evidence
establishes that, after having been found to have stalked the plaintiff, a minor
who was still in high school, and after having been restrained from further
stalking her or members of her family, the defendant: (1) accessed the minor's
social media accounts, to which she had not granted him access, by using the
login credentials of other persons; (2) learned that the minor was in a
relationship with a man whom he knew, and believed that the relationship was
sexual in nature; (3) collected "troves" of digital images from the social media
accounts that he believed were "reputationally damaging"; (4) "aided" in writing
a letter to the minor's father that accused the father of allowing the minor to
engage in a sexual relationship with an adult, accused the minor of being a
"whore" and a "slut" and engaging in underage drinking, and attached
photographs from the minor's "quasi-private" social media accounts; (5) wrote a

7

letter to the minor's attorney accusing the minor, in highly profane terms, of having a sexual relationship with the adult, calling her a "slut" and "disreputable whore," and threatening to publish, online, "troves of reputationally damaging images" from her social media accounts; (6) wrote an e-mail to teachers at the minor's high school accusing her of being a criminal, engaging in underage drinking, and abusing drugs, offering to share evidence of her drug use, demanding that she be expelled from the National Honor Society, and encouraging the teachers to share the e-mail with other teachers; (7) created a webpage, to which a "Google" search of the minor's name directs, on which he linked digital images of the letters and e-mail; (8) referred to the minor, in open court, as a "criminal," "fornicating daughter," and "lying pig," and insinuated that she was intoxicated; (9) threatened, in open court, to publish the "troves of reputationally damaging" images from the minor's social media accounts if the trial court extended the order; and (10) admitted, in open court, that he is "very . . . preoccupied with what [the minor] does."

Based upon this course of conduct, the trial court reasonably found that the defendant's "sole purpose" in writing, or aiding in writing, the letters and e-mail was to further stalk and harass the plaintiff. Cf. State v. Craig, 167 N.H. 361, 377 (2015) (finding that by posting statements to his own Facebook page directed to the victim under circumstances in which he knew the victim was likely to view the statements, the defendant had indirectly contacted the victim in violation of restraining order). Moreover, in view of the fact that the defendant engaged in this conduct while already subject to a court order specifically restraining him from stalking or abusing the plaintiff or members of her family, the trial court's finding that the plaintiff has a "reasonable basis to fear for her personal safety and that of her family members" is likewise reasonable. Under these circumstances, the trial court reasonably could have determined that, without a protective order, the plaintiff's safety and well-being would be in jeopardy. MacPherson, 158 N.H. at 10. Accordingly, the trial court's determination that good cause exists to extend the protective order was neither lacking in evidentiary support nor tainted by error of law, and its decision to extend the order was well within its discretion. Id.

We next address the defendant's constitutional challenges to RSA 633:3-a, III-c. The defendant argues that the "safety and well-being" language of RSA 633:3-a, III-c is facially overbroad and unconstitutional as applied to him for purposes of the First Amendment to the United States Constitution and Part I, Article 22 of the New Hampshire Constitution. Specifically, he argues that the term "well-being" is significantly broader than "safety," and may encompass a person's state of comfort, health, or happiness. He further argues that protecting a stalking victim's "well-being," in this context, may implicate a stalking defendant's constitutionally-protected speech, and that because, he claims, the March 2017 letter, the November 2, 2017 letter, and the e-mail to the plaintiff's high school teachers each contained or constituted his protected speech, the statute is unconstitutionally overbroad both facially and as applied

to him.  He further argues that the phrase "safety and well-being" is "unintelligible" and "so loosely constrained" as to invite "arbitrary, discriminatory enforcement" and, thus, that it is unconstitutionally vague.  The plaintiff counters, in part, that these arguments are not preserved.

It is the defendant's burden, as the appealing party, to establish that he preserved his appellate arguments.  See Bean v. Red Oak Prop. Mgmt., 151 N.H. 248, 250 (2004).  The purpose of the preservation requirement is to afford the trial court an opportunity to address the arguments and correct any errors it may have made before the arguments are presented for appellate review.  State v. Mouser, 168 N.H. 19, 26 (2015).  An appealing party does not satisfy this burden merely by raising an issue generally in the trial court, and then developing on appeal an entirely new argument in support of that issue that the appealing party did not develop in the trial court.  See id. at 26-28.

To prevail on a facial challenge to a statute on free speech grounds under the State or Federal Constitution, the defendant must establish that either: (1) no set of circumstances exists under which the statute would be valid; or (2) a substantial number of the statute's applications are unconstitutional in relation to its plainly legitimate sweep.  Doyle v. Comm'r, N.H. Dep't of Resources & Economic Dev., 163 N.H. 215, 220-21 (2012).  To establish that a statute is unconstitutionally vague, the defendant must show that it either: (1) fails to give persons of ordinary intelligence a reasonable opportunity to understand what it prohibits; or (2) authorizes or encourages arbitrary and discriminatory enforcement.  MacPherson, 158 N.H. at 11.

In this case, on multiple occasions at trial, the defendant took the position that the conduct identified in the plaintiff's motion to extend the protective order could not serve as the basis for extending the order because it constituted protected speech under the First Amendment.  During his closing argument, the trial court asked the defendant to "reconcile [his] claim for protected speech versus the stalking statute."  In his motion for reconsideration, the defendant argued that the trial court had "VIOLATE[D] [HIS] STATE AND FEDERAL CONSTITUTIONAL RIGHTS SINCE IT RELIE[D] UPON HIS TWO ACTS OF CONSTITUTIONALLY PROTECTED, LAWFUL SPEECH," namely, the November 2, 2017 letter to the plaintiff's attorney, and the e-mail to the plaintiff's high school teachers.

Although the defendant also asserted in his motion for reconsideration that "THE STALKING STATUTE IS FACIALLY INVALID AND/OR INVALID AS APPLIED ACCORDING TO THE STATUTORY OVERBREADTH AND/OR VAGUENESS DOCTRINES, AS THE COURT BASELESSLY FOUND LAWFUL SPEECH TO THIRD PARTIES TO CAUSE 'REASONABLE FEAR' AND THREATEN [THE PLAINTIFF'S] 'SAFETY AND WELL-BEING,'" he did not develop these arguments in the trial court.  Indeed, the defendant did not identify which language in the statute he believed to be vague, proffer his

9

interpretation of "safety and well-being" that serves as the foundation for his constitutional arguments in his brief, or otherwise argue how the statute was overbroad or vague. In contrast to the single passing reference to the "statutory overbreadth and/or vagueness doctrines" in his motion for reconsideration, the defendant's constitutional arguments on appeal consist of fourteen pages of statutory and constitutional analysis.

Under these circumstances, we conclude that the defendant's facial-overbreadth and void-for-vagueness arguments are not preserved. By failing to develop these arguments, either factually or legally, in the trial court, the defendant effectively deprived the trial court of an opportunity to correct its alleged error in the first instance. See Mouser, 168 N.H. at 28; cf. State v. Bradberry, 129 N.H. 68, 81 (1986) (Batchelder, J., concurring) (observing that "[a]dvocacy consists of something more than citation or incantation," and that "mere passing reference to an issue does not suffice to present that issue for appellate adjudication").

We agree with the defendant, however, that by arguing at trial that the conduct identified in the motion to extend the protective order — the March 2017 letter, the November 2, 2017 letter, and the e-mail to the high school teachers — constituted protected speech for which the protective order could not be extended, the defendant effectively raised an as-applied challenge. Moreover, the trial court's request that the defendant "reconcile [his] claim for protected speech versus the stalking statute" demonstrates that the trial court understood the defendant to be arguing that RSA 633:3-a, III-c could not be applied to the conduct identified in the motion to extend the protective order consistent with his free speech rights. Accordingly, we conclude that the defendant's as-applied constitutional challenge to RSA 633:3-a, III-c, at least insofar as he argues that his conduct constituted protected speech, is preserved. See State v. Wilson, 169 N.H. 755, 768-70 (2017) (finding that ambiguous arguments in trial court preserved as-applied vagueness challenge, but not facial vagueness challenge). We first address the argument under the State Constitution and rely on case law interpreting the Federal Constitution only to aid in our analysis. State v. Ball, 124 N.H. 226, 231-33 (1983).

Not all speech is constitutionally-protected. See, e.g., Beauharnais v. Illinois, 343 N.H. 250, 266 (1952). "When . . . an individual speaks to another person, whether through telephonic or other electronic means, not to communicate, but for other unjustifiable motives, that conduct is not speech protected by the First Amendment." Childs v. Ballou, 148 A.3d 291, 297 (Me. 2017) (quotation omitted). A defendant "has no First Amendment right to inflict unwanted and harassing contact on another person." State v. Mott, 692 A.2d 360, 365 (Vt. 1997). This is particularly the case when the defendant has already been found to have stalked the other person, and ordered not to stalk that person further. See State v. Heffron, 190 A.3d 232, 236 (Me. 2018); Childs, 148 A.3d at 297; Mott, 692 A.2d at 365.

In this case, the trial court supportably found, as discussed above, that the defendant either aided in writing or wrote the March 2017 letter, the November 2, 2017 letter, and the e-mail to the high school teachers "for the sole purpose of harassing and stalking the [plaintiff]." Under these circumstances, the letters and e-mail in question did not amount to protected speech for purposes of Part I, Article 22 of the State Constitution. See, e.g., Heffron, 190 A.3d at 236 (ruling that posts to defendant's Facebook page directed at person protected by a protective order violated the order and, thus, were not constitutionally protected); Childs, 148 A.3d at 299 (finding no First Amendment violation in the extension of a protective order based in part upon the defendant's repeated requests that the police conduct "well-being checks" on his child when the trial court found that such requests amounted to stalking of the child's mother in violation of the protective order). Because the Federal Constitution provides the defendant with no greater protection than does the State Constitution under these circumstances, see Childs, 148 A.3d at 299, we reach the same result under the Federal Constitution.

Each of the defendant's remaining arguments is not sufficiently developed to warrant further review. See Blackmer, 149 N.H. at 49. We note, however, that to the extent the defendant suggests that he had an absolute right to record video of the plaintiff under District Division Rule 1.4, Rule 1.4 contemplates that the trial court may limit a party's ability to record the proceedings. See Dist. Div. R. 1.4(f); see also Dist. Div. R. 1.1 (trial court may waive application of any rule for good cause and as justice may require). Here, the trial court was well within its discretion to prohibit the defendant from recording video images of the minor victim of his stalking, about whom he had already threatened to publish "troves of reputationally damaging information and assorted digital artifacts" online.

We further note that, to the extent the defendant argues that the trial court was biased, we have reviewed the record in this case, and can find no basis upon which a reasonable person would have questioned Judge Coughlin's impartiality, or any evidence that any of the factors that would have per se disqualified Judge Coughlin was present. See State v. Bader, 148 N.H. 265, 268-71 (2002). The mere fact that the trial court issued decisions that were adverse to the defendant does not establish judicial bias. See id. at 271.

<u>Affirmed</u>.

Lynn, C.J., and Hicks, Bassett, and Hantz Marconi, JJ., concurred.

**Eileen Fox,**
**Clerk**

11

**EXHIBIT A**

"5/31/19 Notice of Appeal"
1:19-CV-00143(SM)
Mem. of Law in Support of
Plaintiff's 6/3/19 Opp. to Def.
MacDonald's MtD.

# THE STATE OF NEW HAMPSHIRE
## JUDICIAL BRANCH
http://www.courts.state.nh.us

## RULE 7 NOTICE OF MANDATORY APPEAL

This form should be used for an appeal from a final decision on the merits issued by a superior court or circuit court except for a decision from: (1) a post-conviction review proceeding; (2) a proceeding involving a collateral challenge to a conviction or sentence; (3) a sentence modification or suspension proceeding; (4) an imposition of sentence proceeding; (5) a parole revocation proceeding; (6) a probation revocation proceeding; (7) a landlord/tenant action or a possessory action filed under RSA chapter 540; (8) an order denying a motion to intervene; or (9) a domestic relations matter filed under RSA chapters 457 to 461-A other than an appeal from a final divorce decree or from a decree of legal separation.  (An appeal from a final divorce decree or from a decree of legal separation should be filed on this form.)

---

1.   COMPLETE CASE TITLE AND CASE NUMBERS IN TRIAL COURT

**Christina DePamphilis v. Paul Maravelias**

473-2016-CV-00124

---

2.   COURT APPEALED FROM AND NAME OF JUDGE(S) WHO ISSUED DECISION(S)

10th Circuit Court - District Division - Derry
Hon. Elizabeth M. Leonard

---

| 3A.  NAME AND MAILING ADDRESS OF APPEALING PARTY.  IF REPRESENTING SELF, PROVIDE E-MAIL ADDRESS AND TELEPHONE NUMBER | 3B.  NAME, FIRM NAME, MAILING ADDRESS, E-MAIL ADDRESS AND TELEPHONE NUMBER OF APPEALING PARTY'S COUNSEL |
|---|---|
| Paul Maravelias<br>34 Mockingbird Hill Rd<br>Windham, NH 03087<br><br>E-Mail address: **paul@paulmarv.com**<br>Telephone number: **(603) 475-3305** | E-Mail address: _____<br><br>Telephone number: _____ |
| 4A.  NAME AND MAILING ADDRESS OF OPPOSING PARTY. IF OPPOSING PARTY IS REPRESENTING SELF, PROVIDE E-MAIL ADDRESS AND TELEPHONE NUMBER | 4B.  NAME, FIRM NAME, MAILING ADDRESS, E-MAIL ADDRESS AND TELEPHONE NUMBER OF OPPOSING PARTY'S COUNSEL |
| Christina DePamphilis<br><br>E-Mail address: _____<br>Telephone number: _____ | Simon R. Brown, Esq.<br>Preti, Flaherty, Beliveau & Pachios, LLP<br>P.O. Box 1318<br>Concord, NH 03302<br><br>E-Mail address: **sbrown@preti.com**<br>Telephone number: **(603) 410-1500** |

<u>**RULE 7 NOTICE OF MANDATORY APPEAL**</u>

| 5.   NAMES OF ALL OTHER PARTIES AND COUNSEL IN TRIAL COURT |
| --- |
|   |

| 6.   DATE OF CLERK'S NOTICE OF DECISION OR SENTENCING.  ATTACH COPY OF NOTICE AND DECISION.<br><br>**<u>March 11th, 2019</u>**<br><br>DATE OF CLERK'S NOTICE OF DECISION ON POST-TRIAL MOTION, IF ANY. ATTACH COPY OF NOTICE AND DECISION.<br><br>**<u>May 21st, 2019</u>** | 7.   CRIMINAL CASES: DEFENDANT'S SENTENCE AND BAIL STATUS |
| --- | --- |

| 8.   APPELLATE DEFENDER REQUESTED?          ☐ YES      ☒ NO<br>IF YOUR ANSWER IS YES, YOU <u>MUST</u> CITE STATUTE OR OTHER LEGAL AUTHORITY UPON WHICH CRIMINAL LIABILITY WAS BASED AND ATTACH FINANCIAL AFFIDAVIT (OCC FORM 4) |
| --- |

| 9.   IS ANY PART OF CASE CONFIDENTIAL?          ☐ YES      ☒ NO<br>IF SO, IDENTIFY WHICH PART AND CITE AUTHORITY FOR CONFIDENTIALITY.<br>SEE SUPREME COURT RULE 12. |
| --- |

| 10. IF ANY PARTY IS A CORPORATION, LIST THE NAMES OF PARENTS, SUBSIDIARIES AND AFFILIATES. |
| --- |

| 11. DO YOU KNOW OF ANY REASON WHY ONE OR MORE OF THE SUPREME COURT JUSTICES WOULD BE DISQUALIFIED FROM THIS CASE?          ☐ YES      ☒ NO<br><br>IF YOUR ANSWER IS YES, YOU MUST FILE A MOTION FOR RECUSAL IN ACCORDANCE WITH SUPREME COURT RULE 21A. |
| --- |

| 12. IS A TRANSCRIPT OF TRIAL COURT PROCEEDINGS NECESSARY FOR THIS APPEAL?<br>☒ YES          ☐ NO<br><br>IF YOUR ANSWER IS YES, YOU <u>MUST</u> COMPLETE THE TRANSCRIPT ORDER FORM ON PAGE 4 OF THIS FORM. |
| --- |

**RULE 7 NOTICE OF MANDATORY APPEAL**

13. LIST SPECIFIC QUESTIONS TO BE RAISED ON APPEAL, EXPRESSED IN TERMS AND CIRCUMSTANCES OF THE CASE, BUT WITHOUT UNNECESSARY DETAIL. STATE EACH QUESTION IN A SEPARATELY NUMBERED PARAGRAPH. SEE SUPREME COURT RULE 16(3)(b).

1. Is RSA 633:3-a, III-c. unconstitutionally overbroad or void for vagueness on its face or as-applied to this case?

2. Compared to RSA 633:3-a, III-a, does the different and lower standard for extending stalking orders at RSA 633:3-a, III-c. violate substantive due process or constitutional equal protection rights?

3. Did the trial court violate Maravelias's procedural or substantive due process rights?

4. Was Maravelias prejudiced by inadequate notice as to the allegations the trial court was considering against him at the Hearing on plaintiff's motion to extend the stalking order?

5. Did the trial court afford Maravelias a fair and full opportunity to be heard on all his arguments and claims he wished to raise?

6. Did the trial court engage in unreasonable dilatory practices prejudicing Maravelias?

7. Did the trial court err in ignoring, or in tacitly denying by virtue of never ruling upon, Maravelias's post-trial Motion to Dismiss?

8. Did the trial court err when it refused to make a specific finding, upon defendant's request, regarding what "offensive" "public postings on the internet" caused it to grant the extension?

9. Did the trial court unsustainably exercise its discretion in granting the extension?

10. Were the facts of defendant's legitimate non-threatening expressive speech in public relied upon by the trial court sufficient to form the basis for its finding there was "good cause" concern for plaintiff's "safety or well-being" to warrant stalking order extension?

11. Given Christina DePamphilis's history of mid-order incitative harassment against Maravelias, did the trial court's findings support the conclusion that the defendant's conduct would cause a reasonable person "ongoing" "fear for her safety"?

12. Where the trial court failed even to identify the correct version of its own summer 2018 "extended terms" in effect, did it unsustainably exercise discretion in continuing them?

13. Did the trial court violate Maravelias's state or federal constitutional rights by re-imposing the summer 2018 "extended terms"?

14. Is this state appellate court an adequate, impartial forum granting Maravelias a fair and full opportunity to litigate his claims under the federal Constitution of the United States of America?

Case Name: Christina DePamphilis v. Paul Maravelias

RULE 7 NOTICE OF MANDATORY APPEAL

14. CERTIFICATIONS

I hereby certify that every issue specifically raised has been presented to the court below and has been properly preserved for appellate review by a contemporaneous objection or, where appropriate, by a properly filed pleading.

_____
Appealing Party or Counsel

I hereby certify that on or before the date below, copies of this notice of appeal were served on all parties to the case and were filed with the clerk of the court from which the appeal is taken in accordance with Rule 26(2).

**May 31st, 2019**
_____
Date

_____
Appealing Party or Counsel

<u>**RULE 7 NOTICE OF MANDATORY APPEAL**</u>

# TRANSCRIPT ORDER FORM

INSTRUCTIONS:
1.  If a transcript is necessary for your appeal, you <u>must</u> complete this form.
2.  List each portion of the proceedings that must be transcribed for appeal, e.g., entire trial (see Supreme Court Rule 15(3)), motion to suppress hearing, jury charge, etc., and provide information requested.
3.  Determine the amount of deposit required for each portion of the proceedings and the total deposit required for all portions listed.  Do <u>not</u> send the deposit to the Supreme Court.  You will receive an order from the Supreme Court notifying you of the deadline for paying the deposit amount to the court transcriber.  Failure to pay the deposit by the deadline may result in the dismissal of your appeal.
4.  The transcriber will produce a digitally-signed electronic version of the transcript for the Supreme Court, which will be the official record of the transcribed proceedings.  Parties will be provided with an electronic copy of the transcript in PDF-A format.  A paper copy of the transcript will also be prepared for the court.

| PROCEEDINGS TO BE TRANSCRIBED | | | | | |
|---|---|---|---|---|---|
| PROCEEDING DATE (List each day separately, e.g. 5/1/11; 5/2/11; 6/30/11) | TYPE OF PROCEEDING (Motion hearing, opening statement, trial day 2, etc.) | NAME OF JUDGE | LENGTH OF PROCEEDING (in .5 hour segments, e.g.,1.5 hours, 8 hours) | RATE (standard rate unless ordered by Supreme Court) | DEPOSIT |
| 2/12/2019 | DV/Stalking PO Extension Hearing | Leonard, Elizabeth M. | 3.5 hrs. | X $137.50 | $481.25 |
| | | | | **TOTAL DEPOSIT** | **$481.25** |

| PROCEEDINGS PREVIOUSLY TRANSCRIBED | | | | | |
|---|---|---|---|---|---|
| PROCEEDING DATE (List date of each transcript volume) | TYPE OF PROCEEDING (Motion hearing, opening statement, trial day 2, etc.) | NAME OF JUDGE | NAME OF TRANSCRIBER | DO ALL PARTIES HAVE COPY (YES OR NO) | DEPOSIT FOR ADDITIONAL COPIES |
| 1/5/2017 | DV/Stalking Final Hearing | Stephen, Robert S. | Sheri Chism (AVTranz) | ☒ Yes ☐ No | TBD |
| 1/12/2017 | DV/Stalking Final Hearing | Stephen, Robert S. | Brittany Donnell and Nancy Dewitz (AVTranz) | ☒ Yes ☐ No | TBD |
| 2/1/2017 | DV/Stalking Final Hearing | Stephen, Robert S. | Nancy Dewitz and Susan Leong (AVTranz) | ☒ Yes ☐ No | TBD |
| 5/3/2018 | DV/Stalking PO Extension Hearing | Coughlin, John J. | TreLinda Wilson and Maria Vondras (AVTranz) | ☒ Yes ☐ No | TBD |
| 5/4/2018 | DV/Stalking PO Extension Hearing | Coughlin, John J. | Jackie Goldsmith, Luci Clark, Catherine Gonzalez, and Carrie Clouse (AVTranz) | ☒ Yes ☐ No | TBD |
| 6/8/2018 | DV/Stalking PO Extension Hearing | Coughlin, John J. | Brenda Wakelin, Riva Portman, Katie Fuchs, Pessy Kaufman (AVTranz) | ☒ Yes ☐ No | TBD |

**NOTE:**  The deposit is an estimate of the transcript cost.  After the transcript has been completed, you will be required to pay an additional amount if the final cost of the transcript exceeds the deposit.  Any amount paid as a deposit in excess of the final cost will be refunded.  The transcript will not be released to the parties until the final cost of the transcript is paid in full.

Enclosed hereinafter (p. 7 – 10) pursuant to Supreme Court Rule 7(6)(A):

1. **(P. 7 – 8)** TRIAL COURT'S **3/8/19** ORDER/DECISION GRANTING STALKING ORDER EXTENSION

2. **(P. 9)** CLERK'S **3/11/19** NOTICE OF 3/8/18 DECISION

3. **(P. 10)** TRIAL COURT'S **4/30/19** DECISION AND CLERK'S **5/21/19** WRITTEN NOTICE THEREOF (COMBINED) DISPOSING OF POST-TRIAL MOTIONS

Case: 19-2244  Document: 00117589058  Page: 23  Date Filed: 05/13/2020  Entry ID: 6338605
Case Name:                    Christina DePamphilis v. Paul Maravelias

RULE 7 NOTICE OF MANDATORY APPEAL

# THE STATE OF NEW HAMPSHIRE

## JUDICIAL BRANCH

### NH CIRCUIT COURT

ROCKINGHAM COUNTY

10th CIRCUIT - DISTRICT DIVISION - DERRY

### Christina DePamphilis v. Paul Maravelias

### Case No. 473-2016-CV-00124

PNO: 473162012 4

### ORDER ON PLAINTIFF'S REQUEST FOR EXTENSION OF
### CIVIL STALKING FINAL ORDER OF PROTECTION

This matter was before the Court on February 12, 2019 for a hearing on Christina DePamphilis' Request for an Extension of Stalking Final Protective Order. Ms. DePamphilis appeared and was represented by counsel. Paul Maravelias appeared and was self-represented. The record was left open to allow Mr. Maravelias the opportunity to submit additional pleadings and Ms. DePamphilis to respond.

For purposes of granting an extension of a Stalking Final Protective Order, the question before the Court is whether there exists "good cause" for the requested extension. RSA 633:3-1, III-c; see MacPherson v. Weiner, 158 N.H. 6, 9 (2008). RSA 633:3-1, III-c provides that "the court shall review the order, and each renewal thereof and shall grant such relief as may be necessary to provide for the safety and well-being of the plaintiff." Such relief may include an extension of the order for periods up to 5 years." Id. The New Hampshire Supreme Court has construed RSA 633:3-1, III-c to mean that "whether 'good cause' exists directly relates to the safety and well-being of the plaintiff." MacPherson, 158 N.H. at 10. In making its determination, the Court is required to assess whether the current conditions are such that there is still concern for the safety and well-being of the plaintiff, including reviewing the circumstances of the original petition and any violation of the protective order, while taking into account any present in reasonable fear by the plaintiff. Id.

Having considered the verified pleadings and the credible testimony provided during the hearing, the Court determines that Ms. DePamphilis has sustained her burden of proof to warrant a one year extension of the Stalking Final Protective Order. In particular, the Court finds that Mr. Maravelias continued efforts at disparaging Ms. DePamphilis and her family by making offensive and hateful statements in public postings on the internet demonstrates that he continues to harbor hostility toward her and her family such that legitimate concerns for Ms. DePamphilis' safety and well-being continue to exist. The Court further finds that Ms. DePamphilis' fear for her safety and the safety of her family is on-going, credible and reasonable. The Court notes that as long as Mr. Maravelias continues to engage in this vile conduct that the Court will be hard-pressed not to grant further requests for extensions, including a five year extension as was requested by Ms. DePamphilis.

Having reviewed the current Civil Stalking Final Order of Protection dated February 7, 2017, the Court finds that modification is warranted. The Court modifies paragraphs 2, 5 and 12 of the Protective Order to provide that **"the defendant may enter upon Windham High School for legitimate and limited purposes, including exercising his right to vote and participating in public events. Under such circumstance, the defendant shall have no intentional contact with the plaintiff and shall not come within 25 feet of where she may be."** The Court denies Mr. Maravelias' request that the Court vacate the added restrictions that he shall not <u>knowingly</u> gain access to or possess the plaintiff's social media communications either directly or through a third party, shall not <u>knowingly</u> communicate

with the plaintiff's current or future academic providers <u>about her</u>, and shall not <u>knowingly</u> communicate with the plaintiff's current or future employers <u>about her</u>.  See Court Order dated August 7, 2018 granting Petitioner's Reply to Respondent's Objection to Motion for Modification of Stalking Final Order of Protection to Include Further Conditions (Index No. 42).  The Court finds that they are narrowly tailored and reasonably necessary to provide for the safety and well-being of the Ms. DePamphilis.  See RSA 633:3-a, III-c.

Accordingly, the Plaintiff's Request for an Extension is GRANTED for an additional one year and the Civil Stalking Final Order of Protection, as modified above, is extended until <u>February 4, 2020</u>.

**So Ordered.**

March 8, 2019
Date

Hon. Elizabeth M. Leonard

NHJB-2010-DFPS (11/01/2011)

# THE STATE OF NEW HAMPSHIRE
## JUDICIAL BRANCH
NH CIRCUIT COURT

10th Circuit - District Division - Derry
10 Courthouse Lane
Derry NH  03038

Telephone: 1-855-212-1234
TTY/TDD Relay: (800) 735-2964
http://www.courts.state.nh.us

March 11, 2019

**PAUL MARAVELIAS**
**34 MOCKINGBIRD HILL RD**
**WINDHAM NH  03087**

Case Name:   **Christina DePamphilis v. Paul Maravelias**
Case Number:   **473-2016-CV-00124**

Enclosed please find the following order:
*
Order on Plaintiff's Request for Extension of Civil Stalking Final Order of Protection (Narrative)
*
On March 8, 2019 Judge Elizabeth M. Leonard issued the following orders relative to:
*
Defendant's Verified Emergency Ex Parte Motion to Amend or Dismiss Stalking Order to Remedy
Voter Suppression Conspiracy Against Respondent
  "See Narrative Order dated 3/8/19 addressing Defendant's right to vote at Windham High School."
*
Defendant's Motion to Amend Stalking Final Order of Protection to Exclude Second-Amendment-
Protected Activity
  "Denied."
*
Defendant's Motion for Recusal and Reconsideration
  "Denied as moot in light of the matter being heard by a different judicial officer."

Robin E. Pinelle
Clerk of Court

(431585)

C: Simon Robert Brown, ESQ; Police Department

# THE STATE OF NEW HAMPSHIRE
## JUDICIAL BRANCH
### NH CIRCUIT COURT

10th Circuit - District Division - Derry
10 Courthouse Lane
Derry NH 03038

Telephone: 1-855-212-1234
TTY/TDD Relay: (800) 735-2964
http://www.courts.state.nh.us

May 21, 2019

**PAUL MARAVELIAS**
**34 MOCKINGBIRD HILL RD**
**WINDHAM NH 03087**

Case Name:   **Christina DePamphilis v. Paul Maravelias**
Case Number:   **473-2016-CV-00124**

On April 30, 2019 Judge Elizabeth M. Leonard issued the following Orders relative to:

**#85  Plaintiff's Verified Motion to Reconsidered**
"The Motion to Reconsider is granted to modify that Defendant may vote and/or attend his sister's graduation at Windham High School so long as Plaintiff is a student at the school.  The Motion is denied as to the remaining requested relief."

**#86  Defendant's Motion to Reconsider Denial of 12/10/18 Motion to Amend Stalking Final Order of Protection to Exclude Second-Amendment-Protected Activity**
"Having considered all the arguments & facts raised by the defendant, the motion is denied.  The Court finds that the facts support the exercise of discretion to prohibit the defendant's possession of firearms/ammunition while the stalking order is in effect."

**#87  Defendant's Verified Motion Reconsider 3/8/19 Order Granting Stalking Order Extension**
"Having considered the arguments raised in Defendant's Motions to Reconsider (Index #87, 88, 92) and Reply, the Court determines that it did not overlook or misapprehend any points of law or fact in granting the extension and therefore denies defendant's requested relief."

**#90  Defendant's Motion for Clarification**
"The Motion for Clarification is denied, however the Court notes that standards for granting a stalking petition and extending a stalking order are different."

**#91  Defendant's Motion to Strike**
"Denied."

**\*\*NOTE TO POLICE DEPT:  A copy of Plaintiff's Verified Motion to Reconsider (#85) is attached**

Robin E. Pinelle
Clerk of Court

(431585)

C: Simon Robert Brown, ESQ; Police Department

NHJB-2012-DFPS (07/01/2011)

# EXHIBIT B

**"NHSC Case Summary for Case No. 2018-0483"**
1:19-CV-00143(SM)
Mem. of Law in Support of
Plaintiff's 6/3/19 Opp. to Def.
MacDonald's MtD.

| | | | |
|---|---|---|---|
| Service Copy: correspondence addressed to Mr. MacDonald (Paul J. Maravelias) | 09/27/2018 | Misc. Documents | |
| Defendant's motion for further expedited briefing schedule and Rule 16(11) word limit increase (Paul Maravelias) | 10/15/2018 | Motion | |
| Transcripts filed (3 vols.): 5/3/2018, 5/4/2018, 6/8/2018; over 100 pages; complete | 10/18/2018 | Transcript | |
| Briefing: Defendant's brief is due November 1, 2018 and plaintiff's brief MOL is due November 21, 2018. Plaintiff's motion for further expedited briefing schedule and Rule 16(11) word limit increase granted in part and denied in part. | 10/24/2018 | Order | |
| Brief filed for the defendant (Paul J. Maravelias). 15 minute oral argument is requested | 11/01/2018 | Brief | |
| Service Copy: Defendant's correspondence sent to Attorney Brown (Paul J. Maravelias) | 11/06/2018 | Misc. Documents | |
| Service Copy: correspondence to Mr. Maravelias re service of brief (Simon R. Brown) | 11/07/2018 | Misc. Documents | |
| Plaintiff's motion to strike exhibits and argument presented in defendant's brief that are not part of the record (Simon R. Brown) | 11/21/2018 | Motion | |
| Brief of Christina DePamphilis filed (Simon R. Brown). Attorney Brown requests 15 minutes oral argument. | 11/21/2018 | Brief | |
| Defendant's objection to plaintiff's motion to strike exhibits and arguments presented in defendant's brief (Paul Maravelias) | 11/30/2018 | Objection | |
| Reply brief filed for the defendant (Paul Maravelias) | 12/03/2018 | Brief | |
| Plaintiff's motion to dismiss and strike exhibits and argument presented in defendant's reply brief that are not part of the record (Simon R. Brown) | 12/12/2018 | Motion | |
| Defendant's objection to appellee's motion to dismiss and strike exhibits and arguments presented in appellant's reply (Paul J. Maravelias) | 12/17/2018 | Objection | |
| Submitted On Briefs - Full Court | 01/15/2019 | Event | |
| Affirmed | 01/16/2019 | Final Orders | |
| Defendant's motion for reconsideration (Paul J. Maravelias) | 01/28/2019 | Motion | |
| Plaintiff's objection to defendant's motion for reconsideration (Simon R. Brown) | 02/05/2019 | Objection | |
| Motion for reconsideration Denied | 02/21/2019 | Order | |
| Mandate Issued | 02/21/2019 | Final Orders | |
| Plaintiffs' request for award of attorneys' fees (Simon R. Brown) | 03/22/2019 | Motion | |
| Defendant's motion to strike plaintiff's request for award of attorneys' fees (Paul Maravelias) | 04/01/2019 | Misc. Documents | |
| Defendant's objection to plaintiff's request for award of attorneys' fees (Paul Maravelias) | 04/01/2019 | Misc. Documents | |
| Defendant's motion for award of fees and costs (Paul Maravelias) | 04/01/2019 | Misc. Documents | |
| Appellee's Objection to Appellant's Motion for Award of Fees and Costs (Simon R. Brown) | 04/12/2019 | Objection | |

Case 1:19-cv-00143-SM    Document: 334    Filed 06/03/19    Page 16 of 70

On 6/21/17, the Plaintiff Christina DePamphilis pictured herself in the following post on her public social media making vulgar gestures against the Defendant, Paul Maravelias.

It was targeted against Maravelias, and its caption read "Did Dartmouth [Defendant's college] teach you how to do this 🖕" [Middle finger "emoji"].

This act of harassment was to taunt Maravelias that DePamphilis had successfully abused him with a falsified restraining order, and cruelly bait Maravelias into violating it.

The man on the right is Matthew LaLiberte, DePamphilis's boyfriend in his 20s.

Permalink for verification: http://bit.ly/2y0JFEF





In July of 2017, 16-year-old Christina DePamphilis pictured herself in this posting. She is evidently about to return home in her grey 2013 Jeep Wrangler (pictured in background) openly carrying hard liquor in left hand in her possession. "gn" stands for "good night", and the caption reads, "in need of walk of shame number 2 lmk".

The winter prior she complained about "fear" for "personal safety" while making false accusations of "stalking".



## STATEMENT OF THE CASE

*Overture*

   This appeal is a righteous young man's exasperated plea for justice.
Maravelias apologizes in advance to this Honorable Court for wherever he
may fail in this legal brief to restrain his understandable righteous
indignation. He recites here a breviloquent case-summary with the bare
minimum of necessary facts, relegating further facts into the following
section.

*DePamphilis's December 2016 Delusions*

   In December 2016, David DePamphilis got angry with Paul
Maravelias. Paul had asked-out David's daughter to dinner on 12/12/16.
(T27,276-277) Paul Maravelias never once spoke to or communicated with
her ever after that day. (T27,28,35-36,451:17-18) On 12/23/16, after 11
days of frightening, harassing conduct by David DePamphilis discussed in
the related case (2018-0376), Maravelias texted David DePamphilis to
"stop harassing [Maravelias's] parents please". (A197) As a result of this
text, David texted Paul's parents the same night, promising, "that's the last
straw". (A186,198) Five days thereafter, on 12/28/16, Maravelias was
served a Stalking Temporary Order of Protection. But DePamphilis's
*daughter Christina*, nominally, had filed a "stalking petition" against
Maravelias (473-2016-CV-124). Maravelias hadn't interacted with her once
since 12/12/16 weeks prior (T226:15,27,28,35-36,451:17-18), the first and
only time Maravelias expressed an interest in her.

### *The Legal Abuse Begins*

Outraged, Maravelias expedited the hearing and boldly appeared *pro se* as a legally untrained, falsely accused 21-year-old college student. (T64) His innocence and rhetorical skills were no match for the polished legal scheming of Jerome Blanchard, DePamphilis's first attorney-henchman.

### *Tyrant I: Robert S. Stephen*

The DePamphilis actors got their stalking order on 2/7/17. It was Judge **Robert S. Stephen** who granted this stalking petition against a dignified and level-headed gentleman named Paul Maravelias. (A40)

### *The Censored Exculpatory Audio Recording*

Maravelias happened to have a sentimental audio recording of his 12/12/16 dinner-date-proposal exchange, proving his gentlemanly verbal appropriateness. (T276;A98) After Christina DePamphilis lied under oath about what Maravelias had said, to make him sound like a "creepy" or socially deficient person, Maravelias was disallowed to play his exculpatory recording in court. (T277) Robert S. Stephen defied Maravelias's every vociferous assertion to the contrary, falsely claiming in his Orwellian Order that Maravelias had mentioned the "age of consent" while asking-out David's 16-year-old daughter! (A40)

### *The First Arrest*

David DePamphilis complained to the police about Maravelias's suppressed recording after abusing Maravelias with a falsified restraining order. Robert S. Stephen approved search warrants and Windham PD raided Maravelias's Windham home and Dartmouth dorm room on 4/6/17,

whisking-away all Maravelias's digital property *in toto* (cellphones, PCs, USB-drives, etc). The police-state arrested Maravelias on 6/13/17 for "wiretapping" (RSA 570-A): the crime of pressing a button on your smartphone <u>outdoors</u> to voice record yourself the first time you ask out a girl in your life, with the intention of sharing it with her, and later wanting to play it to disprove contemptible false accusations. (T43,443)

### The Futile Appeal

Maravelias was an economics major and a bright kid. But, he had no idea what "issue preservation" was. He didn't know he had 10 days to preserve legal arguments in a motion for reconsideration. (T63:25) Once he hired a top-notch attorney to appeal the ridiculous stalking order (2017-139), it was apparently too late. This Court was compelled to affirm, declining to review the appeal's substance because its arguments were unpreserved.

### The Second Arrest

Maravelias emailed his beloved Windham High School mentor and civics teacher, Mrs. Smith, on 12/10/17. (A91) Alas: Mrs. Smith runs the WHS National Honor Society chapter. Maravelias attached evidence of Christina DePamphilis's legal falsification and substance-abuse crimes, which disqualify her from ongoing NHS membership. (T419;A91-92) Now Greg Iworsky, the WHS WPD resource officer, had married Heather Newell, WPD's prosecutor. Heather and another small, third-rate WPD officer-tyrant caught wind of Maravelias's private email to a public employee. They pleasured themselves by arresting Maravelias on 12/15/17

for "stalking" DePamphilis's daughter, whom Maravelias hadn't seen for almost a year nor knew even still existed. (T331,336-337)

They threw Maravelias in jail, purposely on a Friday night. Maravelias had just bought his family a Christmas tree and was planning to decorate it with his two siblings. An obese fat-acceptance-feminist nurse at Rockingham County Jail forced Maravelias into solitary confinement after he politely mentioned he'd be doing a three-day fast until the Monday arraignment, so the jail didn't need to waste food he wouldn't eat. Rapists and murderers inside the same jail enjoyed a bed to sleep on that night. Heather Iworsky vitriolically slandered Maravelias at arraignment before Tyrant I. They held the bizarre, illogical charge over Maravelias for as long as they could, dropping it months thereafter in late May 2018. (T331,337,384:9-12;A37)

### The Extension

After repeated mid-order acts of cruel bullying, harassment, and indeed stalking against Paul Maravelias (T278-280,299,307) (*see also* 2018-0376), the relentless DePamphilis actors motioned the court on 1/5/18 to extend their precious "stalking order" another year to February 2019. (A72) Judge Sharon DeVries granted the preliminary extension on 1/12/18. (A10) The trial court scheduled a hearing for 2/15/18 on Maravelias's objection thereto, 34 days after 1/12/18, and actually gave Maravelias his first opportunity to proceed with the hearing on 2/20/18. (A222,151)

### Tyrant II: John J. Coughlin

There was in those days a judge named John J. Coughlin.

Now John was presiding at Derry, fulfilling the last-days of his career: for the extension case was transferred thither from Salem after Judge Stephen's recusal. A three-day hearing commenced 5/3/18 and finished 6/8/18. **Judge John J. Coughlin** granted the stalking order extension on 6/15/18. (A1)

*Coughlin's Career-Capstone Summer 2018 Orders against Maravelias*

It came to pass that John J. Coughlin authored a written finding with said Order. (A2) Before retiring on 9/5/18, Judge Coughlin also granted DePamphilis's post-trial motion requesting even more severe restrictions on Maravelias's public free-speech rights (A7), terrified that Maravelias could expose the character of David DePamphilis's perjuring (T275:25,370;A21,24,28,189,192,201), substance-abusing (T60,364,371-372,418,450;A18,84,167), bullying (T299:3,301:13,307:2-4,339,346-347,371,476,483;A11,13,43,118), harassing (T164:21, T299:3,482:25,485;A43,49,91), stalking (T70:10;A61-62,166), physically unrecognizable (T353-355;A46¶20), lying (T275:25,340:21,368:12,483:25;A62,91,187,189), law-breaking (T421:18,A167-196), "independent" (T74:14,233:8) daughter Christina.

This appeal follows.

## STATEMENT OF FACTS

David DePamphilis begat a daughter in 2000: Christina DePamphilis ("Plaintiff-Appellee"), a high school senior turning 18 in a few days.

Paul Maravelias ("Defendant-Appellant") is a 23-year-old author and recent college graduate who is presently employed as a software engineer. (A42) He's had an unusual experience stemming from the first time he ever asked a girl on a date. Maravelias does not drink alcohol, consume illegal drugs, or commit perjury to abuse those who showed him kindness and respect. (A43) He believes he differs from Christina DePamphilis in these regards. (A43)

*Social Pretext to December 2016*

Both parties are Windham residents and were good friends before David DePamphilis's direful December 2016 devolution into the legal abuser of Paul Maravelias. (T274,275;A98,102) David and his daughter came to Maravelias's house on 6/18/2016 for a family party. (T275:24,276) David was "smoking cigars" with Maravelias's dad (T38,39): this was the last time Maravelias saw Christina DePamphilis prior to the 12/12/16 dinner-invitation. During cross-examination, Christina struggled to justify her coming over Paul's house mere months before calling him a "stalker" with dramatic retellings of being "scared" by him since 2013. (T39)

*The December 2016 Origin of the Stalking Petition*

Maravelias needs not belabor the details of his 12/12/16 birthday-exchange with DePamphilis's daughter, by now reviewed *ad nauseum* in

both appellate cases. According to laborious design, Maravelias invited her to dinner with an outlandish sports-car, which she said was "very sweet".[2] (A98) But DePamphilis's wife clarified her daughter perceived Maravelias as "a nice friend". He left once rejected, saying, "I respect your feelings" and "have a beautiful Christmas". (T278:4;A98) <u>There was not a hint of impropriety, the slightest indication the daughter felt "scared", nor the most remote semblance of "stalking" whatsoever.</u> (A98,31) In fact, Christina DePamphilis had <u>invited</u> Maravelias back to her house on 12/12/16 for this interaction, after he first came to the door and her mommy was in the shower. (T157:21-158:12;A31) Maravelias, ever the gentleman, awaited Mrs. DePamphilis.

Nor does Maravelias re-explain the history of David DePamphilis's subsequent December 2016 course of explosive, threatening, harassing, profane, and frightening conduct against him and his parents – likewise detailed in the related appeal (*See* 2018-0376).

The undeniable fact is Paul Maravelias had a normal family friends relationship to Christina DePamphilis (T275) and transitory romantic attraction which manifested in a cute birthday dinner date proposal and ostentatious stunt with a fancy car. The undeniable fact is "she" filed a stalking petition 16 days after Maravelias's final contact with her, <u>after her</u>

---

[2]By 2018, DePamphilis falsely portrayed Maravelias as some "spoiled rich kid", and John Coughlin "ordered" Maravelias to pay his abuser "9,000 dollars" which Maravelias didn't "even have … in his bank account", still paying off "2016 taxes". (T332)

**Appendix Page 33 of 117**

<u>father was angered</u> by Maravelias's challenging David DePamphilis's emotionally and verbally abusive antagonism.

*Foolhardy Falsity: The Original Stalking Petition*

The stalking petition dreamed up a host of absurd, malicious dramatizations of history against Maravelias. He was falsely accused of having "grabbed [her] arm" at "cheer practice" three years prior in 2013 (A150). It is telling that even in David's December 2016 telephonic tirades, where he accused Maravelias to his face of everything short of raping the Sabine women, David never mentioned this alleged "arm-grabbing" incident with his daughter nor the word "stalking" whatsoever.

Appellant bores-not this Court by reviewing similar defamatory drivel from DePamphilis's original stalking petition. A neurotic admixture of [paraphrasing] "I think he hacked into my Twitter account" (T174:13), "he was looking at me in his backyard" (T185:11), "he tried to talk to me at the Turkey Trot once and I was scared" (A39) and similar cringeworthy absurdities sustained the witch-hunt against Maravelias, an innocent suitor.

*Judge Robert S. Stephen Slanders Maravelias a "Stalker"*

On 2/7/17, Judge **Robert S. Stephen** confirmed once-more the reputation he had already earned himself within the New Hampshire legal community is deserved. Stephen granted the stalking petition, issuing an Order against Maravelias scribbled in barely-legible chicken-scratching penmanship. (A40) Judge Stephen opened his Order accusing that the "Defendant has been obsessed with the Defendant". (A40)

PAUL MARAVELIAS — 34 MOCKINGBIRD HILL RD, WINDHAM, NH 03087

**Appendix Page 34 of 117**

After failing to remember way back from law school the word
"Plaintiff", Judge Stephen accused Maravelias's stalking course of conduct
was based in two acts: that Maravelias

1) "drove [David's daughter] home and attempted to drop the other
person off first" in 2013, and

2) "waited until she turned 16 which he referred to as the 'age of
consent' to her mother, offered [*sic*] her a brand new mazzaretti [*sic*]".
(A40)

**Paul Maravelias humbly demands this Court and anyone reading this
document meditate upon the disturbing fact that the above two reasons
are why a New Hampshire family court judge labeled Maravelias a
"stalker".**

In recklessly libeling Maravelias, Judge Stephen only memorialized his
own incompetence: in 2013, David DePamphilis himself had asked Paul
Maravelias to give his daughter a ride home from a restaurant they were at,
as a favor. (T286:21-13) If Paul Maravelias had truly been perceived as a
"stalker", David DePamphilis would not have explicitly consigned his own
daughter into Maravelias's vehicle, volunteering Maravelias to serve as Mr.
DePamphilis's own filial *spedizione* chauffeur! (T287)

Secondly, Maravelias never "referred" to the young woman's birthday
as her "age of consent".
(T101:20,370:11,484:5,484:12,487:4;A29,31,98,106,192) Only a perverse
tyrant fully divorced from the most elementary tenets of justice would dare

to judicially shove words into a good young man's mouth[3] never spoken, which said-young-man categorically denied ever speaking (T101:20,370:11,484:5,484:12,487:4), and for which he assertively offered indisputable physical evidence (his audio recording) as proof. Maravelias lawfully played this audio recording for his parents on 10/21/17 in Vermont; they testified in letters to the contents: that Maravelias never once said anything remotely close to the disturbing "age of consent" comment DePamphilis falsely accused. (A28-32) Further, the lie that Maravelias had said this appeared nowhere in the stalking petition. (T489:14,491:6,492:7) A stalking order thus exists against Maravelias because of a disprovable lie that wasn't even noticed in the petition.

*Hypocrisy and Harassment: Christina DePamphilis's Middle-Finger Post Against Maravelias with her New 21-Year-Old Boyfriend*

Having secured their falsified restraining order, the savage DePamphilis actors escalated their psychological terrorism against Paul Maravelias to a new level. On 6/19/17, Christina posted a picture on her public social-media showing her new college-age boyfriend Matthew LaLiberte making challenging comments against "P M". (T79-82;A13)

Then, on 6/21/17 at 9:13pm, she posted a picture showing David DePamphilis, herself, and her boyfriend standing together and middle-fingering the camera, with the caption, "Did Dartmouth teach you how to do this? [middle-finger emoji]" (T69,70,72-77;A11), which she confessed

---

[3] Hurtfully, Judge Stephen's libelous order-text in this regard appears as Mr. Maravelias's first public Google search result, being cited in this Court's 7/28/17 Order in 2017-0139

was obviously targeted at Maravelias. (T74,76) This was days after she got Maravelias arrested on 6/13/17 for trying to defend himself against her false stalking accusations with his censored cell-phone voice recording. (T349) She and her father were rubbing-in the all their legal abuse while taunting Maravelias with Christina's new 21-year-old (T146,147) boyfriend -- Maravelias's age -- endeavoring to create an even more provocative aspect of jealousy. (T476)

Weeks prior, Christina DePamphilis had whined under-oath she was "scared" of Maravelias and "afraid" "to set him off" -- that "it's like walking on eggshells with him" (T67:10-11) -- to get the stalking order she later unsuccessfully baited him into violating. (T232:10-13)

### Christina DePamphilis's "Tipsytina69" Activities: A Rare Flash of Honesty

In summer 2017, outraged female entities within the campus of Windham youth supplied Maravelias with Christina DePamphilis's postings on her legally-public Instagram account she named "tipsytina69", a reference to drunken oral intercourse. (T239:16,359) These exhibits were referenced frequently at hearing. They showed Christina DePamphilis was quite beyond her green-age of 16 years: she would alcoholically (T60,364;A18,167) and narcotically (T450:21;A167) intoxicate herself, and brag about how far she and her 21-year-old boyfriend would displace the bed during sexual intercourse, whereupon Christina visually emphasized in red ink that the intercourse kinetically translated their bed over two feet from the wall. (A221,159) Maravelias argued these posts contradicted the deceptive "young-and-innocent" optics DePamphilis had falsely conjured

against Maravelias to win a "stalking" order, that they undermine her dubious professions of "fear", and that great irony exists in light of older-Maravelias's comparatively rectitudinous lifestyle.

### *Liar Caught Red-Handed: Maravelias's May 2018 Cross-Examination of Christina DePamphilis*

Maravelias cross-examined DePamphilis at the 5/3/18 and 5/4/18 hearings.

On 5/3/18, Christina DePamphilis confessed that Maravelias has never attempted to interact with her since December 2016. (T27:18) Maravelias asked, "Please tell this Court the last time you were stalked by me." (T28:18-19) Christina memorably responded, "I continue to being [*sic*] stalked every day." (T28:20)

Christina said she believes Maravelias making any in-public comment she would consider defamatory is an instance of "stalking" her. (T34) When asked how she could possibly sustain her burden that Maravelias "threat[ens]" her "personal safety", she responded: "You just don't stop… [*pause*] you continue to… [*pause*] to send letters threatening to ruin my career", referencing Maravelias's single November 2017 reply to David DePamphilis's outrageous legal bluff-threat letter to Maravelias. (T46:22-24)

Paul Maravelias asked Christina DePamphilis: "Isn't there a difference between stalking, and people speaking their free minds about your actions and accusations against them?" (T57:16-18) Christina slipped and tellingly replied, "you can't do that when I have a stalking order against you."

(T57:19-20) Christina clarified Maravelias's third-party self-defensive speech-acts disagreeing with her stalking accusations are themselves further acts "stalking", because he is "further talking about me [her]". (T58)

Maravelias challenged David DePamphilis's daughter to name <u>one single incident</u> he had actually stalked her. (T59) She replied, "such as my eighth-grade graduation". (T59:14) Maravelias then asked if she considered his "casually coming up to [her] [at Maravelias's *sibling's* graduation] and saying 'hey, congratulations'" in 2015 to be "stalking". Christina DePamphilis failed to answer the question; she turned to the Court and defeatedly opined, "he has a way of misinterpretating [*sic*] situations". (T59:17)

Christina DePamphilis lied multiple times: *e.g.*, she first claimed she "was the only one" "who knew" her harassing 6/21/17 middle-fingers post was directed at Maravelias. (T72:16-17) Later, she admitted she "and [her] [five-years-older] boyfriend" also knew. (T79:23-24) Another lie about the post was noted: initially, she claimed it was just to "let [Maravelias] know" that she knew he was viewing her page. (T70:15) Then Maravelias pulled-out her 6/19/17 post which had *already* identified him. (T77:12-14,79:3-7,79:21-24)

<u>Some of Christina DePamphilis's vile lies were exposed spectacularly</u>. Maravelias played a cell-phone video for the trial court his younger sister happened to be taking at the 11/28/2013 Windham Turkey Trot walk-run event. Christina had alleged in her stalking petition and while testifying that Maravelias "came up to her" at this event and "tried to talk to [her]",

making her "scared". (T220:3-9;A38,39) Coincidentally, the video captured
this whole interaction[4]: Christina DePamphilis had actually noticed
Maravelias from across the crowd along with his sister, <u>walked over to him</u>
with a premeditated intention to find him shared by Maravelias's sister
(T215:15-17, Video 0:47-1:24), and <u>interrupted</u> Maravelias's conversation
with his friends, assertively exclaiming "Hi Paul!" (Video at 1:24)
Christina was even wearing a sweatshirt with the name of Maravelias's
college on it and tried to win his approval by boasting, "I'm promoting your
college!" (Video at 1:28) <u>Yet in her petition, this whole exchange was</u>
<u>dramatized into a delusional canard of *Maravelias* "stalking" *DePamphilis*</u>!
(A39)

*Christina DePamphilis's Inaffidable Imaginations*

In a frantic scurry of subsequent damage-control, Christina
DePamphilis further evidenced her lack of credibility – whether from lying
or deficient memory. She asserted Maravelias's sister had said the words
"will you come see him with me" in the video she'd just watched. (T222)
Maravelias corrected her, since his sister never spoke those words (Video at
0:47), but Christina DePamphilis was so confident in her false, revisionist
memory that she challenged Maravelias, "you can replay it". (T223)
Maravelias later argued that if she could "so extraordinarily contort and
misremember something that she observed five minutes prior, imagine, just
imagine [her stalking accusations from up to] three years prior". (T343:1-9)

---

[4] Appellant has uploaded the video to YouTube, currently in private (unlisted) mode, for this
Court to access: https://youtu.be/EAawoOcFGVg

The telling Turkey Trot video elicited another indication of the teenage-girl-Plaintiff's capacity for creative, reconstructive memory – the component of her falsity *not* begotten of willful lying. She was convicted Maravelias had mentioned somewhere in the record he "had a friend" take the 2013 Turkey-Trot video, which his sister incidentally happened to take. (T218,219) Maravelias later reminded he'd never said anything like this anywhere, despite Christina DePamphilis's steadfast certainty otherwise. (T341,342) That Christina DePamphilis testified falsely to a highly specific representation while firmly convicted of the truth thereof will be undeniable when she inevitably fails in her opposing brief to cite where in the "transcripts" Maravelias said that which she had a vivid though false memory of him saying. (T219)

Christina DePamphilis also testified she "has suspicions" Maravelias "flew a remote-controlled surveillance drone" to her "bedroom window" during the stalking order. (T171) Her basis was that, one night, she "was seeing lights in [her] window" around "12:30" (T171), but when she "would open the window … nothing was there" (T172). She believed since Maravelias "was the valedictorian" and "went to an Ivy League school" he could have been "smart" enough to do this (T173,175), although she never saw any such flying device (T181). She also checked to ensure Maravelias had not installed "very microscopic" "hidden cameras" in her bedroom. (T194)

PAUL MARAVELIAS – 34 MOCKINGBIRD HILL RD, WINDHAM, NH 03087

**Appendix Page 41 of 117**

*Motion to Extend Allegation #1: Maravelias Was Mean on 11/2/17 in
Replying to Attorney Brown's Threatening Letter*

DePamphilis's Motion to Extend the stalking order accurately alleged
Maravelias had made offensive communications to third-parties. (A72) In
replying to an outrageous legal threat by David DePamphilis, Maravelias
had responded to Attorney Brown that Christina was an "ugly and
disreputable whore". (T409;A48,89) Deterring a lawsuit, Maravelias
asserted his right to publicize Christina's social-media-documented acts of
lawlessness, which could "ruin her academic and professional career", if
David sued him. Despite DePamphilis further "pursuing Maravelias
legally", Maravelias never followed-through with the lawful retaliation he
mentioned only when provoked by DePamphilis's threatening letter.
(T415:7)

*Motion to Extend Allegation #2: Maravelias Wrote a Private Email to His
Own WHS Teacher*

As mentioned *supra*, Maravelias emailed on 12/10/17 his close mentor,
Mrs. Smith, who runs the NHS chapter. (A91) Maravelias CC'd three
others of his close mentors; he <u>did not</u> communicate to the Plaintiff, nor to
any of her friends or family members. (A91)

*Motion to Extend Allegation #3: Maravelias Had Communications with the
Author of a Nasty Letter Sent to David DePamphilis in March 2017*

Maravelias did not write the nasty March 2017 letter but "knew about
it". (T393;A17) A "girl from Windham" wrote David DePamphilis the
letter, purporting to be a "friend" of Maravelias. (A76) The author attacked
David DePamphilis for legally abusing Maravelias. (A76) In Maravelias's
impolite 11/2/17 response letter to Attorney Brown, Maravelias corrected

DePamphilis's false speculation that Maravelias was the author of the
March 2017 letter:

"Unlike the author, I had known in March that David's wild daughter had
already been fucked raw by the man in secret at David's beach house in February,
days before her 'confirmation mass' at my church." (A88)

In responding to Attorney Brown's vexatious legal threat, Maravelias's
words were unwise and regrettably blunt. However, they were both truthful
and notable in proving Maravelias did not write the nasty March letter – the
author of which forewarned of a *potential* sexual relationship as an
overarching theme of her letter. *I.e.*, the author was ignorant of what was
happening between DePamphilis's barely-16-year-old daughter and her
college-age boyfriend. If Maravelias had written this letter, surely he would
have alluded to this salacious gossip of which the author was apparently
unaware.

### *Maravelias's Self-Defense in the Extension Hearing*

Maravelias elucidated that none the motion-to-extend accusations, true
or false, pertained to "stalking" the Plaintiff. (T476) Maravelias testified a
confirmed trial-court-level clerical error had given him the false impression
the stalking order had been vacated, during which time Maravelias did not
contact the Plaintiff whatsoever. (T475) Maravelias had filed two trial-court
motions: 1) a wrongly-denied motion for discovery (A110), and 2) a motion
to dismiss (A107), given the original order's basis upon an unnoticed
allegation, arguing that due-process is again violated by extending such an
order. Judge Coughlin utterly ignored the motion to dismiss; he never

issued a ruling on it whatsoever, nor addressed its legal arguments anywhere. (A49-50)

*Judge John J. Coughlin's Orders*

On 6/15/18, after hearing all the facts propounded hereinabove, John Coughlin composed an Order extending the stalking order. The full libel-text of Judge Coughlin's emetic judicial terrorism is appended. (A2) Then DePamphilis motioned for extremified injunctive terms against Maravelias on 7/2/18. (A152) John Coughlin predictably scribbled-off his seven-word approval. (A7) Ostensibly insulted by Maravelias's ten-page Motion for Reconsideration, John Coughlin scribbled "denied" and retired on 9/5/18. (A3)

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW HAMPSHIRE

| | |
|---|---|
| PAUL MARAVELIAS, | ) |
| *Plaintiff,* | ) |
| v. | ) |
| JOHN J. COUGHLIN, in his individual and official capacities, GORDON J. MACDONALD, in his official capacity as Attorney General of New Hampshire, PATRICIA G. CONWAY, in her official capacity as Rockingham County Attorney, TOWN OF WINDHAM, *ex rel.* WINDHAM POLICE DEPARTMENT, and GERALD S. LEWIS, in his official capacity as Chief of Police. | ) ) ) ) ) ) ) ) ) ) |
| *Defendants.* | ) |

2019 JUN -3  P 12: 59

Civil No. 1:19-CV-143(SM)

JURY TRIAL DEMANDED

---

## MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S OPPOSITION TO GORDON J. MACDONALD'S MOTION TO DISMISS AMENDED COMPLAINT

NOW COMES Paul Maravelias ("Plaintiff") and respectfully submits the within Memorandum

of Law in support of his Objection to Defendant MacDonald's 5/17/19 Motion to Dismiss. Plaintiff

shows the *Rooker-Feldman* doctrine does not bar any of his claims as follows in this memorandum.

Dated: June 3rd, 2019

Respectfully submitted,

PAUL J. MARAVELIAS,

*in propria persona*

By: /s/ Paul J. Maravelias
Paul J. Maravelias
34 Mockingbird Hill Road
Windham, NH 03087
paul@paulmarv.com
603-475-3305

**HEARING REQUESTED**

56.     Rooker-Feldman does not apply where the underlying state judgment is void *ab initio*. *In re James*, 940 F.2d 46 (3d Cir. 1991). Although this suit does not even ask the Court to do so (*see supra*), federal district courts indeed "have the power to vacate … state court judgments that are considered void ab initio." *Id.* at *52. "Sound jurisprudential reasons underlie this concept. Because a void judgment is null and without effect, the vacating of such a judgment is merely a formality and does not intrude upon the notion of mutual respect in federal-state interests". *Id.*

57.     The distinction between an <u>erroneous</u> judgment and an extrajurisdictional <u>void</u> judgment is paramount. While even blatantly erroneous state judgments are preclusive under Rooker-Feldman, a void judgment "is one which, from its inception, was a complete nullity and without legal effect" and does not trigger the Rooker-Feldman bar. *Ibid.* (quoting *Lubben v. Selective Serv. Sys. Local Bd. No. 27*, 453 F.2d 645, 649 (1st Cir. 1972)).

i.     <u>The Rooker-Feldman Doctrine Has Never Negated Federal Jurisdiction Over Claims Challenging Extrajurisdictional State Judgments</u>

58.     As the Third Circuit explained in *James,* it exceeds the doctrine's rationale to handicap federal courts' ability to correct state court actions which are without jurisdiction and, as such, void *ab initio*. The history of the doctrine implies the same. In *Rooker* itself, the plaintiffs argued the state court did not have jurisdiction to issue the underlying judgment. The Supreme Court did not reject plaintiffs' legal argument that such a circumstance would not deprive federal courts of jurisdiction; the Court merely disagreed with plaintiffs' factual characterization of the underlying state judgment. "[P]arts of the bill speak of the judgment as given without jurisdiction and absolutely void: but this is merely mistaken characterization." *Rooker*, 263 U.S. at *416. The Supreme Court has subsequently reminded that, in *Rooker*, it "noted preliminarily that the state

**Appendix Page 46 of 117**  PAUL MARAVELIAS  —  34 MOCKINGBIRD HILL RD, WINDHAM, NH 03087

court had acted within its jurisdiction". *Exxon Mobil*, 544 U.S. at \*284. Where the state judgment

is credibly shown to be without jurisdiction, applying Rooker-Feldman is legal error.

> ii.   John J. Coughlin Granted The "Extended Terms" Without Any Statutory or
> Jurisdictional Authority to Exercise Discretion in the Matter

59.     Here, Defendant Coughlin enacted his "extended terms" in defiance of New

Hampshire statutory authority and in complete absence of jurisdiction. *See* Amended Complaint,

¶35, ¶124 – 129. This can be proven quite easily from the bare legal record alone.

60.     Prohibiting "possession" of anything (other than "firearms") is <u>not</u> one of the

specific, limited forms relief the New Hampshire legislature has enabled trial courts to grant as

part of civil protective orders. *See* RSA 173-B:5, I.; RSA 633:3-a, III-a. ("The <u>types of relief that

may be granted</u> … shall be the same as those set forth in RSA 173-B"); Amended Complaint,

¶126. Nor is "possession" listed anywhere in the exclusive "single acts" enumerated in RSA 633:3-

a, II.(a) for which the state may criminally enforce violations of such civil protective orders under

RSA 633:3-a, I.(c). Nor did Defendant Coughlin have any general equitable powers as the NH

Circuit Court is a court of limited jurisdiction. *Compare* RSA 481:1 (equitable powers reserved to

Superior Court) *with* RSA 502-A:14 (establishing Circuit Court's limited jurisdiction).

61.     Plaintiff anticipates that Defendants will argue that RSA 633:3-a, III-c. bestows

upon circuit court judges limitless jurisdiction to impose unfettered "extended terms" to such civil

protective orders, because it reads, "… [t]he court shall review the order … and shall grant such

relief as may be necessary to provide for the safety and well-being of the plaintiff." Were such an

argument to be valid, whether the "extended terms" violate the U.S Constitution would only

**Appendix Page 47 of 117**   PAUL MARAVELIAS  –  34 MOCKINGBIRD HILL RD, WINDHAM, NH 03087

determine whether they were legal error – but they would not be void *ab initio* (*i.e.*, without jurisdiction).

62.     The argument is meritless for two independent reasons. <u>First</u>, RSA 633:3-a, III-c.[6] controls temporal extensions/renewals of existing stalking protective orders <u>only</u>. Assuming the unqualified "shall grant such relief as may be necessary" language does grant jurisdiction to impose unlimited "relief", such a supercharging of the trial court's jurisdiction is circumscribed <u>solely</u> around the proceeding associated with a motion to extend an RSA 633:3-a civil stalking order – a circumstance the legislature has duly accompanied with certain extra due process protections (*e.g.*, a mandatory hearing) not available within general motions for relief during the pendency of a protective over. But here, Defendant Coughlin's 8/7/18 Order imposing the "extended terms" was <u>not</u> in connection with the prior 2018 extension request in said case, which was granted on 6/15/18 after a three-day Hearing. Rather, the "extended terms" were granted in response to a distinct 7/2/18 motion by DePamphilis <u>months after</u> she petitioned for a renewal of the protective order pursuant to RSA 633:3-a, III-c.

63.     <u>Second</u>, basic statutory interpretation necessitates that the "shall grant such relief as may be necessary" language <u>does not</u> grant jurisdiction, at any time, to enjoin unfettered terms against civil respondents. This language is subordinate to the controlling provision above at section III-a. that "[t]he <u>types of relief that may be granted</u> … <u>shall</u> be the same as those set forth in RSA 173-B". The legislature developed a rigorously specific listing of permissible forms of relief at

---

[6] "Any order under this section shall be for a fixed period of time not to exceed one year, but may be extended by order of the court upon a motion by the plaintiff, showing good cause, with notice to the defendant, for one year after the expiration of the first order and thereafter each extension may be for up to 5 years, upon the request of the plaintiff and at the discretion of the court. The court shall review the order, and each renewal thereof and shall grant such relief as may be necessary to provide for the safety and well-being of the plaintiff. …" *Id.*

PAUL MARAVELIAS  –  34 MOCKINGBIRD HILL RD, WINDHAM, NH 03087

RSA 173-B:5, I. for the exact purpose of preventing such anomalous atrocities as Defendant Coughlin's 8/7/18 Order.

64.     Even if said listing at RSA 173-B:5, I. were not exclusive, the statutory construction canon of *eiusdem generis* mandates that it cannot include the prohibition of "possession of [social media] communications". "This doctrine teaches that 'when a general term follows [] specific one[s], the general term should be understood as a reference to subjects akin to the one[s] with specific enumeration.'" *Brown v. United Airlines, Inc.*, 720 F.3d 60 (1st Cir. 2013) (quoting *Norfolk & W. Ry. Co. v. Am. Train Dispatchers' Ass'n*, 499 U.S. 117, 129, 111 S. Ct. 1156, 113 L. Ed. 2d 95 (1991)). The only valid prohibition against "possession" is of "firearms" – a deadly weapon.[7] As it goes it without saying, an inanimate digital screenshot of a vexatious litigant middle-fingering her legal abuse victim on the internet is not an object "akin" to a "firearm".

65.     Where a judge acts without jurisdiction, his order is void *ab initio*. *See e.g. United States v. Levin*, 186 F. Supp. 3d 26 (D. Mass. 2016). Accordingly, where Defendant Coughlin issued his 8/7/18 Order imposing the "extended terms" in total absence of jurisdiction, it has been null-and-void *ab initio*. Rooker-Feldman cannot bar the claims herein in such an event, regardless of any other traditional factors.

**F.     The "Extended Terms" Are Not Judicial**

66.     "Significantly, the Rooker-Feldman doctrine bars review only of those state court decisions that are judicial in nature." *Williams v. Individual Justices of the Supreme Judicial Court*, 245 F. Supp. 2d 221, LEXIS 2123 (D. Me. 2003) (quoting *Feldman*, 460 U.S. at 476.) "[I]t is a

---

[7] Even the statute's standalone "possession" prohibition against *firearms* is inapplicable to the underlying protective order here and only exists to comport with a specific federal statute, 18 U.S.C. § 922(g)(8), requiring it in some types of different intimate-partner restraining orders.

question of federal law whether 'a particular proceeding before another tribunal was truly judicial'

for purposes of ascertaining the jurisdiction of a federal court." *Feldman*, 460 U.S. at *476 n.13.

  i.   The "Extended Terms" Are Not The Product of Any "Judicial Inquiry"

67.   "A judicial inquiry investigates, declares and enforces liabilities as they stand on

present or past facts and under laws supposed already to exist. ... Legislation on the other hand

looks to the future and changes existing conditions by making a new rule to be applied thereafter

to all or some part of those subject to its power." *Feldman*, 460 U.S. 462 at *477 (quoting *Prentis*

*v. Atl. Coast Line Co.*, 211 U.S. 210, 29 S. Ct. 67 (1908)).

68.   As previously explained, there are no "laws" in existence granting a New

Hampshire civil restraining order petitioner the right to have arbitrary self-serving commandments

appended to his or her order of protection at a mere whim to repress their opponent's legal self-

defense. New Hampshire state law, RSA 173-B:5, I., specifies the narrow "types of relief" which

may be granted. DePamphilis's 7/2/18 motion to Defendant Coughlin did not cite one single

enumerated form of relief in RSA 173-B:5, I. authorizing the request. *See* ECF Doc #22,

Attachment 1. Defendant Coughlin's 8/7/18 Order cited no statutory, constitutional, precedential,

nor common-law authority for his act. He did not "investigate" nor "declare" the rights and

"liabilities" of the parties under extant "laws". The way the "extended terms" came into effect was

not "judicial" nor resembled any "judicial inquiry". Rather, Defendant Coughlin's palpably non-

judicial act was squarely legislative as he "[made] a new rule to be applied thereafter" which had

never formerly existed.

  ii.   The Legal Definition of a "Judgment" Isolates the "Extended Terms" from
       Rooker-Feldman's Reach

69.     *Exxon* reminds that only "state-court judgments" trigger the Rooker-Feldman doctrine. A "judgment" is "[t]he official and authentic decision of a court of justice upon the respective rights and claims of the parties to an action or suit therein litigated and submitted to its determination." *Donahue v. Connolly*, 890 F. Supp. 2d 173 (D. Mass. 2012) (quoting Black's Law Dictionary (4th ed. 1951) at *977). Consequently, Defendant Coughlin's shameful failure to conduct any "judicial inquiry" in relation to the "extended terms" separately disqualifies his 8/7/18 Order from constituting a "judgment" for Rooker-Feldman purposes. As DePamphilis did not occasion her request for the "extended terms" with any explicit claim to a defined legal "right", and as there indeed was no such "right" in existence, the resulting Order is not a legal "judgment".

70.     Likewise, when Maravelias claimed constitutional rights in response to DePamphilis's request (ECF Doc #22, Attachment 2), Defendant Coughlin proffered no "decision" thereupon. He simply ignored Maravelias's pleadings and constitutional arguments to scribble "granted". Even the slightest bit of effort (*e.g.*, quipping "the Court finds the modified terms are narrowly tailored and do not unreasonably chill Maravelias's protected activities") – no matter how legally erroneous – would have at least reined Defendant Coughlin's 8/7/18 Order into the realm of a "judgment", though erroneous. Defendant Coughlin made no such effort.

   iii. The Extrajurisdictional Etiology of the "Extended Terms" Alone Deprives Them of Judicial Nature

71.     "[T]he essence of a judicial act is the exercise of discretion or judgment." *Soares v. Brockton Credit Union (In re Soares)*, 107 F.3d 969 (1st Cir. 1997) (quoting Black's Law Dictionary 996 (6th ed. 1990) at *846). As there was no jurisdiction nor statutory authority available for Defendant Coughlin in which to grant the "extended terms" (*see supra*), there could be no "exercise of discretion" in weighing the sufficiency of the movant's legal claims against any

written rules, statutes, or laws by which said claims could have claimed relief. The "extended terms" could not be further from a legitimate "judicial inquiry" which *Feldman* held as prerequisite to applying the doctrine.

### III.   Plaintiff's Amended Complaint Alleges Injury and Constitutional Violations Separate From Any State Court Judgment, Though It Need Not

72.     As explained extensively hereinabove, Plaintiff could attack conflicting state court judgments from the 2018 protective order <u>without</u> implicating Rooker-Feldman since the instant federal suit here is <u>parallel</u>, not enacted after any "finality" of the ongoing state proceedings. However, as separate grounds, this action would elude Rooker-Feldman's reach regardless. Plaintiff credibly alleges state enforcement officials are threatening to enact enforcements of the "extended terms" which are, separately, 1) brought in bad-faith without any statutory authority in state law, lacking standing under RSA 633:3-a, I.(c), having no possibility of obtaining a valid conviction, and 2) injurious to Maravelias's federal constitutional rights. *See* Amended Complaint, ¶43 – 51, ¶63 – 73, ¶93 – 147.

73.     The injunctive relief sought, to enjoin the Defendant state officials from enacting their threatened unlawful criminal enforcements, does not require this Court to review the "extended terms" themselves.[8] *See Coles v. Granville*, 448 F.3d 853 (6th Cir. 2006) ("On appeal, the court first found that the Rooker-Feldman doctrine did not apply to the situation before the court, because the landowners were not complaining about the state court judgment *per se*, but rather the agency's interpretation thereof.") Likewise, Plaintiff's Amended Complaint complains

---

[8] *E.g.*, said terms could, in theory, be validly enforced through a civil motion for indirect contempt filed in the lower state court by DePamphilis, the civil plaintiff, a process which would afford Maravelias a hearing and sufficient due process protections before any deprivation of liberty, as opposed to a criminal arrest initiated by the state.

Case 1:19-cv-00143-SM   Document 74   Filed 02/11/19   Page 1 of 2

UNITED STATES DISTRICT COURT
DISTRICT OF NEW HAMPSHIRE


Paul Maravelias

     v.                                    Case No. 19-cv-143-SM

John J. Coughlin, et al


ORDER


Plaintiff's motion seeking temporary injunctive relief is denied. Principles of comity and federalism generally preclude federal courts from interfering with pending state criminal proceedings. Younger v. Harris, 401 U.S. 37 (1971). "Except in the most extraordinary cases, a federal court must presume that state courts, consistent with the imperatives of the Supremacy Clause, see U.S. Const. art. VI, are fully competent to adjudicate federal constitutional and statutory claims properly presented by the parties." Casa Marie, Inc. v. Superior Court of Puerto Rico, 988 F.2d 252, 262 (1st Cir. 1993). Plaintiff argues that because he seeks only prospective injunctive relief, and that no state prosecution is currently pending, the Younger doctrine does not apply here. The Court of Appeals for the First Circuit has held otherwise. See Brooks v. Conte, Et Al., 739 F.2d 30 (1st Cir. 1984). There can be little question that the state proceedings, should they be initiated, will afford an adequate opportunity to raise federal constitutional challenges, see Middlesex County Ethics Comm. V. Garden State Bar Ass'n, 457 U.S. 423, 432 (1982), and, plaintiff has not pled any credible basis for finding an exception to the Younger doctrine (e.g. "bad faith" in the sense that an anticipated prosecution will be brought without a

reasonable expectation of obtaining a valid conviction, <u>Kugler v. Helfant</u>, 421 U.S. 117, 126n. 6 (1975)).


SO ORDERED.


Steven J. McAuliffe,
United States District Judge


Date: 2/11/2019

cc:   Paul Maravelias, pro se

1   PAUL J. MARAVELIAS, *pro se*
2   34 Mockingbird Hill Rd
    Windham, NH 03087
3   Telephone: (603) 475-3305
    Email: paul@paulmarv.com

U.S. DISTRICT COURT
DISTRICT OF NH
FILED

2019 MAY -6   A 10: 29

4
5               UNITED STATES DISTRICT COURT
                FOR THE DISTRICT OF NEW HAMPSHIRE
6

7   PAUL MARAVELIAS,                                )
        a natural person,                           )
8                                                   )
                                                    )
9               *Plaintiff,*                        )   Civil No. 1:19-CV-143(SM)
                                                    )
10              v.                                  )
                                                    )   Date Action Filed:  2/11/2019
11  JOHN J. COUGHLIN,                               )
        a natural person, in his individual and    )   **JURY TRIAL DEMANDED**
12      official capacities,                        )
                                                    )
13  GORDON J. MACDONALD,                            )
        a natural person, in his official capacity as )
14      Attorney General of New Hampshire,          )
                                                    )
15  PATRICIA G. CONWAY,                             )
        a natural person, in her official capacity as )
16      Rockingham County Attorney,                 )
                                                    )
17                                                  )
    TOWN OF WINDHAM, ex rel.,                       )   **FIRST AMENDED VERIFIED**
18  WINDHAM POLICE DEPARTMENT,                      )   **COMPLAINT FOR**
        municipal entities,                         )   **DECLARATORY AND**
19                                                  )   **INJUNCTIVE RELIEF**
20  GERALD S. LEWIS,                                )
        a natural person, in his official capacity as )
21      Chief of Police of the Town of Windham,     )
                                                    )
22              *Defendants.*                       )
                                                    )
23
24               **PRELIMINARY STATEMENT**
25      1.      NOW COMES Plaintiff PAUL MARAVELIAS ("Plaintiff") with Complaint

26  and brings this action joining two substantially related claims. The first matter is predominant

27  and exigent: this action seeks a preliminary injunction against Defendants to enjoin them from

28  enforcing an illegal state court order abusing Maravelias's federal constitutional rights.

FIRST AMENDED VERIFIED COMPLAINT FOR
DECLARATORY AND INJUNCTIVE RELIEF                    - 1 -

PAUL MARAVELIAS
34 MOCKINGBIRD HILL RD WINDHAM, NH 03087

1    Defendants issued a baseless court order against Maravelias *ultra vires,* in total absence of

2    statutory or equitable authority, masquerading as "extended terms" of a preexisting civil

3    protective order, to newly criminalize his "possession" of public internet "social media

4    communications" necessary as exhibits in ongoing state court proceedings for his own

5    defense. **Defendants have threatened they will enforce these illegal "extended terms" to**

6    **the protective order and will arrest Maravelias for his imminently anticipated lawful**

7    **speech activity, causing irreparable injury in catastrophic violation of his civil rights**.

8    *See* Plaintiff's forthcoming <u>Motion for Preliminary Injunction</u>. This action seeks declaratory

9    relief and a permanent injunction preventing enforcement of Defendants' said unlawful order

10   against Plaintiff. The second component of this action seeks declaratory judgment that NH

11   RSA 633:3-a, III-c., pertaining to the legal standard for extending civil stalking protective

12   orders after initial expiration, is facially invalid in violation of the First and Fourteenth

13   Amendments to the Constitution of the United States of America.

## JURISDICTION AND VENUE

2.      This action arises under 42 U.S.C. § 1983 and the United States Constitution.
Subject matter jurisdiction exists pursuant to 28 U.S.C. §§ 1331 and 1343 in that the instant
case arises under questions of federal constitutional law.

3.      This Court has supplemental jurisdiction over Plaintiff's state law claims
pursuant to 28 U.S.C. § 1367(a).

4.      Personal jurisdiction exists whereas all individual parties are natural citizens
within the federal boundaries of the United States of America.

5.      Claims herein for injunctive relief are authorized pursuant to 28 U.S.C. § 1343
and Rule 65 of the Federal Rules of Civil Procedure.

FIRST AMENDED VERIFIED COMPLAINT FOR
DECLARATORY AND INJUNCTIVE RELIEF                    - 2 -

PAUL MARAVELIAS
34 MOCKINGBIRD HILL RD WINDHAM, NH 03087

6.      Claims herein for declaratory relief are authorized pursuant to the Declaratory

Judgment Act, 28 U.S.C. §§ 2201-02.

7.      Venue is appropriate per 28 U.S.C. § 1391 as Defendants' material conduct has

occurred and is occurring substantially within the State of New Hampshire, in which all

parties reside.

## **PARTIES**

8.      Plaintiff PAUL MARAVELIAS is a natural person over 18 years of age residing

within the Town of Windham and Rockingham County in the State of New Hampshire. He is

a recent Dartmouth College graduate in Economics and employed as a software engineer. He

resides with his parents and sister at 34 Mockingbird Hill Road, Windham, NH 03087.

9.      Defendant JOHN J. COUGHLIN is a natural person and judicial officer within

the judicial branch of the State of New Hampshire. He is a Senior Active Status judge at 10th

Circuit Court – District Division – Derry, 10 Courthouse Ln, Derry, NH 03038. Defendant

JOHN J. COUGHLIN was acting under color of New Hampshire state law at all times

material. JOHN J. COUGHLIN is being sued in his individual and official capacities.

10.     All other Defendants are being sued in their official capacities only.

11.     Defendant GORDON J. MACDONALD is the Attorney General of the State of

New Hampshire with the official address of 33 Capitol St, Concord, NH 03301. Under NH

RSA 7:6, he "shall have and exercise general supervision of the criminal cases pending before

the supreme and superior courts of the state" and "with the aid of the county attorneys" …

shall enforce the criminal laws of the state." He has authority to enforce the illegal order

against Maravelias in question.

FIRST AMENDED VERIFIED COMPLAINT FOR
DECLARATORY AND INJUNCTIVE RELIEF                        - 3 -
PAUL MARAVELIAS
34 MOCKINGBIRD HILL RD WINDHAM, NH 03087

Appendix Page 57 of 117

12.     Defendant PATRICIA G. CONWAY is the County Attorney for Rockingham County, NH with the official address 10 NH-125, Brentwood, NH 03833. She has authority to enforce the illegal order against Maravelias in question in Rockingham County.

13.     Defendant TOWN OF WINDHAM is a municipal entity in the State of New Hampshire which maintains and operates the Windham Police Department ("WPD"), a law enforcement agency. WPD is responsible for the training, conduct, employment, supervision, and retention of its officers and employees. The TOWN OF WINDHAM is responsible for overseeing WPD and ensuring its personnel comply with the laws and constitution of the United States of America. At all times material, the officers, personnel, and employees of the TOWN OF WINDHAM were acting and continue to act under color of New Hampshire state law as applied through the customs, usages, and policies of said town.

14.     Defendant GERALD S. LEWIS is an employee of the TOWN OF WINDHAM as Chief of Police at the Windham Police Department. The three aforesaid entities are hereinafter referred to as the "Windham Defendants". Defendant GERALD S. LEWIS is responsible for the training, conduct, employment, supervision, and retention of his subordinate officers and employees and has a duty to ensure said personnel comply with the laws and constitution of the United States of America. Defendant GERALD S. LEWIS has been acting and continues to act under color of state law as applied through the customs, usages, and policies of the Town of Windham at all times material.

FIRST AMENDED VERIFIED COMPLAINT FOR
DECLARATORY AND INJUNCTIVE RELIEF                    - 4 -                    PAUL MARAVELIAS
34 MOCKINGBIRD HILL RD WINDHAM, NH 03087

Appendix Page 58 of 117

# FACTUAL ALLEGATIONS

## Procedural Background

15.     In January 2018, Plaintiff was subject to a preexisting New Hampshire civil stalking protective order restraining him from contacting the petitioner in that action, Christina DePamphilis. The underlying state Circuit Court case is <u>Christina DePamphilis v. Paul Maravelias</u> (473-2016-CV-00124). On 1/5/18, DePamphilis moved to extend the stalking order against Maravelias another year to February 2019, pursuant to RSA 633:3-a, III-c.

16.     Maravelias has long maintained the said "protective" order litigation is an illegitimate, bad-faith campaign of malicious harassment orchestrated by DePamphilis's father David DePamphilis. Maravelias claims DePamphilis committed perjury to obtain the order. During cross-examination, DePamphilis even admitted that Maravelias never actually spoke certain words to her which she claimed (maliciously) in her petition he said.

17.     The Windham Defendants possess an audio recording proving that Maravelias never spoke certain words that DePamphilis falsely put into Maravelias's mouth to obtain the stalking order. They are aware of the content and significance of said audio recording.

18.     The Windham Defendants took part in the establishment of said fraudulent stalking order and have a credibility-related interest in its existence. David DePamphilis testified on 1/5/17 that WPD officers told him "you need to file a restraining order [against Maravelias]" after Maravelias had asked Christina DePamphilis on a date, got rejected, then never once contacted her ever after that day. On 4/20/17, Windham officer Christopher van Hirtum remorselessly told Maravelias in person he "doesn't blame" DePamphilis for filing the (false) restraining order and boldly claimed he "would have done the same".

FIRST AMENDED VERIFIED COMPLAINT FOR
DECLARATORY AND INJUNCTIVE RELIEF                 - 5 -                 PAUL MARAVELIAS
34 MOCKINGBIRD HILL RD WINDHAM, NH 03087

Appendix Page 59 of 117

19.     In June 2017, Christina DePamphilis posted incitative bullying/harassment social media posts identifying and directed against Paul Maravelias, middle-fingering him with her father and boyfriend. Maravelias's final contact with DePamphilis had been asking-her-out once to dinner, which she declined. Maravelias commented at trial she was trying to "bait" him to violate her "bad-faith" "stalking order". She was trying to provoke a jealous reaction and cruelly cause more trouble for Maravelias.

20.     Maravelias collected screenshots of DePamphilis's public internet social media harassment conduct to use for his self-defense at the protective order extension hearing. Other individuals shared with him other "social media exhibits" from DePamphilis which supported Maravelias's case against the civil protective order.

21.     In May and June 2018, Defendant JOHN J. COUGHLIN presided over a three-day trial at Derry, NH District Court on DePamphilis's extension motion.

22.     Defendant JOHN J. COUGHLIN admitted many of Maravelias's social media image evidentiary exhibits, including DePamphilis's vulgar cyberbullying post against Maravelias, *inter alia*.

23.     On 6/15/18, Defendant JOHN J. COUGHLIN granted the stalking order extension against Maravelias, extending said order to 2/5/19.

**The Orwellian Summer 2018 "Extended Terms" or "Further Conditions"**

24.     On 7/2/18, DePamphilis filed a certain Motion in the District Court which is the critical foundation of this action. She filed a "Motion for Modification of Stalking Final Order of Protection to Include Further Conditions", attached as **Exhibit A**.

FIRST AMENDED VERIFIED COMPLAINT FOR
DECLARATORY AND INJUNCTIVE RELIEF

- 6 -

PAUL MARAVELIAS
34 MOCKINGBIRD HILL RD WINDHAM, NH 03087

25.     In said Motion, she sought that Defendant JOHN J. COUGHLIN modify her

stalking order against Maravelias to include the following additional criminally-enforceable

provision:

> **"Respondent [Maravelias] shall not gain access to or possess any**
> **of Petitioner's [DePamphilis's] social media communications**
> **either directly or through a third party;"**

26.     Hereinafter, Plaintiff refers to the above provision as the "extended terms". Two

other such "further conditions" were sought and granted, but this action disregards them.

27.     On 7/5/18, Maravelias filed an Objection to DePamphilis's Motion. Maravelias

pointed-out that she was attempting to criminalize Maravelias's mere possession of her

"social media exhibits" – by then, record-admitted evidentiary public court exhibits which

proved, in one part, that she was incitatively cyberbullying Maravelias with vulgar gestures,

and therefore lied about having "fear" of him for the stalking order.

28.     Maravelias's 7/5/18 Objection (**Exhibit B** – redundant exhibits therefrom

omitted) spoke of the unconstitutional overbreadth and vagueness of the requested terms,

noting that Defendant JOHN J. COUGHLIN had no legal authority to grant such draconian,

Orwellian "extended terms" against Maravelias by the procedural mechanism of a civil

stalking order, which is purposed to prevent physical following/stalking.

29.     In response to Maravelias's 7/5/18 Objection, DePamphilis filed a Reply on

7/12/18 which proposed a minor concession in her requested "further conditions", that

Maravelias should not "<u>knowingly</u> [gain access to or possess…]". This 7/12/18 Reply is

attached as **Exhibit C**.

FIRST AMENDED VERIFIED COMPLAINT FOR
DECLARATORY AND INJUNCTIVE RELIEF                - 7 -                PAUL MARAVELIAS
                                                                      34 MOCKINGBIRD HILL RD WINDHAM, NH 03087

**Appendix Page 61 of 117**

30.     On 7/16/18, Maravelias filed a Surreply to DePamphilis's 7/12/18 Reply (**Exhibit G**), noting that her requested further terms were still outrageously illegal, unconstitutional, unwarranted, and draconian.

**Defendant JOHN J. COUGHLIN Scribbles "Granted" on The Lawyer-Represented Female Petitioner's Unprecedented "Extended Terms" Motion**

31.     On 8/7/18, Defendant JOHN J. COUGHLIN **DENIED** Maravelias's Objection (**Exhibit D**) and **GRANTED** (**Exhibit E**) DePamphilis's original 7/2/18 Motion criminalizing Maravelias to "gain access to or possess" his accuser's "[public] social media communications", even including public court exhibits where she made vulgar, incitative cyberbullying posts to harass Maravelias, which proved she lied about having "fear" of Maravelias to get a false, vindictive "stalking" order against him.

32.     In his Order granting the "extended terms", Defendant JOHN J. COUGHLIN did not write a single word of statutory authority or legal reasoning for his shocking, reckless order, nor wrote any response to Maravelias's objection arguments whatsoever. Judge Coughlin merely scribbled, "Respondent's objection is **DENIED**", on Maravelias's 7/5/18 Objection and criminalized Maravelias to possess his own court exhibits.

33.     Unlike issuing regular Stalking/DV civil protective orders and hearing occasional extension requests thereof, granting indiscriminate "social media possession" "extended terms" to such civil orders is not a task commonly performed by judicial officers.

34.     Never in the entire life of Defendant JOHN J. COUGHLIN nor in the entire history of the State of New Hampshire has a trial court previously granted "extended terms" to an RSA 633:3-a civil protection order forbidding a respondent from "possessing" "directly or through a third party" a petitioner's "social media" as Defendants did on 8/7/18.

FIRST AMENDED VERIFIED COMPLAINT FOR
DECLARATORY AND INJUNCTIVE RELIEF                     - 8 -                     PAUL MARAVELIAS
                                                                              34 MOCKINGBIRD HILL RD WINDHAM, NH 03087

**Appendix Page 62 of 117**

35.     Paragraph 41 of Maravelias's 7/5/18 Objection explicitly forewarned Defendant COUGHLIN that granting the "extended terms" would constitute an extrajurisdictional act divesting of absolute judicial immunity.

**The Inexplicable Procedural Anomalies of Defendant JOHN J. COUGHLIN's Heedless Post-Trial Orders, Showing His Bad-Faith and Patently Unreasonable Conduct**

36.     Defendant JOHN J. COUGHLIN, *sua sponte,* granted DePamphilis's original 7/2/18 Motion and not even DePamphilis's concessively ameliorated "further condition" as conceded in her subsequent 7/12/18 Motion, in light of the 7/5/18 Objection. *See* **Exhibit F**.

37.     The date "**8/7/18**" appears on Defendant COUGHLIN's "granting" (**Exhibit E**) DePamphilis's original 7/2/18 Motion and on Defendant COUGHLIN's denying-as-moot DePamphilis's 7/12/18 Reply containing her concessively ameliorated terms (**Exhibit F**).

38.     However, inexplicably, the date "**7/13/18**" appears on Defendant COUGHLIN's four-word "Respondent's objection is DENIED" ruling on Maravelias's 7/5/18 Objection.

39.     The day prior, on 7/12/18, Maravelias appeared before Defendant COUGHLIN in a civil case as non-lawyer representative for Maravelias's friend, a true stalking victim.

40.     These facts suggest the mere renewed sight of Maravelias animated Defendant COUGHLIN to 1) rub-out an immediate vindictive, mercurial "denied"-scribbling on Maravelias's pending objection within 24 hours of seeing Maravelias's face and 2) later return to the matter, after nearly one full month, to formalize his automatic granting DePamphilis's "extended terms" pleading: the more punitive version, even, which she herself had amended.

41.     The non-responsive four-word nature of Defendant COUGHLIN's 7/13/18 order and all other foregoing facts indicate Maravelias was deprived his right to be fully heard.

FIRST AMENDED VERIFIED COMPLAINT FOR
DECLARATORY AND INJUNCTIVE RELIEF                          - 9 -                          PAUL MARAVELIAS
34 MOCKINGBIRD HILL RD WINDHAM, NH 03087

Appendix Page 63 of 117

42.     The totality of his judicial acts with Maravelias in 2018 uncovers a fact-pattern suggesting Defendant COUGHLIN acted with hostile bias and in bad-faith. In further support, Plaintiff repeats and incorporates by reference the judicially noticeable 10/31/18 pleading filed in the 10th Circuit Court – Dist. Div. – Derry, entitled "Respondent's Motion to Set Aside Judgement" in 473-2016-CV-124 (available at the web URL: https://bit.ly/2VNfpsp).

**Defendants' Live and Imminent Threats as of May 2019, Since February 2019, to Arrest Maravelias and Enforce the Illegal Order**

43.     On 1/24/19, DePamphilis moved the Circuit Court to extend her order again, granted the same day. Defendants' 8/7/18 "extended terms" are still in-effect.

44.     In fall 2018, Plaintiff Maravelias had been a *pro se* litigant in two related appeal cases in the New Hampshire Supreme Court regarding the DePamphilis/Maravelias parties.

45.     On 2/8/19, Plaintiff Maravelias met with Sgt. Bryan Smith at the Windham Police Department. Sgt. Smith, a WPD officer and Town of Windham employee, revealed Defendants are now investigating Maravelias for violating the "extended terms" of the order.

46.     For compelling detail on the threat of irreparable injury expected from impending enforcement of these unlawful "extended terms", Plaintiff Maravelias incorporates by reference his forthcoming Motion for Preliminary Injunction and attached "Declaration in Support" to be filed therewith, containing an assortment of verbatim quotes from the recent 2/8/19 conversation at WPD between Maravelias and Sgt. Smith.

47.     In said conversation, Sgt. Smith produced a copy of an exhibit Maravelias attached to a December 2018 Reply Brief Maravelias filed in one of his NH Supreme Court appeals. Sgt. Smith asserted that it was one of DePamphilis's social media communications and that he would likely "arrest" Maravelias if his investigation fails to establish that the said Exhibit had been part of any earlier court hearing.

FIRST AMENDED VERIFIED COMPLAINT FOR
DECLARATORY AND INJUNCTIVE RELIEF                - 10 -                PAUL MARAVELIAS
34 MOCKINGBIRD HILL RD WINDHAM, NH 03087

**Appendix Page 64 of 117**

48.     The Exhibit in question is an image which proves DePamphilis boldly lied about another part of her "stalking" accusations against Maravelias, where she falsely asserted it was socially inappropriate for Maravelias to say hello to her at a 2015 graduation ceremony Maravelias attended for his sister.

49.     Sgt. Smith specifically identified Defendants' 8/7/18 extended terms to the protective order and explained he may arrest Maravelias for violating said terms.

50.     Sgt. Smith said that he would likely "arrest" Maravelias if Maravelias was in "possession" of certain public materials from "social media", ostensibly referring Maravelias's own Supreme Court Reply Brief exhibit. In such an event, Defendants will criminally prosecute Maravelias for violating the "extended terms" by possessing what they claim is a public social media communication by DePamphilis, which is lawful for any other person to possess.

51.     Responding to Plaintiff's Original Complaint, the Windham Defendants filed an Answer on 4/17/19 itself confirming their unlawful enforcement threat is still ongoing, live, and imminent. Maravelias is subject to a current criminal investigation for violating the "extended terms". Defendants will arrest Maravelias on "probable cause" that he rightfully possessed public social media exhibits. *See* Answer, ECF Doc. #8, ¶83, 92, 97, 109, 118.

**Past and Present Actual Harm and Injury Suffered by Maravelias As a Result of Defendants' Illegal Enforcement Threats**

52.     Ever since Defendants imposed the "extended terms", Maravelias has feared criminal prosecution and felt compelled to chill his public speech. In the 2/8/19 conversation, Maravelias indicated he has felt compelled to forfeit defending his falsely maligned reputation (from the underlying protective order) in certain ways he would pursue were the illegal "extended terms" not constantly threatening his free speech with criminal penalties.

FIRST AMENDED VERIFIED COMPLAINT FOR
DECLARATORY AND INJUNCTIVE RELIEF                    - 11 -                    PAUL MARAVELIAS
34 MOCKINGBIRD HILL RD WINDHAM, NH 03087

Appendix Page 65 of 117

53.     Defendants have stated to Maravelias their intention to engage in a course of conduct affecting his constitutional interest. They have proven they are actively and imminently threatening said interests by virtue of their current criminal investigation.

54.     Maravelias has trembled in fear of punishment to take acts amounting to the introduction of otherwise-lawful public internet images into his state court briefs/pleadings which would otherwise benefit his position, because of the unlawful "extended terms".

55.     In order to attempt to comply with the unlawful "extended terms", Maravelias has been compelled to destroy and dispose of his own property as well as take elaborate pains that other "third parties" do not cause Maravelias to commit a crime by virtue their own "possession" or "gaining access" conduct.

56.     Maravelias has suffered extreme emotional distress and trauma in connection with being subject to such unlawful, arbitrary terms and not even being able to know the precise legal functioning or definition of its vague terms "social media communication", "through a third party", and "possess". He lives in constant confusion and fear as a result.

**Maravelias Has Possessed His Own Court-Admitted Evidentiary Exhibits and Plans to Make Imminent Lawful Speech Acts Violating The Illegal "Extended Terms"**

57.     Maravelias delivered his 11/1/18 Appellant's Brief to the Supreme Court. It contained an appendical trial court exhibit depicting Christina DePamphilis's incitative middle-finger cyberbullying post, a "social media communication", to Maravelias.

58.     Maravelias denies "possessing" such "social media" which was not a previously admitted court exhibit. However, Maravelias openly admits he has possessed the "middle-fingers" social media post trial court exhibit.

59.     The Windham Defendants' Answer alleges they have "communicated to Plaintiff that [they] would not construe the possession of previously submitted court exhibits to be a violation of the 'extended terms.'" <u>Answer</u>, ¶69. However, the Windham Defendants' previous "communications" (*i.e.*, the 2/8/19 Sgt. Smith-Maravelias meeting at WPD) arguably entailed no legal requirement of truthfulness. *See e.g., Frazier v. Cupp*, 394 U.S. 731 (1969).

60.     The Windham Defendants' Answer declines to stipulate that they will not construe the extended terms as including "possession of previously submitted court exhibits"; rather, only that they "have <u>communicated</u>" the said "to Plaintiff" in the past. This alarming fact further prognosticates an imminent unlawful enforcement.

61.     The "extended terms" contain no implicit exception for public court exhibits.

62.     Maravelias will not chill his speech forever. He intends soon to violate the "extended terms" by obtaining certain "social media" artifacts and using them in public speech acts to prove the DePamphilis stalking order is nothing but a fraudulent legal harassment mechanism extended in 2018 by a biased, rogue judge.

**The Windham Defendants Are Acting in Bad-Faith with Disregard of Statutory and Constitutional Law**

63.     Plaintiff respectfully alleges the Windham Defendants are acting in bad-faith due to their personal credibility-interest in the false stalking order they themselves ignorantly encouraged DePamphilis to pursue in December 2016, to the extent that they did.

64.     The Windham Defendants enforce a stalking order they know was fraudulently obtained, due to their possession and awareness of the aforementioned 2016 audio recording.

65.     All Defendants have an obligation to know and follow the law, including the United States Constitution, the "supreme law of the land". U.S. CONST., Art VI, cl. 2.

66.     Given Maravelias's 2/8/19 conversation with Sgt. Smith and, irrefutably, the content of this very lawsuit, the Windham Defendants are now knowledgeably aware that enforcing the "extended terms" is irredeemably unlawful in violation of the U.S. Constitution.

67.     Despite this, the Windham Defendants' Answer reconfirms their live, unabated investigation and promises to enforce the "extended terms" by arrest on probable cause Maravelias has violated said "extended terms". They admit they are contemplating criminal prosecution of Maravelias under RSA 633:3-a, I(c) as the statutory enforcement vehicle of the "extended terms" and reveal that they are aware of the contents of said statute. Answer, ¶71.

68.     The Windham Defendants' non-existent excuse even within state law to persist in threatening federally unconstitutional enforcement entails a further aspect of their alleged bad-faith. The state civil stalking order criminal enforcement statute, RSA 633:3-a, I(c)., confers standing upon Defendants to criminally prosecute "a single act of conduct that both violates the provisions of the [civil] order **and** is listed in paragraph II(a)." (Emphasis added)

69.     "Paragraph II(a)" of RSA 633:3-a does not include "possession" nor anything remotely similar. It is a fully exclusive listing for purposes of RSA 633:3-a, I(c).

70.     The Orwellian "extended terms" are criminally unenforceable, as Defendants know, yet they persist in their imminent threats to arrest Maravelias on probable cause he has engaged in constitutionally protected conduct violating the "extended terms".

71.     While violation of the "extended terms" is enforceable through a motion for contempt in Derry Circuit Court, Defendants should be aware they are not <u>criminally</u> enforceable because Paragraph 7 of Maravelias's 7/16/18 Surreply (**Exhibit G**) noted this.

72.     It is unknown by what legal authority Windham Defendants purport to derive their alleged limiting construction of the "extended terms" to exclude "possession of

previously submitted court exhibits". Understandably baffled by the nightmarish disaster Defendant JOHN J. COUGHLIN has created for them by his reckless abuse of power, the Windham Defendants are enforcing the "extended terms" under an arbitrary set of halfway principles consistent with neither federal constitutional law nor state statutory law.

73.     The Windham Defendants threaten to institute criminal proceedings against Maravelias they do not believe they could ever possibly result in a valid criminal conviction.

**The 2018 NH Supreme Court Appeal and The Inapplicability of *Rooker-Feldman***

74.     In the underlying case, Maravelias appealed the 2018 stalking order extension to the New Hampshire Supreme Court (No. 2018-0483). They affirmed the extension.

75.     The overriding thrust of the appeal was to vacate the 2018 extension of the stalking order, not to challenge the constitutionality of Defendants' "extended terms".

76.     The Supreme Court's Final Order did not adjudicate any claim regarding the "extended terms". They neither affirmed nor reversed the "extended terms". They affirmed the extension of the underlying stalking order without ever addressing the "extended terms".

77.     Maravelias briefed his challenge to the "extended terms", giving the NH Supreme Court an opportunity to review the said. However, the they predictably excused themselves from adjudicating these claims, retorting that the issue was not adequately briefed.

78.     Maravelias had previously filed a 10/12/18 Motion in the appeal for an increased brief word limit due to the necessity of compressing essentially two separate appeals into one (both the overall extension of the order and the "extended terms"). The Supreme Court DENIED the modest word limit increase request on 10/24/18 with no explanation.

79.     Maravelias's incorporates by reference his "Brief of Appellant" in 2018-0483.

FIRST AMENDED VERIFIED COMPLAINT FOR
DECLARATORY AND INJUNCTIVE RELIEF                    - 15 -                    PAUL MARAVELIAS
34 MOCKINGBIRD HILL RD WINDHAM, NH 03087

Appendix Page 69 of 117

80.     The Supreme Court denied Maravelias a full and fair opportunity to challenge the "extended terms". This is irrelevant for *Rooker-Feldman* inquiry. Questions of whether Maravelias could have, should have, or actually did raise issues belong to preclusion law. *Rooker-Feldman*, however, is a jurisdictional bar rendered inapplicable by the non-existence of any final state court judgment adjudicating the constitutionality of the "extended terms".

81.     At the filing of this action, no state court, appellate or otherwise, had expressed an opinion nor rendered any judgment on the constitutionality of the "extended terms".

82.     Maravelias's said appeal also afforded the NH Supreme Court an opportunity to adjudicate Maravelias's facial overbreadth and void for vagueness challenges to RSA 633:3-a, III-c. As with the "extended terms", the Supreme Court declined to adjudicate these claims.

83.     At the filing of this action, no state court, appellate or otherwise, had rendered any judgment on Maravelias's arguments that RSA 633:3-a, III-c. is facially overbroad and void for vagueness.

84.     The New Hampshire Supreme Court has been acting against Maravelias in bad-faith. They have mysteriously redacted or self-censored their Final Orders in both of Maravelias's appeals from the public Supreme Court website in seeming shyness to disclose their tyrannical sophistry against Maravelias to the public. They have retaliated against Maravelias's speech through an unprecedented punitive "Rule 23" order amounting to extortion against Maravelias in the amount of $4,900.00. Maravelias hereby repeats and incorporates by reference his forthcoming suit in this Honorable Court challenging Supreme Court Rule 23, *Paul Maravelias v. Supreme Court of New Hampshire, et al.*

85.     The NH Supreme Court has been failing to obey the proper *de novo* standard of review to federal constitutional claims. Accordingly, even if the New Hampshire Supreme

FIRST AMENDED VERIFIED COMPLAINT FOR
DECLARATORY AND INJUNCTIVE RELIEF                    - 16 -                    PAUL MARAVELIAS
34 MOCKINGBIRD HILL RD WINDHAM, NH 03087

Appendix Page 70 of 117

Court had, in fact, adjudicated the claims Maravelias now brings here to challenge the "extended terms", *Rooker-Feldman* would still not apply.

86.     Christina DePamphilis committed fraud and criminal falsification to obtain the stalking order, the extension thereof, and the "extended terms". Maravelias alleged the same in the underlying proceedings.

87.     Since the filing of this action, DePamphilis obtained another final extension of the stalking order in Derry Circuit Court on 3/8/19. Multiple motions are pending. The underlying case is ongoing and not "ended".

88.     Maravelias has not initiated an appeal of the recent 2019 extension. The "extended terms" are still in effect, never having been adjudicated in the NH Supreme Court.

89.     Defendant JOHN J. COUGHLIN, as an officer of the New Hampshire Circuit Court, had no general equitable powers within the RSA 633:3-a civil protective order case.

90.     DePamphilis had a clearly defined statutory right to petition Defendant COUGHLIN to extend the stalking order in 2018. However, she had no state or federal statutory, constitutional, equitable, or common-law right to the "extended terms" granted.

91.     Defendant JOHN J. COUGHLIN's 8/7/18 Order granting the "extended terms" is not a judicial act nor a state court "judgment". It did not adjudicate any claim to a "right".

92.     Defendant JOHN J. COUGHLIN's 8/7/18 Order contained no opinion or finding on the constitutionality of the "extended terms" granted therein.

FIRST AMENDED VERIFIED COMPLAINT FOR
DECLARATORY AND INJUNCTIVE RELIEF                - 17 -                PAUL MARAVELIAS
34 MOCKINGBIRD HILL RD WINDHAM, NH 03087

**Appendix Page 71 of 117**

# COUNT 1
## VIOLATION OF THE FIRST AMENDMENT TO THE
## UNITED STATES CONSTITUTION (42 U.S.C. §1983)

### Defendants' "Extended Terms" Within a Standard Civil
### Stay-Away Order Abridge Maravelias's Free Speech and Press Rights

93.     All paragraphs hereinabove are repeated herein as though fully set forth.

94.     The First Amendment to the U.S. Constitution guarantees that "Congress shall make no law . . . abridging the freedom of speech". It is incorporated against the states.

95.     Defendants' civil "stalking" "protective" order against Maravelias in its current form, through their "extended terms" granted on 8/7/18 with no explanation at all, violates Maravelias's constitutionally protected free speech and press rights.

96.     The "extended terms" constitute a prior restraint against Maravelias exercising his protected freedoms to speech and press, even absent the imminent enforcement threat. By possessing, publicizing, or expressing himself with certain evidentiary exhibits deemed DePamphilis's "social media communications", Defendants will punish Maravelias with criminal prosecution – nominally, for violating a civil stalking protective order pursuant to RSA 633:3-a.

97.     Defendants are now likely to arrest Plaintiff Maravelias because of his publication to the New Hampshire Supreme Court of a Reply Brief containing an appendical exhibit alleged to be a "social media communication" of DePamphilis. This exhibit shows that DePamphilis lied to obtain a false "stalking" protective order by which Defendants' 8/7/18 Order against Maravelias, imposing the "extended terms", operates to begin with.

98.     Defendants' 8/7/18 "extended terms" are not narrowly tailored to serve a significant governmental interest. The governmental interest behind civil stalking protective

FIRST AMENDED VERIFIED COMPLAINT FOR
DECLARATORY AND INJUNCTIVE RELIEF          - 18 -          PAUL MARAVELIAS
34 MOCKINGBIRD HILL RD WINDHAM, NH 03087

Appendix Page 72 of 117

orders is to protect true victims of stalking from violent acts, not to criminalize the process of a respondent in such a proceeding from defending himself in the court system, using public evidentiary exhibits from "social media" to defend himself against claims of "stalking".

99.    Defendants' 8/7/18 extended terms do not appropriate any alternative channel by which Maravelias could defend himself in the legal system where his accuser's public "social media exhibits" are profitable for his legal self-defense in the court system.

100.    Defendants' 8/7/18 extended terms do not appropriate any alternative channel by which Maravelias could publicly share said "social media" evidentiary materials (e.g., on the internet) to defend his name and reputation from defamatory and false "stalking" accusations, without fearing criminal prosecution by the State of New Hampshire.

101.    Defendants' extended terms therefore implicate Maravelias's right to be free from reputational and social stigma. Said terms have chilled Maravelias's public speech which he would have otherwise made to defend his name from the false stalking accusations both in the court system and on the internet, where necessitating exhibits from "social media". They also implicate his right to be left alone, since Defendants will arrest him for "possession" and any lawful expression evidencing "possession".

102.    The above is neither theory nor speculation: Sgt. Smith asserted to Maravelias on 2/8/19 his Supreme Court Reply Brief exhibit is inculpatory evidence of "possession".

103.    Defendants' extended terms are unconstitutionally overbroad because they prohibit, chill, and regulate a significant amount of legitimate speech even if some possible applications of them could prevent unlawful speech.

104.    Defendants' extended terms are unconstitutionally overbroad for being both overinclusive and underinclusive. As-applied, the extended terms do not prohibit any

FIRST AMENDED VERIFIED COMPLAINT FOR
DECLARATORY AND INJUNCTIVE RELIEF          - 19 -          PAUL MARAVELIAS
34 MOCKINGBIRD HILL RD WINDHAM, NH 03087

Appendix Page 73 of 117

unprotected criminally threatening or obscene speech, but rather prohibit public speech necessary for Maravelias to defend himself within the New Hampshire court system.

105.    The United States Supreme Court's decision in *Packingham v. North Carolina*, 582 U. S. ___ (2017) illustrates the irredeemably unlawful nature of Defendants' despotic "social media possession" prohibition against Plaintiff. The *Packingham* court nullified a North Carolina criminal statute prohibiting convicted sex offenders from accessing certain social media sites. By comparison, Plaintiff here is subject to a civil "stalking" "protective" order – issued without even the <u>allegation</u> of any criminal conduct – and is thereby bound to Defendant JOHN J. COUGHLIN's arbitrary "extended terms" themselves <u>more restrictive</u> than the nullified North Carolina statute in *Packingham* (*i.e.*, prohibiting Maravelias's mere ongoing "<u>possessing</u> [<u>any</u>]" "social media" screenshots or exhibits, as opposed to newly "<u>accessing</u> [<u>certain</u>]" social media, as with the North Carolina statute).

106.    Defendants, acting under color of state law, have threatened to and will enforce and implement the above-identified "extended terms" against Plaintiff Maravelias, in violation of his First Amendment rights to freedom of speech and press.

107.    As a direct and proximate result of Defendants' unlawful conduct, Plaintiff Maravelias has and will suffer irreparable harm and injury, which will continue absent relief. Wherefore, Plaintiff respectfully prays the Court grant the relief set forth hereunder in the section entitled "Prayer for Relief".

### COUNT 2
### VIOLATION OF PART I, ARTICLE 22
### OF THE NEW HAMPSHIRE CONSTITUTION

108.    All paragraphs hereinabove are repeated herein as though fully set forth.

FIRST AMENDED VERIFIED COMPLAINT FOR
DECLARATORY AND INJUNCTIVE RELIEF                    - 20 -                    PAUL MARAVELIAS
34 MOCKINGBIRD HILL RD WINDHAM, NH 03087

Appendix Page 74 of 117

109.    Plaintiff repeats the aforecited authorization for his state law claims under this Court's supplemental jurisdiction, which arise from the same set of facts and transactions/occurrences giving rise to the federal causes of action in this Complaint.

110.    Part I, Article 22 of the New Hampshire Constitution offers even broader protections for free speech rights than the U.S. Constitution.

111.    Accordingly, the Defendants, acting under color of state law, have threatened to and will enforce and implement the above-identified "extended terms" against Plaintiff Maravelias, in violation of his rights under Part I, Article 22 of the NH Constitution.

112.    As a direct and proximate result of Defendants' unlawful conduct, Plaintiff Maravelias has and will suffer irreparable harm and injury, which will continue absent relief. Wherefore, Plaintiff respectfully prays the Court grant the relief set forth hereunder in the section entitled "Prayer for Relief".

## COUNTS 3, 4, AND 5
## VIOLATION OF SUBSTANTIVE AND PROCEDURAL DUE-PROCESS UNDER THE FOURTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION (42 U.S.C. §1983)

113.    All paragraphs hereinabove are repeated herein as though fully set forth.

114.    The Fourteenth Amendment guarantees that "no state shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any state deprive any person of life, liberty, or property, without due process of law…".

**Count 3: The "Extended Terms" Violate Due Process Since They Are Unconstitutionally Vague**

115.    Defendants' nominal "extended terms" against Maravelias violate and disparage his rights guaranteed by the Fourteenth Amendment to the U.S. Constitution. Said terms are

FIRST AMENDED VERIFIED COMPLAINT FOR
DECLARATORY AND INJUNCTIVE RELIEF                    - 21 -                    PAUL MARAVELIAS
34 MOCKINGBIRD HILL RD WINDHAM, NH 03087

**Appendix Page 75 of 117**

unconstitutionally vague, in violation of due process protections, for failing to define what counts as "possession" of a "social media communication", what counts as "third party" "possession" of the same, what counts as "direct" "possession" of the same, or even what counts as a "social media communication" to begin with (*e.g.*, whether usage of a social media app itself is necessary to "possess" such a "communication", or whether a static photographic "screenshot" reproduction of a "social media communication" visualized on another's device is itself a "communication" or merely an indication or record of such a "communication" existing elsewhere).

116.    The vagueness of Defendant's extended terms terms invites arbitrary and discriminatory enforcement, and they are unintelligible a person of average intelligence.

117.    Defendants' present and imminent threat to criminally enforce the illegal order already underscores the untenable problems of vagueness in their extended terms. In Maravelias's 2/8/19 conversation with Sgt. Smith, there was disagreement whether the Reply Brief exhibit is a "social media communication".

118.    On its face, the extended terms appear to criminalize Maravelias's mere "possession" of public court exhibits, necessarily "depriving" him of that property by forcing him to relinquish and discard said property lest he face criminal punishment.

119.    Defendants' extended terms against Maravelias also produce the absurd result that Christina DePamphilis's possessing *her own* "social media communications" automatically criminalizes Maravelias, since he has access to public court documents where her said "communications" are already entered as exhibits and/or since he has a legal right subpoena them from her; therefore, Maravelias could be said to "possess" by a "third-party"

(DePamphilis herself) the said "communications", according to reasonable interpretation of the vague term "third-party [possession]" in Defendants' outrageous 8/7/18 extended terms.

120.     The same can be said for virtually any instance of Maravelias's friend or family member merely reading a copy of his Supreme Court briefs or viewing the record of the case.

121.     Defendants' vague extended terms contain zero due-process protection mechanisms by which Maravelias would not be require automatically to discard and not "possess" any items which might be "social media communications" even if they are public court exhibits for his own cases.

**Count 4: The "Extended Terms" Violate Procedural Due Process Since They Contained No Advanced-Noticed Starting Effective Date and Therefore Inescapably Entrap Their Subject into Committing a Crime**

122.     Defendants' extended terms against Maravelias are worded such that it would be impossible to obey them. Since they contain no effective starting date, they took-effect and began to criminalize any "possession" of public court exhibits as soon as Judge Coughlin signed the Order, before notifying Maravelias that the extended terms were granted. The extended terms contain no practical procedures for compliance, such as a provision that certain things currently in "possession" must be destroyed or relinquished by a certain time.

123.     Since Maravelias cannot un-destroy destroyed items, it cannot be argued that Maravelias could have temporarily destroyed such exhibits pending Judge Coughlin's ruling.

**Count 5: The "Extended Terms", Masquerading Under the Procedural Guise of a Common Civil Protective Order, Violate Substantive Due Process Since They are *Ultra Vires* Issued in Complete Absence of Legal Authority**

124.     *First*, Defendant JOHN J. COUGHLIN acted in reckless defiance of statutory authority on 8/7/18 when he ordered the extended terms against Maravelias by and through

FIRST AMENDED VERIFIED COMPLAINT FOR
DECLARATORY AND INJUNCTIVE RELIEF
- 23 -
PAUL MARAVELIAS
34 MOCKINGBIRD HILL RD WINDHAM, NH 03087

**Appendix Page 77 of 117**

"further conditions" to a civil stalking protective order. New Hampshire state law precisely regulates said civil protective orders and enumerates the types of relief which may be granted.

125.    Defendants' extended terms are in excess of the permitted forms of relief for NH civil stalking protective orders. The local NH district courts have jurisdiction over civil stalking protective orders under RSA 633:3-a. RSA 633:3-a, III-a states, "The types of relief that may be granted [with such civil protective orders] … shall be the same as those set forth in RSA 173-B [the similar statute controlling Domestic Violence protective orders]".

126.    RSA 173-B:5 exclusively enumerates the forms of additional relief New Hampshire state courts may grant in such DV or stalking protective orders, as follows:

"(a) Protective orders:
(1) Restraining the defendant from abusing the plaintiff.
(2) Restraining the defendant from entering the premises and curtilage where the plaintiff resides, except when the defendant is accompanied by a peace officer and is allowed entry by the plaintiff for the sole purpose of retrieving personal property specified by the court.
(3) Restraining the defendant from contacting the plaintiff or entering the plaintiff's place of employment, school, or any specified place frequented regularly by the plaintiff or by any family or household member.
(4) Restraining the defendant from abusing the plaintiff, plaintiff's relatives, regardless of their place of residence, or plaintiff's household members in any way.
(5) Restraining the defendant from taking, converting, or damaging property in which the plaintiff may have a legal or equitable interest.
(6) Directing the defendant to relinquish to the peace officer, in addition to the relief specified in RSA 173-B:5, I, any and all deadly weapons…
(7) Granting the petitioner exclusive care, custody, or control of any animal owned, possessed, leased, kept, or held by the petitioner….
(b) Other relief including, but not limited to:
(1) Granting the plaintiff the exclusive use and possession of the premises and curtilage of the plaintiff's place of residence…
(2) Restraining the defendant from withholding items of the plaintiff's personal property specified by the court. A peace officer shall accompany the plaintiff in retrieving such property to protect the plaintiff.
(3) Granting to the plaintiff the exclusive right of use and possession of the household furniture, furnishings, or a specific automobile…
(4) Ordering the defendant to make automobile, insurance, health care, utilities, rent, or mortgage payments.
(5) Awarding temporary custody of the parties' minor children to either party or, where

appropriate, to the department, provided that: …
(6) Establishing visitation rights with regard to the parties' minor children. …
(7) Directing the defendant to pay financial support to the plaintiff or minor children, unless the defendant has no legal duty to support the plaintiff or minor children.
(8) Directing the abuser to engage in a batterer's intervention program or personal counseling. …
(9) Ordering the defendant to pay the plaintiff monetary compensation for losses suffered as a direct result of the abuse which may include, but not be limited to, loss of earnings or support, medical and dental expenses, damage to property, out-of-pocket losses for injuries …
(10) Ordering the defendant to pay reasonable attorney's fees."

127.    Absolutely nowhere in either the New Hampshire civil stalking protective order statute nor the procedurally-controlling DV protective order statute are Defendants authorized to enjoin broad prophylactic injunctions against the free speech and due process rights to "possess" public "social media communications" from the internet for one's legal defense.

128.    *Second*, as an officer of the NH local Derry District Court, Defendant JOHN J. COUGHLIN did not have any general equitable jurisdictional power to enjoin such terms against Maravelias even if they were not otherwise unconstitutional. The NH local District Court has jurisdiction over such civil stalking protective order cases pursuant to RSA 502-A:14, "Civil Causes. – I. Exclusive Jurisdiction" which states, "all district courts shall have original and exclusive jurisdiction of civil cases in which the damages claimed do not exceed $1,500". The NH District Court does not have general equitable powers, which is reserved to the NH Superior Court. *See* RSA 498:1, "Jurisdiction", which states "the superior court shall have the powers of a court of equity in … cases in which there is not a plain, adequate and complete remedy at law; and in all other cases cognizable in a court of equity". Thus, Defendant JOHN J. COUGHLIN, within a civil stalking protective order case, had no legal authority to grant relief not specifically authorized by the controlling statute(s) therefor.

FIRST AMENDED VERIFIED COMPLAINT FOR
DECLARATORY AND INJUNCTIVE RELIEF                    - 25 -                    PAUL MARAVELIAS
34 MOCKINGBIRD HILL RD WINDHAM, NH 03087

Appendix Page 79 of 117

129.     Accordingly, Defendant JOHN J. COUGHLIN'S 8/7/18 order granting the extended terms against Maravelias constitutes an arbitrary, despotic act done *ultra vires* in total absence of constitutional, statutory, and jurisdictional authority.

130.     <u>Defendant JOHN J. COUGHLIN'S conduct was extreme and outrageous, malicious, wanton and reckless, shocking to the conscience, completely outside the boundaries of propriety and lawfulness, and contemptuous of the moral ethos of the State of New Hampshire and the United States of America.</u>

131.     Defendants acted <u>willfully, knowingly, and maliciously</u> in a coordinated effort to disparage *pro se* Paul Maravelias's federal constitutional rights by unilateral acts of judicial tyranny: Maravelias's 7/5/18 Objection <u>articulately warned</u> Defendants of the illegality of the proposed extended terms and that granting them would be in excess of legal authority. *See* Paragraphs 23 through 25 of Maravelias's 7/5/18 Objection. (**Exhibit B**)

132.     Jointly regarding Counts 3, 4, and 5, the Defendants, acting under color of state law, have threatened to and will enforce and implement the above-identified "extended terms" against Plaintiff Maravelias, in violation of his Fourteenth Amendment due process rights.

133.     Jointly regarding Counts 3, 4, and 5, as a direct and proximate result of Defendants' unlawful conduct, Plaintiff Maravelias has and will suffer irreparable harm and injury, which will continue absent relief. Wherefore, Plaintiff respectfully prays the Court grant the relief set forth hereunder in the section entitled "Prayer for Relief".

**COUNT 6**
**VIOLATION OF EQUAL PROTECTION UNDER THE FOURTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION (42 U.S.C. §1983)**

134.     All paragraphs hereinabove are repeated herein as though fully set forth.

135.     The Fourteenth Amendment guarantees that "no state shall ... deny to any person within its jurisdiction the equal protection of the laws."

136.     Never before in history has a NH Circuit Court ordered a civil stalking order respondent not to "possess" "directly or through a third-party" "social media communications" of a petitioner.

137.     Since Defendants' extended terms were issued without any legal authority (*See supra*), other NH civil stalking protective order respondents are not – nor ever have been – ordered in a fashion which similarly-situated Maravelias has been ordered here.

138.     Equivalently, no other petitioners in such actions are enabled to have their opponents "ordered" to not "possess" public internet evidence as part of their opposing case, as similarly-situated DePamphilis has been enabled here.

139.     Defendant JOHN J. COUGHLIN did not even attempt to justify his 8/7/18 order nor make any specific findings of fact or law harmonizing the extended terms to the particular contours of the Maravelias-DePamphilis case. He just reflexively scribbled "DENIED" on Maravelias's Objection and "GRANTED" on DePamphilis's original Motion.

140.     Accordingly, Defendants' extended terms violate the Equal Protection clause, since similarly situated petitioners and respondents in New Hampshire civil stalking protective order proceedings are currently accorded inconsistent, unequal rights.

141.     Defendants, acting under color of state law, have threatened to and will enforce and implement the above-identified "extended terms" against Plaintiff Maravelias, in violation of his Fourteenth Amendment equal protection rights.

142.     As a direct and proximate result of Defendants' unlawful conduct, Plaintiff Maravelias has and will suffer irreparable harm and injury, which will continue absent relief.

1

2    Wherefore, Plaintiff respectfully prays the Court grant the relief set forth hereunder in the

3    section entitled "Prayer for Relief".

### COUNT 7
### EX POST FACTO LAW UNDER ARTICLE II § 10 cl. 1 OF
### THE UNITED STATES CONSTITUTION (42 U.S.C. §1983)

143.    All paragraphs hereinabove are repeated herein as though fully set forth.

144.    Since Defendants' extended terms did not contain any effective start date, they became enforceable with the underlying stalking order in relation to <u>all times</u> said stalking order was in effect, whether before the 8/7/18 granting of said terms or not.

145.    The extended terms therefore violate the Ex Post Facto clause of the U.S. Constitution, criminalizing Maravelias for any "possession" after the protective order was extended but before the "extended terms" were granted.

146.    Defendants, acting under color of state law, have threatened to and will enforce and implement the above-identified "extended terms" against Plaintiff Maravelias, in violation of the Ex Post Facto clause of the U.S. Constitution.

147.    As a direct and proximate result of Defendants' unlawful conduct, Plaintiff Maravelias has and will suffer irreparable harm and injury, which will continue absent relief. Wherefore, Plaintiff respectfully prays the Court grant the relief set forth hereunder in the section entitled "Prayer for Relief".

### COUNT 8
### NH RSA 633:3-A, III-C. IS FACIALLY OVERBROAD IN
### VIOLATION OF THE FIRST AMENDMENT TO THE U.S. CONSTITUTION

148.    All paragraphs hereinabove are repeated herein as though fully set forth.

FIRST AMENDED VERIFIED COMPLAINT FOR
DECLARATORY AND INJUNCTIVE RELIEF

- 28 -

PAUL MARAVELIAS
34 MOCKINGBIRD HILL RD WINDHAM, NH 03087

149.     Defendants' unlawful extended terms against Maravelias are in-effect by the existence of an extended civil stalking protective order, extended pursuant to RSA 633:3-a, III-c. In relevant part, the said statute reads:

> "Any order under this section shall be for a fixed period of time not to exceed one year, but may be extended by order of the court upon a motion by the plaintiff, showing good cause, with notice to the defendant, for one year after the expiration of the first order and thereafter each extension may be for up to 5 years, upon the request of the plaintiff and at the discretion of the court. The court shall review the order, and each renewal thereof <u>and shall grant such relief as may be necessary to provide for the safety and well-being of the plaintiff.</u>" (Emphasis added)

150.     Maravelias has standing to bring this facial challenge. He was affected by RSA 633:3a, III-c. in the past and could likely be in the future. However, he is not currently subject to any current criminal prosecutions under RSA 633:3-a.

151.     This statute permits extension of such protective orders if plaintiff's "well-being" primarily would be jeopardized without an extension, even if concern for "safety" is minimal. The Oxford English Dictionary defines "well-being" as "the state of being comfortable, healthy or happy." <u>Therefore, if a petitioner merely alleges she would be "uncomfortable" or "unhappy" without the extension, the state court is required to extend it.</u>

152.     Said protective orders inflict extensive restrictions against a subject's constitutional rights, such as no-contact and firearms relinquishment orders.

153.     The statute is therefore facially overbroad in violation of the First Amendment, because it enables trial courts to extend such protective orders based on a respondent's constitutionally protected non-threatening public speech which could "discomfort" the petitioner, thereby triggering the overbroad "well-being" standard for extension.

154.     The statute's language is therefore not narrowly-tailored to serve a significant governmental interest. It does not grant respondents any alternative channels to express

FIRST AMENDED VERIFIED COMPLAINT FOR
DECLARATORY AND INJUNCTIVE RELIEF     - 29 -     PAUL MARAVELIAS
34 MOCKINGBIRD HILL RD WINDHAM, NH 03087

Appendix Page 83 of 117

themselves in public which could "discomfort" or "displease" petitioners without being

punished by extended-duration restrictions of their constitutional rights. The overbroad statute

therefore has a chilling effect against appropriate speech to such protective order respondents.

155.    The "well-being" standard in the statute is overbroad also because it is not

narrowly-tailored to serve the actual governmental interest of the statute, which is not

preventing "displeasure" or "discomfort" of petitioners, but rather protecting them from

"stalking" – conduct causing a "reasonable person to fear for their physical safety".

*See* RSA 633:3-a, I.

156.    The "well-being" standard in the statute inescapably renders it a content-based

speech regulation, since a respondent's public expression which is "displeasing" to the

petitioner would alone satisfy the "well-being" standard for extending it, whereas agreeable

public speech not upsetting the petitioner would not trigger the "well-being" standard.

157.    The statute is both overinclusively and underinclusively not narrowly tailored.

*First*, it punishes respondents' acts of public expression which are not contrary to the

governmental interest of preventing stalking (e.g., publicly disagreeing with the fact that a

stalking order was issued). *Second*, it fails to equally punish *new* stalking order defendants

with its overbroad "well-being" extension standard. *Cf.* RSA 633:3-a, III-a, the more stringent

legal standard for initial issuance of a stalking order requiring a "stalking course of conduct",

as opposed to mere indication that granting the order serves a petitioner's "well-being".

158.    This overbroad "well-being" standard is applied in every single stalking order

extension case under RSA 633:3-a, III-c. There are no constitutionally valid ways for NH

courts to implement this statute without disobeying it. Even if the statute simply read "safety

*or* well-being" instead of "safety *and* well-being", courts would at least have some leeway to

avoid an unconstitutionally broad application in every case. However, the statute's plain language implies it is substantially overbroad necessarily for every single application thereof.

159.    Defendants, acting under color of state law, are enforcing a facially overbroad statute, RSA 633:3-a, III-c., in violation of the First Amendment to the U.S. Constitution. Wherefore, Plaintiff respectfully prays the Court grant the relief set forth hereunder in the section entitled "Prayer for Relief".

**COUNT 9**
**NH RSA 633:3-A, III-C. IS FACIALLY VOID FOR VAGUENESS IN VIOLATION OF THE FOURTEENTH AMENDMENT TO THE U.S. CONSTITUTION**

160.    All paragraphs hereinabove are repeated herein as though fully set forth.

161.    "A statute can be impermissibly vague for either of two independent reasons. First, if it fails to provide people of ordinary intelligence a reasonable opportunity to understand what conduct it prohibits. Second, if it authorizes or even encourages arbitrary and discriminatory enforcement." *Hill v. Colorado*, 530 U.S. 703,732 (2000).

162.    The language of RSA 633:3-a, III-c. is unintelligible and so loosely constrained that arbitrary, discriminatory enforcement thereof is inevitable. Not only is the term "well-being" too vague, but also the extent to which the preceding term "safety" narrows or qualifies "well-being".

163.    This vagueness is substantially likely or guaranteed to complicate every stalking order extension case brought before NH state courts, regardless of the particular facts of such cases. The statute provides zero guidance on how trial court judges should interpret "well-being", or on what conduct beyond threatening speech or actual violence would permit extension not necessarily to serve a plaintiff's "safety", but rather their "well-being".

FIRST AMENDED VERIFIED COMPLAINT FOR
DECLARATORY AND INJUNCTIVE RELIEF
- 31 -
PAUL MARAVELIAS
34 MOCKINGBIRD HILL RD WINDHAM, NH 03087

**Appendix Page 85 of 117**

164.     For instance, one judge might consider a "well-being" order ridiculous and far in-excess-of the legislative counter-stalking intent, calibrating his or her judgements to the statute's broad "safety" context, even applying *ejusdem generis* to constrain "well-being" thereby. However, another judge might reject this interpretation, "safety and well-being" not being a list, and adopt the plain meaning of the word "well-being".

165.     The statute's vagueness is not only semantic but also syntactic, fraught with meaningful ambiguity between the co-possible constructions "shall grant such relief as may be necessary to provide for the (safety and well-being)" and "… relief as may be necessary to provide for the safety, and (relief as may be necessary to provide for the) well-being". The former interpretation begets tautology, the latter overbroad plaintiff-sycophancy. Both interpretations are reasonable but produce vastly different legal outcomes.

166.     The comparable protective order laws of no other US state discard the initial-issuance-standard for something pointlessly different for extension, as does New Hampshire's unconstitutionally defective statute. For example, the analogous Massachusetts statute for extension of Civil Harassment Orders, M.G.L. 258E §3(d), states in relevant part that "the court [may extend the] [harassment] order … as it deems necessary to protect the plaintiff from harassment." *Id*. It does not switch the legal standard to something different and overbroad when it concerns extension, requiring a "stalking course of conduct" for an original order but only vague "interest in well-being" for subsequent extensions, as with the defective New Hampshire statute. *Cf. also* 19-A M.R.S. 4007(2), the analogous Maine statute controlling extension of DV protective orders following civil adjudications of "abuse": "the court may extend an order, upon motion of the plaintiff, for such additional time as it determines necessary to protect the plaintiff … from abuse."

FIRST AMENDED VERIFIED COMPLAINT FOR
DECLARATORY AND INJUNCTIVE RELIEF                    - 32 -                    PAUL MARAVELIAS
34 MOCKINGBIRD HILL RD WINDHAM, NH 03087

Appendix Page 86 of 117

167.    That a statute's unintelligibility to an average person and propensity for arbitrary enforcement violates the due process rights guaranteed by the Fourteenth Amendment is pellucid – especially here, where said vague statute controls the extension of court orders severely limiting other federal constitutional rights.

168.    Defendants, acting under color of state law, are enforcing an unconstitutionally vague statute, RSA 633:3-a, III-c., in violation of the Fourteenth Amendment to the U.S. Constitution. Wherefore, Plaintiff respectfully prays the Court grant the relief set forth hereunder in the section entitled "Prayer for Relief".

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Paul Maravelias respectfully requests this Honorable Court:

I.     Issue a preliminary injunction prohibiting all non-judicial Defendants and their officials, employees, and agents from implementing or enforcing the said "extended terms" to the civil protective order against Maravelias in New Hampshire Circuit Court Case No. 473-2016-CV-00124;

II.    Enter a declaratory judgment that Defendants' said criminally-enforceable "extended terms" violate Maravelias's civil constitutional rights as guaranteed by the First Amendment to the U.S. Constitution;

III.   Enter a declaratory judgment that Defendants' said criminally-enforceable "extended terms" violate Maravelias's civil constitutional rights as guaranteed by Part I, Article 22 of the New Hampshire Constitution;

IV.   Enter a declaratory judgment that Defendants' said criminally-enforceable "extended terms" violate Maravelias's due process and equal protection rights as guaranteed by the Fourteenth Amendment to the U.S. Constitution;

V.    Enter a declaratory judgment that Defendants' said "extended terms" to the civil protective order are in excess of NH state statutory protective order law;

VI.   Enter a declaratory judgment that Defendants' said "extended terms" to the civil protective order violate the Ex Post Facto clause of the U.S. Constitution;

FIRST AMENDED VERIFIED COMPLAINT FOR
DECLARATORY AND INJUNCTIVE RELIEF                     - 33 -                     PAUL MARAVELIAS
                                                                                  34 MOCKINGBIRD HILL RD WINDHAM, NH 03087

Appendix Page 87 of 117

VII.    Enter a declaratory judgment that New Hampshire RSA 633:3-a, III-c. is
        unconstitutionally overbroad on its face in violation of the First and Fourteenth
        Amendments to the U.S. Constitution;

VIII.   Enter a declaratory judgment that New Hampshire RSA 633:3-a, III-c. is
        unconstitutionally vague on its face in violation of the Fourteenth Amendment to
        the U.S. Constitution;

IX.     Enter a permanent injunction to prevent future unlawful conduct by Defendants;

X.      Award Plaintiff the reasonable costs and disbursements of this action;

XI.     Grant any further relief as may be deemed just and proper.

---

I, Paul Maravelias, declare that all factual stipulations within the foregoing
First Amended Verified Complaint are true and accurate to the best of my
knowledge as of 5/6/2019.

Respectfully submitted,

PAUL J. MARAVELIAS

*in propria persona*

/s/ Paul J. Maravelias, *pro se*                    Dated: May 6th, 2019

**Paul J. Maravelias**
34 Mockingbird Hill Rd
Windham, NH 03087
paul@paulmarv.com
603-475-3305

FIRST AMENDED VERIFIED COMPLAINT FOR
DECLARATORY AND INJUNCTIVE RELIEF                    - 34 -                    PAUL MARAVELIAS
                                                                              34 MOCKINGBIRD HILL RD WINDHAM, NH 03087

**Appendix Page 88 of 117**

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## CERTIFICATE OF SERVICE

I, Paul Maravelias, certify that a timely provided copy of this document is being sent on this date to all counsel of record for the Defendants pursuant to the rules of this Court.

/s/ Paul J. Maravelias, *pro se*                          Dated: May 6th, 2019

**Paul J. Maravelias**

FIRST AMENDED VERIFIED COMPLAINT FOR
DECLARATORY AND INJUNCTIVE RELIEF                - 35 -                PAUL MARAVELIAS
34 MOCKINGBIRD HILL RD WINDHAM, NH 03087

Appendix Page 89 of 117

# EXHIBIT A

## STATE OF NEW HAMPSHIRE

ROCKINGHAM, SS                    10TH CIRCUIT – DISTRICT DIVISION – DERRY

Docket No. 473-2016-CV-124

Christina DePamphilis

v.

Paul Maravelias

## PETITIONER'S MOTION FOR MODIFICATION OF STALKING FINAL ORDER OF PROTECTION TO INCLUDE FURTHER CONDITIONS

NOW COMES the Petitioner Christina DePamphilis, by and through her attorneys, Preti Flaherty PLLP, and respectfully submits the within Motion for Modification of Stalking Final Order of Protection to Include Further Conditions and, in support thereof, states as follows:

1.      In a June 15, 2018 Order, the Court granted Petitioner's Motion to Extend the Stalking Final Order of Protection in this case until February 5, 2019.

2.      Respondent subsequently filed a Motion for Reconsideration, seeking the Court to reverse its decision on Petitioner's Motion to Extend, to which Petitioner is objecting in a separate pleading.

3.      As the Court is aware from the evidence and testimony presented at the extension hearing, in a November 2017 letter to undersigned counsel, Respondent vowed to "go nuclear and utterly destroy (Christina's) academic and professional future…" (Petitioner's Ex. 2 at hearing).  On December 10, 2017, Respondent made good on that threat by sending an e-mail to four Windham High School teachers calling Christina libelous names and urging that she be kicked out of the National Honor Society (Petitioner's Ex. 3 at hearing).

13188052.1

# EXHIBIT A

4.      In addition, Respondent introduced numerous exhibits at the hearing demonstrating that he is closely monitoring Petitioner's social media and Internet activity and accessing material that he is not intended to see.

5.      Respondent was criminally charged with violating the Stalking Order by sending the December 2017 e-mail to Christina's school.  The State, however, recently *nol prossed* the charge.

6.      Given this evidence, corroborated and confirmed by Respondent's own testimony, it is appropriate that Petitioner be afforded further specific protections under the Stalking Final Order of Protection.  The requested protections are:

   a.  Respondent shall not gain access to or possess any of Petitioner's social media communications either directly or through a third party;

   b.  Respondent shall not communicate with Petitioner's current or future academic providers; and

   c.  Respondent shall not communicate with Petitioner's current or future employers.

7.      While the State, in this instance, chose not to prosecute Respondent for his e-mail to Windham High School, this does not mean it was legitimate or protected conduct.  Without any doubt, the e-mail was intended to academically and reputationally harm Christina, as Respondent had pledged to do one month earlier.

8.      By requesting that Respondent be prohibited from contacting Christina's present and future schools and employers, such harassment and potential academic and professional harm will be prevented.

9.      A Final Order of Protection may only be modified by order of the Court.  RSA 173-B:5, VIII (a).  These are well-justified modifications to the Order which are tailored to the facts and history of this case and are "necessary to bring about a cessation of abuse."  *See* RSA

13188052.1

# EXHIBIT A

173-B:5, I.  The three requested conditions also address Petitioner's legitimate concern that Respondent may take further actions that will harm her academic and professional future.

WHEREFORE, for the reasons set forth above, Petitioner respectfully requests this Honorable Court to:

A.  Grant Petitioner's Motion by adding the three conditions requested;

B.  Modify the Stalking Final Order of Protection to include the following three conditions:

1. Respondent shall not gain access to or possess any of Petitioner's social media communications either directly or through a third party;

2. Respondent shall not communicate with Petitioner's current or future academic providers; and

3. Respondent shall not communicate with Petitioner's current or future employers; and

C.  Grant such other relief as may be just and proper.

Respectfully submitted,

CHRISTINA DePAMPHILIS

By her attorneys,

PRETI, FLAHERTY, BELIVEAU & PACHIOS, PLLP

Dated: July 2, 2018

By: _____
Simon R. Brown, NH Bar #9279
P.O. Box 1318
Concord, NH 03302-1318
(603) 410-1500

3

13188052.1

# EXHIBIT B

July 5th, 2018

Robin E. Pinelle, Circuit Clerk
NH Circuit Court
10th Circuit – District Division – Derry
10 Courthouse Lane
Derry, NH 03038

Paul Maravelias
34 Mockingbird Hill Rd
Windham, NH 03087

RE:  **Christina DePamphilis vs. Paul Maravelias**
     **Docket No. 473-2016-CV-00124**

Dear Clerk Pinelle,

Enclosed please find Respondent's *Objection to Petitioner's Motion for Modification of Stalking Final Order of Protection to Include Further Conditions* to be filed in the above-referenced case.

Thank you for your attention to this matter.

Sincerely,

Paul J. Maravelias

CC: Simon R. Brown, Esq.

I, Paul Maravelias, certify that a copy of the present *Objection to Petitioner's Motion for Modification of Stalking Final Order of Protection to Include Further Conditions* was forwarded on this day through USPS Certified Mail to Simon R. Brown, Esq., counsel for the Petitioner, P.O. Box 1318, Concord, NH, 03302-1318.

# EXHIBIT B

## THE STATE OF NEW HAMPSHIRE

ROCKINGHAM, SS                    10TH CIRCUIT – DISTRICT DIVISION – DERRY

Docket No. 473-2016-CV-00124

Christina DePamphilis

v.

Paul Maravelias

## RESPONDENT'S OBJECTION TO PETITIONER'S MOTION FOR MODIFICATION OF STALKING FINAL ORDER OF PROTECTION TO INCLUDE FURTHER CONDITIONS

NOW COMES the Respondent, Paul Maravelias, and moves this Court to deny Petitioner's baseless *Motion for Modification of Stalking Final Order of Protection to Include Further Conditions* dated 7/2/18. In support thereof, he represents as follows:

1.  On 7/2/18, David DePamphilis's daughter, the Petitioner, filed the aforementioned Motion to impose even more severe court-ordered restrictions on Maravelias's public free-speech rights, even after her outright lies, inconsistent statements, and vulgar acts of harassment against Maravelias were undeniably exposed in numerous ways during hearings before this Court on 5/3, 5/4, and 6/8 of this year.

**A.  PETITIONER CHRISTINA DEPAMPHILIS'S MOTION AIMS TO EXCUSE HER DOCUMENTED ILLEGAL BEHAVIORS AND EMPOWER HER TO CONTINUE VIOLATING THE LAW, AND IS BUT ANOTHER PREDICTABLE ACT IN HER CONTINUED CAMPAIGN OF LEGAL HARASSMENT AGAINST MARAVELIAS**

1

# EXHIBIT B

2.    As this Court will remember, Christina DePamphilis has cruelly bullied the victim, Mr. Maravelias, with incitative, vulgar, and insulting posts on her <u>public</u> social media profile(s) during the pendency of her criminally falsified "stalking" order against the victim/Respondent.

3.    She now seeks to have this Court outlaw Maravelias's mere possessing a record of her behavior.

4.    In particular, in June 2017, Petitioner posted an inflammatory picture of her boyfriend *directly addressing* the victim and making incitative comments against him (6/19/18).

5.    After failing to elicit any response from Maravelias that would violate her bad-faith "stalking" order against him, she then posted a rehearsed image of herself, her father David DePamphilis, and her 21-year-old boyfriend Matthew LaLiberte, all middle-fingering the victim, and also making an incitative comment against the victim which identified him.

6.    Viewed in the light of her acts of criminal harassment (RSA 644:4) against Mr. Maravelias, the Petitioner's present motion to prohibit Maravelias from "gaining access" to or even "possessing" these public posts, even from "third parties", is a risible perversion of propriety.

7.    Essentially, <u>Christina DePamphilis wishes to be legitimated by this Court to continue her vulgar harassment of Mr. Maravelias while injunctively restraining him from even using her outrageous public social media exhibits for legal purposes to defend himself</u>. This Court should feel insulted by such a disrespectful and inappropriate attempt to abuse its power.

8.    The Petitioner's continued conduct of filing baseless motions against the victim is for no valid purpose beyond solely to harass him; this Court should impose sanctions against her accordingly for such repeated and patently unreasonable motions against Mr. Maravelias.

# EXHIBIT B

9.    Furthermore, the Petitioner's motion attempts to excuse her generic illegal behaviors, past and future, demonstrated on her social media, in which Mr. Maravelias is not the victim.

10.    In the Motion to Extend Hearing, this Court accepted *inter alia* a relevant evidentiary exhibit of the "minor" Petitioner – a picture from her social media. In this post, she had pictured herself, at age 16, holding a purse in her right hand and an open bottle of vodka in her left while leaving a party at "4:43am", with her parked, about-to-be-driven car in the background.

11.    Christina DePamphilis also documented her psychoactive substance abuse, her private . sexual behaviors[1], and her further underage alcoholic consumption in other social media postings.

12.    Thus, <u>the Petitioner's current desire to handcuff Maravelias in his public free speech rights to third-parties is but a panicked "futile attempt" to avoid responsibility for her pictured acts of law-breaking and perjury[2]</u>, should Maravelias discontinue his magnanimous decline so-far to lawfully document said public postings on the web, as he lawfully threatened to do in a November 2017 response to Attorney Brown's out-of-the-blue threatening letter[3].

---

[1] If this Court were to grant Petitioner's Motion and thereby enter the enterprise of unlawfully policing private conducts of speech, it would at least be equitable for the Court to order Christina DePamphilis to cease and desist making improper posts revealing her private sexual behaviors before peers. Upon information and belief, this behavior is socially unacceptable, and is considered disturbing by her peers. It is not practiced by other youth, even by ones who picture themselves violating state laws on alcohol/marijuana consumption. While the latter is at least somewhat socially acceptable, the Petitioner has caused discomfort to her peers with her unwanted social media indications of her private sex life. These should never be publicly posted on social media, especially given her age.

[2] Christina DePamphilis maintained her false claim under oath on 5/3/18 that she has "fear for her physical safety" of Mr. Maravelias, despite her abusive, harassing, and unlawful conduct victimizing Mr. Maravelias. Indeed, this Court has validated Christina DePamphilis's hurtful law-breaking, in wrongfully granting an extension on her Stalking Order. That matter is pending this Court's review in a reconsideration pleading filed by Respondent.

[3] Maravelias has every right to publicly republish her legally-public postings, as acknowledged by the mere existence of the instant motion by Petitioner, the daughter of David DePamphilis, to injunct against said right.

3

# EXHIBIT B

13.    The Petitioner requests that it be unlawful for Maravelias to even "possess" her social media postings. This is so absurd that it would criminalize Mr. Maravelias for merely owning his copy of this Court's own public evidence exhibits from this case which he used at Hearing.

14.    Thus, it would also violate the "Right to Know" law (91-A), guaranteeing access to public court records, *e.g.* Christina DePamphilis's posting of herself middle-fingering her victim.

15.    While it is strongly speculated that there are many photographs in existence of the 17-year-old female Petitioner which are already quite unlawful for anyone to even possess[4], these are most certainly not the public social media postings in question, which are fully lawful for legal use.

**B.  PETITIONER'S MOTION DISHONESTLY OMITS PARTS OF MARAVELIAS'S ALLEGED "THREATNING QUOTE" TO OBFUSCATE THE FACT THAT HE WAS MERELY COUNTER-THREATENING LAWFUL DETERRENT RETALIATION IF LEGALLY ATTACKED**

16.    The Petitioner seems quite fixated on the fact that Maravelias merely *responded to* Attorney Brown's provocative, threatening letter to him. Maravelias made a comment along the lines that he would "go nuclear and utterly destroy [Christina's] academic and professional future".

17.    Conveniently, Petitioner omits the second part of Maravelias's actual sentence: "[share her own public social media artifacts], should David dare challenge [Maravelias] legally".

18.    Thus, Petitioner's counsel first provoked Maravelias with an absurd, causeless threat of lawsuit, and Maravelias then lawfully counter-threatened to share Petitioner's already-public social media posts, which might have a negative effect on her future due to her own outrageous behaviors.

---

[4] 18 U.S.C. § 2251, RSA 649-A:3

# EXHIBIT B

**C. PETITIONER'S MOTION HAS NO BASIS IN THE LAW WHATSOEVER, AS THE REQUESTED RELIEF FAR EXCEEDS THE POWERS GRANTED TO THIS COURT BY THE LAW AND WOULD FURTHER BLATANTLY ABUSE MARAVELIAS'S BASIC CONSTITUTIONAL RIGHTS TO FREE SPEECH, PRESS, AND PETITION, AMONG OTHERS**

*"Free speech and Liberty of the press are essential to the security of Freedom in a State: They ought, therefore, to be inviolably preserved."* – N.H. Const., Part I, Article 22

19.    A Stalking Order – whether lawfully issued or not – does not grant a trial court unspecified powers to enjoin broad prophylactic injunctions on First Amendment-protected speech against Respondent. Petitioner's Motion seeks no relief whatsoever regarding Maravelias's conduct *with her*, but rather his speech to third-party actors. This is shameful and cowardly.

20.    "Only narrow categories of speech, such as defamation, incitement and pornography produced with real children, fall outside the ambit of the right to free speech." State v. Zidel, 156 N.H. 684, 686, 940 A.2d 255 (2008). As Petitioner's requested terms seek to injunct against Maravelias's free speech rights in none of the aforecited unprotected categories[5], but rather would proscribe any and all communications with large classes of third party individuals, her motion must be unquestionably denied.

21.    If this Court were to abuse its power by granting such latitudinous injunctions against Mr. Maravelias's public speech to parties other than Petitioner, it would incur liability in federal – let alone state-level – lawsuits for damages on the grounds of willful, reckless First Amendment transgression. Since this Court is well-aware of the facts and circumstances of this case and has demonstrated a repeated pattern of inexcusable conduct evincing a clear bias against Respondent, it

---

[5] Insofar as the Petitioner falsely claims Maravelias's 12/10/17 email regarding her conduct was "libelous", the proper remedy for defamation is recovery of damages through civil equity litigation – not a personal-safety-exclusive Stalking Order. Mr. Maravelias is the victim, not the author, of libelous/slanderous expression.

5

# EXHIBIT B

would be liable for Section 42 U.S.C. § 1983 federal damages in violating Respondent's

constitutional rights while acting under color of state law.

22.   That such violations be knowing or willful is not a prerequisite element for § 1983 action.

23.   While the Court has authority to issue specific orders of protection as enumerated on the

standard form for Stalking Orders requested by Petitioner *prior to and not after* any hearing, the

Court may do so only "as is necessary to bring about a cessation of stalking". *See* RSA 633:3-a, III-

a. Furthermore, 633:3-a, II. narrows the legal definition "stalking" such that it "shall not include

constitutionally protected activity, nor shall it include conduct that was necessary to accomplish a

legitimate purpose independent of making contact with the targeted person".

24.   Therefore, the requested modifications to the Stalking Order are absolutely illegal. They

overwhelmingly exceed the Court's statutory authority to prohibit solely acts of further "stalking",

of which constitutionally protected speech (*e.g.,* to own/use public social media postings or

communicate with public employees independent of contacting Petitioner) is not.

25.   Furthermore, if the Court nonetheless asserted an undefined power to grant these expanded

injunctions against Respondent, it would violate plainly established protections on constitutional,

legitimate speech to third-parties who are not plaintiffs in any civil protective order. Such a court

order would be contemptuous of Part I, Article 22 of the State Constitution and the First and

Fourteenth Amendments of the Federal Constitution, *inter alia*.

26.   The relief sought in Petitioner's motion is unconstitutional for being impossibly vague and

woefully overbroad. "Courts are suspicious of broad prophylactic rules in the area of free

expression, and therefore precision of regulation must be the touchstone in an area so closely

touching our most precious freedoms". <u>Montenegro v. New Hampshire Div. of Motor Vehicles</u>, 166

N.H. 215, 220 (2014). The sought expanded terms of protection fail to sustain any "precision of

6

# EXHIBIT B

regulation" standard, as they are impermissibly overbroad and confusingly vague. A statute is considered unconstitutionally "'overbroad' in violation of the First Amendment if in its reach it prohibits constitutionally protected conduct." <u>Grayned v. City of Rockford</u>, 408 U.S. 104, 114 (1972).

27.    The second and third sought orders of protection forbid that the Respondent should contact Petitioner's "present or future" "academic providers" or "employers". In imposing such groundless authoritarian sanctions against Maravelias, the Court would expect him to conjure a supernatural ability to presciently discern through a crystal ball who might be her "future employer(s)" or who might be her future/current "academic provider(s)", a term which is in itself impossibly vague.

28.    Clearly, these measures are wickedly crafted <u>to outlaw any and all acts of constitutionally protected, self-defensive speech Maravelias may take on the web or elsewhere to defend his own wrongfully discredited name, traduced in envy by the Petitioner-attention-seeker, as any public act of speech whatsoever could be visible to an "employer" or "academic provider".</u>

29.    "The overbreadth doctrine prohibits the Government from banning unprotected speech if a substantial amount of protected speech is prohibited or chilled in the process." <u>Ashcroft v. Free Speech Coal.</u>, 535 U.S. 234, 237 (2002). Even if the requested additional injunctions did function to prevent further acts of "stalking", they are still egregiously overbroad and therefore unactionable manifestations of the statute, due to the copious protected speech that would be simultaneously criminalized. *See* <u>Doyle v. Comm'r, N.H. Dep't. of Resources & Economic Dev.</u>, 163 N.H. 215, 221 (2012), which holds laws facially overbroad under Part I, Article 22 of the State Constitution where "a substantial number of its applications are unconstitutional, judged in relation to the [law's] plainly legitimate sweep". <u>Id</u>.

# EXHIBIT B

30.   This Court must observe the brutally evident reality that Christina DePamphilis finds herself in a guilt-ridden panic-mode state, now that her outrageous acts of protective order falsification have been documented by Maravelias at the Hearing, that the wrong order was actually extended against him (perpetuating the injustice), and that he still has full right to make public speech acts to document her crimes. This Court issues jail sentences routinely in its official duties: why then should it protect a nefarious perjurer-criminal from natural consequences as comparatively tepid as having the objective facts of her own public words further publicized?

## D.  PETITIONER'S CITATION OF RSA 173-B:5 IS INCOMPLETE, DECEPTIVE, AND INVALID

31.   Paragraph 9 of David DePamphilis's daughter's Motion attempts to deceive this Court into believing it has any legal authority whatsoever to grant her request. This is another act of the Petitioner's storied obscurantism and willful misrepresentation of facts.

32.   RSA 173-B is the domestic violence statute, in which the operative legal term is "abuse".

33.   "Abuse" is defined in 173-B:1, I as certain acts performed exclusively "by a family or household member or by a current or former sexual or intimate partner" of the victim.

34.   Mr. Maravelias has never been a "family or household member" of Petitioner, nor one of the many men who may honestly claim to have been her "sexual or intimate partner", thankfully.

35.   Thus, 173-B terminology pertaining to "abuse" is thoroughly inapplicable to the instant case.

36.   Although the procedural stipulations of 173-B are applied to Stalking protective orders under 633:3-a, III-a, this does not mean specific language pertaining to physically violent domestic "abuse" in 173-B may be absorbed into a very different case pertaining to alleged "stalking".

37.   The Petitioner attempts to fool this Court into adopting a strange interpretation of 173-B:5 by obscurantistically omitting the full text of the statute for essential context:

# EXHIBIT B

"I. A finding of abuse shall mean the defendant represents a credible threat to the safety of the plaintiff. Upon a showing of abuse of the plaintiff by a preponderance of the evidence, the court shall grant such relief as is necessary to bring about a cessation of abuse." (Emphasis added)

38.    The Petitioner dishonestly cherry-picks the last 8 words of the statute in Paragraph 9 of her Motion – omitting even the majority of the quoted sentence, let alone the surrounding context – to advance a preposterous interpretation thereof before this Court.[6]

39.    That is, the Petitioner deceitfully conflates the statute controlling *the original issuance of a domestic violence restraining order* with a nonexistent power of this Court *to issue further stalking-related injunctions against Mr. Maravelias* without any form of due process inherent to the original issuance of Stalking order terms of protection, such as a full and fair trial, the notice of criminal consequences for perjurious accusations in the petition form, and a public notary taking the oath of the Petitioner certifying the truth of his or her allegations.

40.    The dishonesty of Petitioner's Paragraph 9 conduct is extreme and willful. This Court should impose sanctions for such blatant attempts to fool it into breaking the law, and the bar association should be contacted regarding a potential Code of Attorney Conduct violation[7].

41.    Absolute judicial immunity exists where a judge acts within a "judicial capacity". <u>Stump v. Sparkman</u>, 435 U.S. 349 (1978). Since issuing unlawful injunctions against Respondent on the basis of an inapplicable legal standard for a separate cause of action (as documented above) establishes a framework in which the Court <u>knows</u> it acts outside of the law, such an act would be in excess of any legitimate "judicial capacity" and would dissolve the ordinary shield of absolute judicial immunity from federal Section 1983 and/or other litigation.

---

[6] See the parallel language specific to Stalking orders in 633:3-a, III-a, which differs from 173-B's text and again pertains to the initial process of Stalking Petition filing and subsequent court order post-hearing, not an unfettered right to grant further unnoticed prayers for relief found nowhere in the Petition nor ever raised at the Hearing.

[7] See New Hampshire Rules of Professional Conduct Rule 1.1 (b)(1), Rule 4.1, and the 2004 ABA Model Rule Comment on Rule 4.1

9

# EXHIBIT B

42.   In further support of the Court's inability to impose unlawful, unconstitutional restrictions

on the public speech of Respondent, see Exhibit A (Respondent's May 2018 Motion to Dismiss

filed in the baseless criminal case against Respondent for his 12/10/17 National Honor Society

ethics complaint email, which Petitioner references in her Motion).

**E.  THE LEGAL SCOPE AND LEGISLATIVE HISTORY OF THE STALKING STATUTE CONCERN PERSONAL SAFETY PROTECTION EXCLUSIVELY – NOT ENFORCING CRIMINAL SANCTIONS FOR ACTS OF DISAGREEABLE SPEECH OR EVEN DEFAMATORY SPEECH.**

43.   The expanded terms requested by Christina DePamphilis have absolutely nothing to do

with protecting her physical safety. They are fretful, neurotic exasperations that the Court order

Maravelias 1) not possess public legal exhibits and 2) not make any communications to third-

parties. Even if this were a legitimate "protection" of someone's "career" or "academics", the law

affords this Court no ability to enforce random "protection" injunctions at its own despotic, nanny-

state volition, as requested.

44.   The Stalking statute permits physical-violence-prevention-related protections exclusively.

**F.  PETITIONER'S ABUSIVE MOTION FALSELY ACCUSES THE RESPONDENT EXACTLY OF HER OWN DISTURBING BEHAVIORS**

45.   When taking breaks from secretly collecting pictures of Maravelias's private bedroom

without his knowledge and harassing him with vulgar middle-finger posts with her boyfriend, the

Petitioner Christina DePamphilis has been monitoring Maravelias's online activity and gaining

access to material she is not intended to see. In a recent filing, she revealed that she has likely

hacked into Maravelias's private business product support forum and accessed Maravelias's private

postings on an off-topic discussion section therefrom.

46.   Given the Petitioner's disturbing and obsessive behaviors, Maravelias understandably feels

violated, uncomfortable, and utterly creeped-out. But, he dares not file another honest and truthful

Stalking petition – even as a victim of true stalking – since this Court has proven its undeniable

# EXHIBIT B

prejudicial hostility against Maravelias in forcing him to pay an opponent's attorney's fees in a

factually corroborated, truthful Petition filed against David DePamphilis.

47. Thus, at the very least, this Court ought not to unlawfully expand the abusive "terms of

protection" in the same extant Stalking Order it knows to be originated in falsification.

48. Furthermore, Respondent Maravelias has been absolutely magnanimous up to this point in

declining to exercise his right to disseminate DePamphilis's outrageous social media postings. The

Court should perceive Maravelias's good-character benevolence, and not further abuse his speech

rights through unilateral acts of judicial tyranny.

49. To prove this, Maravelias represents to have been sent the following social media postings

made by Christina DePamphilis, which he has opted never to share heretofore in any context:

  a. A post showing Christina conspiring with her brother Nicolas DePamphilis over SMS
     about where the two may consume an illegal drug without David DePamphilis
     knowing;

  b. A video of Christina forcing the slurred exclamation "I'm. So. High!" through an
     intoxicated blur while sitting on a toilet at a party;

  c. A highly inappropriate, suggestive video of Christina genuflecting on her knees and
     sucking a frothy white fluid (hypothesized to be whipped cream) into her mouth which
     then appears smeared on her face;

  d. Photographs and videos of Christina climbing out of her second-story bedroom
     window late at night to escape to a party in secret;

  e. A video wherein Christina brags of "passing" a field sobriety test a police officer
     administered to her when pulled over returning from said party;

  f. A photograph proving she was indeed at her Salisbury beach house in February 2017,
     and therefore feloniously perjured before this Court on 5/4/18 when so denying; and

  g. A video picturing Christina intoxicated on a ski lift and casually joking about the
     danger thereof, revealing she later took rescue snowmobile escort down the mountain.

50. Maravelias is not "obsessed" with a delinquent law-breaker. His mind has not been

"preoccupied at all with [her]", as written to Attorney Brown in the November 2017 letter. He has

# EXHIBIT B

not disseminated any of the aforementioned exhibits. This shows his clemency and non-obsession.

<u>If this Court will illegally injunct further against Maravelias's free speech rights through shameful diktats, he will make broader exercise of the free speech rights he still has.</u>

51.  Furthermore, since Maravelias has been sent the social media exhibits in question by independent third parties who support him, the instant Motion to further abuse Maravelias is an incredibly foolhardy act by the Petitioner. It is suspected that these third parties too will discontinue their independent magnanimity in allowing Christina DePamphilis to grow in her delinquency without public correction or documentation of the said.

## CONCLUSION

*"To extend the Stalking Order in this case would show plaintiffs all across the great State of New Hampshire that you can come to court to get a restraining order against someone – to shut them up when they say things you disagree with."* – Paul Maravelias, 6/8/18 Hearing Closing Argument

52.  Mr. Maravelias enjoys enormous validation of his trenchant determination from months ago that the DePamphilis bad-faith "stalking order" abuse against him has been but a cowardly attempt to restrict his speech, having nothing at all to do with a "fear for personal safety".

53.  The Petitioner's shameful, panicked, and obscurantist Motion decisively confirms this.

54.  The said is a but veiled attempt to criminalize Maravelias's quotidian existence. It is a nefarious scheme to conduce an innocent human life into doubtless imprisonment. It is a cowardly contrivance birthed of the perverse validation this Court's errors have tortiously bestowed upon Maravelias's abusers, and lacks any legal merit.  It is beyond shameful that David and Christina DePamphilis still machinate against the victim such dishonest abuse-stratagems which cowardly masquerade under the misleading optics of protectivism.

# EXHIBIT B

55.  To echo familiar language from yesterday's national holiday, in every stage of this Court's oppressions, Mr. Maravelias has petitioned for redress in the most humble terms. <u>His repeated petitions have been answered only by repeated injury</u>. A Court whose character is thus marked by every act which may define a tyrant, is unfit to be the judiciary of a free people.

WHEREFORE, the foregoing compels the Respondent, Paul Maravelias, to pray this Court:

I.  Grant this Motion;

II.  Grant Respondent's 6/25/18 *Motion for Reconsideration*, which will terminate the Stalking Order and dismiss Petitioner's instant Motion as well as this Objection thereto,

III.  Deny Petitioner's *Motion for Modification of Stalking Final Order of Protection to Include Further Conditions*; and

IV.  Hold a Hearing, if necessary, on this matter.

Respectfully submitted,

PAUL J. MARAVELIAS,

*in propria persona*

July 5th, 2018

PAUL MARAVELIAS  —  34 MOCKINGBIRD HILL RD, WINDHAM, NH 03087

# EXHIBIT C

## STATE OF NEW HAMPSHIRE

ROCKINGHAM, SS                    10TH CIRCUIT – DISTRICT DIVISION – DERRY

Docket No. 473-2016-CV-124

Christina DePamphilis

v.

Paul Maravelias

### PETITIONER'S REPLY TO RESPONDENT'S OBJECTION TO MOTION FOR MODIFICATION OF STALKING FINAL ORDER OF PROTECTION TO INCLUDE FURTHER CONDITIONS

NOW COMES the Petitioner Christina DePamphilis, by and through her attorneys, Preti Flaherty PLLP, and respectfully submits the within Reply to Respondent's Objection to Motion for Modification of Stalking Final Order of Protection to Include Further Conditions and, in support thereof, states as follows:

1.      Respondent conflates the concept of "constitutionally protected activity." While such activity cannot be utilized to prove a "course of conduct" in connection with a stalking petition proceeding, *see* RSA 633:3-a, II (a), one's right to travel and contact/associate with other persons certainly may be restricted by the Court in a Final Stalking Order of Protection.  For instance, the Final Stalking Order of Protection now in effect against Respondent prohibits him from "stalking or abusing" Petitioner; from appearing in proximity to her residence, place of employment, or school; and from "stalking or abusing" her household members or relatives.  *See* Final Order of Protection.  The Order also prohibits Respondent from purchasing or obtaining firearms.

1

13208168.1

# EXHIBIT C

2.      Respondent cannot legitimately claim that these standard restrictions violate his free speech rights or ability to associate with others, as they were implemented after a judicial finding that he stalked the victim and are designed to protect the stalking victim.

3.      RSA 633:3-a, III-c states that the Court "shall review the order, and each renewal thereof and shall grant such relief as may be necessary to provide for the safety and well-being of the plaintiff."

4.      Given Respondent's prior threat to harm Petitioner's academic and professional career, his actual attempt to harm her academically at Windham High School, and his apparent threat to post further allegedly embarrassing artifacts about her on the Internet if he does not have his way,[1] a restriction prohibiting Respondent from contacting Petitioner's employers and academic providers is reasonable and necessary to ensure her safety and well-being.  RSA 633:3-a, III-c.

5.      Petitioner would assent to further refining its requests to prohibit Respondent from _knowingly_ contacting Petitioner's employers and academic providers _concerning her._

6.      Petitioner maintains her request that Respondent be prohibited from accessing her social media communications either directly or through a third party, and would assent to a requirement that he not _knowingly_ do so.

7.      The latter restriction is reasonable and not an infringement of Respondent's ability to use computers, conduct work, and pursue legitimate Internet activity.  For a person who repeatedly has claimed to no longer have any use for Petitioner (and has a Stalking Final Order

---

[1] In Respondent's Objection to Motion for Modification at ¶50, he wrote, "If this Court will illegally injunct further against Maravelias's free speech rights through shameful diktats, he will make broader exercise of the free speech rights he still has" (emphasis by Respondent), meaning, it appears to Petitioner, the publication of a list of unflattering posts and videos of Petitioner he lists at ¶ 49 of his Motion.

2                                                13208168.1

# EXHIBIT C

of Protection against him protecting her), compliance with this reasonable restriction should not be difficult and will promote the victim's well-being and safety.

WHEREFORE, for the reasons set forth above and in the Motion for Modification of Stalking Final Order of Protection to Include Further Conditions, Petitioner respectfully requests this Honorable Court to:

A.    Grant Petitioner's original Motion by adding the three conditions requested;

B.    Modify the Stalking Final Order of Protection to include the following three conditions:

1. Respondent shall not <u>knowingly</u> gain access to or possess any of Petitioner's social media communications either directly or through a third party;

2. Respondent shall not <u>knowingly</u> communicate with Petitioner's current or future academic providers <u>about her</u>; and

3. Respondent shall not <u>knowingly</u> communicate with Petitioner's current or future employers <u>about her</u>; and

C.    Grant such other relief as may be just and proper.

Respectfully submitted,

CHRISTINA DePAMPHILIS

By her attorneys,

PRETI, FLAHERTY, BELIVEAU & PACHIOS, PLLP

Dated: July 12, 2018

By: _____
Simon R. Brown, NH Bar #9279
P.O. Box 1318
Concord, NH 03302-1318
(603) 410-1500

3

13208168.1

# EXHIBIT D

55.  To echo familiar language from yesterday's national holiday, in every stage of this Court's oppressions, Mr. Maravelias has petitioned for redress in the most humble terms. <u>His repeated petitions have been answered only by repeated injury</u>. A Court whose character is thus marked by every act which may define a tyrant, is unfit to be the judiciary of a free people.

WHEREFORE, the foregoing compels the Respondent, Paul Maravelias, to pray this Court:

I.    Grant this Motion;

II.   Grant Respondent's 6/25/18 *Motion for Reconsideration*, which will terminate the Stalking Order and dismiss Petitioner's instant Motion as well as this Objection thereto,

III.  Deny Petitioner's *Motion for Modification of Stalking Final Order of Protection to Include Further Conditions*; and

IV.   Hold a Hearing, if necessary, on this matter.

Respectfully submitted,

PAUL J. MARAVELIAS,

*in propria persona*

7/3/18
Respondent's Objection is Denied.

John J. Coughlin

July 5th, 2018

13

PAUL MARAVELIAS  —  34 MOCKINGBIRD HILL RD, WINDHAM, NH 03087

# EXHIBIT E

## CERTIFICATE OF SERVICE

I hereby certify this 2nd day of July 2018 a copy of the foregoing Petitioner's *Motion for Modification of Stalking Final Order of Protection to Include Further Conditions* has been forwarded via U.S. First Class Mail, postage pre-paid, to Respondent, Paul Maravelias, *pro se.*

Simon R. Brown

8/7/18
Granted as to
Petitioner's Request for Relief
A.; B1; B2; B3

John J. Coughlin

4

13188052.1

# EXHIBIT F

## CERTIFICATE OF SERVICE

I hereby certify this 12th day of July 2018 a copy of the foregoing *Petitioner's Reply to Respondent's Objection to Motion for Modification of Stalking Final Order of Protection to Include Further Conditions* has been forwarded via U.S. First Class Mail, postage pre-paid, to Respondent, Paul Maravelias, *pro se.*

Simon R. Brown

8/7/18 The Court granted the The Petitioner's Motion for Modification of Stalking Final Order of Protection on 8/7/18

John J. Coughlin

4

13208168.1

# EXHIBIT G

Robin E. Pinelle, Circuit Clerk
NH Circuit Court
10th Circuit – District Division – Derry
10 Courthouse Lane
Derry, NH 03038

July 16th, 2018

Paul Maravelias
34 Mockingbird Hill Rd
Windham, NH 03087

RE:  **Christina DePamphilis vs. Paul Maravelias**
      **Docket No. 473-2016-CV-00124**

Dear Clerk Pinelle,

Enclosed please find Respondent's *Reply to Petitioner's Reply to Respondent's Objection to Petitioner's Motion for Modification of Stalking Final Order of Protection to Include Further Conditions* to be filed in the above-referenced case.

Thank you for your attention to this matter.

Sincerely,

Paul J. Maravelias

CC: Simon R. Brown, Esq.

I, Paul Maravelias, certify that a copy of the present *Reply to Petitioner's Reply to Respondent's Objection to Petitioner's Motion for Modification of Stalking Final Order of Protection to Include Further Conditions* was forwarded on this day through USPS Certified Mail to Simon R. Brown, Esq., counsel for the Petitioner, P.O. Box 1318, Concord, NH, 03302-1318.

# EXHIBIT G

THE STATE OF NEW HAMPSHIRE

ROCKINGHAM, SS                    10TH CIRCUIT – DISTRICT DIVISION – DERRY

Docket No. 473-2016-CV-00124

Christina DePamphilis

v.

Paul Maravelias

**REPLY TO PETITIONER'S REPLY TO RESPONDENT'S OBJECTION TO PETITIONER'S MOTION FOR MODIFICATION OF STALKING FINAL ORDER OF PROTECTION**

NOW COMES the Respondent, Paul Maravelias, and replies to Petitioner's *Reply to Respondent's Objection to Motion for Modification of Stalking Final Order of Protection to Include Further Conditions* dated 7/12/18. In support thereof, he represents as follows:

**A. CHRISTINA DEPAMPHILIS COMMITTED A CLASS B FELONY UNDER RSA 641:5 I. (B) WHEN SHE FILED THE AFORECITED MOTION; THE COURT WOULD BE COMPLICIT IN THE CRIME OF WITNESS AND INFORMANT TAMPERING TO GRANT SAID MOTION**

1.  As documented in a criminal complaint filed on this date with the Derry Police Department (*see* Exhibit A), Christina DePamphilis committed a class B felony of "Tampering With Witnesses and Informants" when she filed the instant motion in this Court on 7/2/18 to prevent Maravelias from "possessing" her "social media communications", parts of which she knows constitute highly relevant legal exhibits that Maravelias is using in his defense both inside this case and inside the recently-appealed decision of this Court to grant attorney's fees against him in *Paul Maravelias v. David DePamphilis* (473-2017-CV-150).

1

# EXHIBIT G

2.  Therefore, by filing said motion, she "attempt[ed] to induce or otherwise cause [Maravelias] to …withhold any testimony, information, document or thing" [certain social media posts already entered as evidence exhibits] while "believing" and "knowing" that an "official proceeding" was underway. *See* RSA 641:5 I.

3.  Thus, if the Court were to grant her outrageous motion for modification of stalking order terms, the individual judicial actor carrying out such wrongful granting would likewise commit a count of class B felony 641:5 misconduct, as the Petitioner's "social media communications" are supremely relevant in indicating she had no fear of the Respondent (*e.g.*, while cruelly deriding him with her and her boyfriend's middle fingers in an attempt to provoke an inflamed jealousy response and/or stalking order violation), and are therefore material to this Court's pending ruling on Maravelias's Motion for Reconsideration as well as to any appeal which may follow.

## B. PETITIONER'S REPLY GRANTS MEANINGLESS CONCESSIONS IN A DECEPTIVE PLOY TO MAKE HER REQUESTED FURTHER STALKING ORDER TERMS SEEM REMOTELY REASONABLE

4.  In unsatisfactory response to Respondent's constitutional case law exposition of her requested terms' rampant violation of overbreadth and vagueness doctrines, she reassures that her terms may be amended with additional "knowingly" and "about her" qualifications. With this adjustment, she alleges her final proposed terms are reasonable requests having little to no impact on Maravelias's legitimate activities and having solely a valid protective function for her.

5.  In reality, these seeming concessions are vapid and meaningless, as "knowing" willfulness is <u>already</u> a necessary element to any violation of protective order terms. *See* RSA 633:3-a I. (c), which states, "knowingly ... engages in a single act of conduct that both violates the provisions of the order and is listed in paragraph II(a)".

# EXHIBIT G

6.   Further, the Petitioner seeks injunctive prohibition of legitimate acts which are listed nowhere in the enumerations of "paragraph II(a)" in 633:3-a constituting a "course of conduct".

7.   Thus, even if the Court did illegally grant the requested terms in part or in whole, Maravelias could never be prosecuted for violating them, due to the "and is listed in paragraph II(a)" stipulation of 633:3-a I. (c), supra.

8.   Maravelias's public speech "about" the Petitioner's demonstrable acts of falsification and restraining order abuse against him could be construed to be loosely "about her" yet are nonetheless legitimate acts of First Amendment-protected speech made for purposes independent of contacting the Petitioner or her academic providers or employers. However, as Respondent already showed in his 7/5/18 objection filing, the Petitioner seeks these terms as a broad "catch-all" injunction against Maravelias's legitimate public speech, since said acts of speech could be visible to anyone, including to "academic providers" or to "employers".

9.   Unsurprisingly, Petitioner entirely neglects to address this critical issue in her 7/12/18 filing, likely hoping the Court will overlook it.

10. Maravelias reiterates and incorporates by reference all arguments – most of which are still uncontested by Petitioner – from his 7/5/18 objection filing which speak to the illegality and unconstitutionality of the requested further stalking order provisions.

# EXHIBIT G

WHEREFORE, the foregoing compels the Respondent, Paul Maravelias, to pray this Court:

     I.       Grant this Motion;

     II.     Grant Respondent's 6/25/18 *Motion for Reconsideration*, terminating the Stalking Final Order of Protection,

     III.    Deny Petitioner's *Motion for Modification of Stalking Final Order of Protection to Include Further Conditions*; and

     IV.    Hold a Hearing, if necessary, on this matter.

Respectfully submitted,

PAUL J. MARAVELIAS,

*in propria persona*

July 16th, 2018

PAUL MARAVELIAS — 34 MOCKINGBIRD HILL RD, WINDHAM, NH 03087

**Appendix Page 117 of 117**