No. 19-2244

# In the United States Court of Appeals for the First Circuit

PAUL MARAVELIAS,

*Plaintiff – Appellant*

v.

JOHN J. COUGHLIN, Senior Judge, 10th Circuit Court - District Division, in his individual and official capacity; GORDON J. MACDONALD, New Hampshire Attorney General; PATRICIA G. CONWAY, Rockingham County Attorney, in her official capacity; TOWN OF WINDHAM, NH; GERALD S. LEWIS, Chief of Police, Town of Windham, in his official capacity, WINDHAM POLICE DEPARTMENT,

*Defendants – Appellees*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF NEW HAMPSHIRE
CASE NO 1:19-CV-00143(SM)

## APPELLANT'S BRIEF

PAUL J. MARAVELIAS,
PRO SE
34 Mockingbird Hill Rd
Windham, NH 03087
*paul@paulmarv.com*
603-475-3305

May 13th, 2020

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ........ iii
JURISDICTIONAL STATEMENT ........ 1
STATEMENT OF ISSUES ........ 1
STANDARD OF REVIEW ........ 2
STATEMENT OF THE CASE ........ 3
A. Factual Background ........ 3
B. Procedural Background of The Related State Case ........ 9
C. Procedural Background of The Federal Suit At Bar ........ 14
SUMMARY OF ARGUMENT ........ 17
ARGUMENT ........ 18
I. THE DISTRICT COURT ERRED BY DISMISSING PLAINTIFF'S FACIAL CONSTITUTIONAL CHALLENGE TO N.H. REV. STAT. ANN. 633:3-A, III-C. ........ 21
A. There Is No Existing State Judgment On This Claim Possibly To "Reject" ........ 22
B. Unanimous Precedent Confirms The Rooker-Feldman Doctrine Does Not Prohibit Facial Challenges Against State Laws ........ 22
C. The Wrongly Dismissed Claim Is Not Directed Towards Undoing a Prior State Judgment ........ 23
D. Though No Longer Subject To Any State Order, Maravelias Continues To Have Standing To Challenge RSA 633:3-a, III-c. ........ 26
II. THE DISTRICT COURT ERRED BY FINDING THE ROOKER-FELDMAN DOCTRINE BARRED PLAINTIFF'S CLAIMS FOR DECLARATORY AND INJUNCTIVE RELIEF REGARDING THE "EXTENDED TERMS". ........ 28

A. The District Court Erroneously Treated Maravelias's Limited Claims Against The "Extended Terms" As Assertions The Entire State Restraining Order Was Unlawful ........ 28

B. Federal Subject Matter Jurisdiction Exists Where The State Courts Never Adjudicated These Claims Before 2/11/19........ 29

C. The State Proceedings Were Non-Final ........ 32

D. The "Extended Terms" Are *Ultra Vires* In Complete Absence Of Jurisdiction And Thus Void *Ab Initio* ........ 38

E. Declaratory Judgment Is Not Moot: Maravelias Wishes To Amend His Complaint To Seek Damages Based On The Theory That The "Extended Terms" Were Unlawful ........ 41

III. THE DISTRICT COURT'S MEMORANDUM OPINION IS IMPROPER JUDICIAL ACTIVISM CRAFTED IN EVIDENT MALICE. ........ 45

A. The District Court Improperly Stated Extrajudicial Opinions, Unfounded Personal Attacks, and Factual Findings Contrary to Maravelias's Well-Pleaded Allegations ........ 45

B. An Objective Fact-Pattern Suggests Judge McAuliffe's Prejudice Against Maravelias ........ 49

CONCLUSION ........ 51

CERTIFICATE OF COMPLIANCE ........ 53

CERTIFICATE OF SERVICE ........ 54

ADDENDUM ........ 56

## TABLE OF AUTHORITIES

### Federal Cases


*Bass v. Butler*, 116 F. App'x 376, 383 (3d Cir. 2004) ................................ 20, 22

*Bernhardt v. County of L.A.,* 279 F.3d 862, 872 (9th Cir. 2002) ...................... 44

*Bertram v. HSBC Mortgage Services Inc. (In re Bertram)*,
17-11774 (11th Cir. Nov. 5, 2018) ........................................................... 31

*Camp v. Bimbo Bakeries USA, Inc.*, 2018 U.S. Dist. LEXIS 211776 ............... 46

*Carey v. Piphus*, 435 U. S. 247, 98 S. Ct. 1042, 55 L. Ed. 2d 252 (1978) ........ 43

*Celaya v. Schriro*, 691 F. Supp. 2d 1046 (D. Ariz. 2009) ................................ 30

*Chafin v. Chafin*, 568 U. S. 165, 172 (2013) .................................................... 42

*Coggeshall v. Mass. Bd. of Registration of Psychologists*,
604 F.3d 658, 664 n.6 (1st Cir. 2010) ......................................................... 18

*Cohens v. Virginia*, 6 Wheat. 264, 404 (1821) ................................................ 51

*Colorado River Water Conservation Dist. v. United States*,
424 U. S. 800, 817 (1976) ........................................................................... 42

*Cyanamid v. Capuano*, 381 F.3d 6, 21 (1st Cir. 2004) ....................................... 2

*D.C. Court of Appeals v. Feldman*,
460 U.S. 462, 486, 103 S. Ct. 1303, 1317 (1983) ........................................ 21

*Dale v. Moore,* 121 F.3d 624, 626-27 (11th Cir. 1997) ..................................... 22

*Doyle v. Hasbro*, 103 F.2d 186, 190 (1st Cir. 1996) ........................................... 2

*Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*,
544 U.S. 280 (2005) ........................................................................ 3, 19, 21, 22

*Federación de Maestros de P.R. v. Junta de Relaciones del Trabajo de P.R.*,
410 F.3d 17, 24 (1st Cir. 2005) ........................................................ 19, 32, 33, 35

*Greenberg v. Zingale*, 138 F. App'x 197, 200 (11th Cir. 2005) ........................ 23

*Griffin v. N.H. Dep't of Emp't Sec.*, No. 09-cv-00250-SM, 2009 U.S. Dist.
LEXIS 120278, at *13 (D.N.H. Nov. 16, 2009) .......................................... 44

*Gulla v. North Strabane Twp.*, 146 F.3d 168, 1998 U.S. App. LEXIS 11909 .. 20

*Howard v. Whitbeck*, 382 F.3d 633, 640 (6th Cir. 2004) ............................ 23, 25

*In re James*, 940 F.2d 46 (3d Cir. 1991) ..................................................... 38, 39

*Kashner Davidson Sec. Corp. v. Mscisz*, 601 F.3d 19, 23 (1st Cir. 2010) ........ 31
*Klimowicz v. Deutsche Bank Nat'l Tr. Co.*, 907 F.3d 61, 66 (1st Cir. 2018) .... 38
*Lubben v. Selective Serv. Sys. Local Bd. No. 27*,
453 F.2d 645, 649 (1st Cir. 1972) .................................................. 39
*McClellan v. Carland*,
217 U.S. 268, 30 S. Ct. 501, 54 L. Ed. 762, 1910 U.S. LEXIS 1960 .......... 19
*Memphis Community School Dist. v. Stachura*,
477 U. S. 299, 106 S. Ct. 2537, 91 L. Ed. 2d 249 (1986) ............................ 44
*Middlesex County Ethics Comm. V. Garden State Bar Ass'n*,
457 U.S. 423, 432 (1982) .................................................................. 50
*Monell v. New York City Dept. of Social Servs.*,
436 U. S. 658, 695 – 701 (1978) ........................................................ 43
*Mothershed v. Justices of the Supreme Court*,
410 F.3d 602, 606 (9th Cir. 2005) .................................................. 22
*N.Y. State Rifle & Pistol Ass'n v. City of N.Y.*,
206 L. Ed. 2d 798, 140 S. Ct. 1525 (2020) ........................................ 43, 44
*Nicholson v. Shafe*, 558 F.3d 1266 (11th Cir. 2009) .......................................... 31
*NLRB v. Goodless Bros. Elec. Co.*, 285 F.3d 102, 107 (1st Cir. 2002) ............ 31
*Project Vote/Voting for America, Inc. v. Dickerson*,
444 Fed. Appx. 660, 661 (4th Cir. 2011) .................................................. 44
*Schneider v. Colegio de Abogados de P.R.*, 917 F.2d 620 (1st Cir. 1990) ........ 22
*SEC v. Tambone*, 597 F.3d 436, 441 (1st Cir. 2010) ........................................ 46
*Simes v. Huckabee*, 354 F.3d 823, 2004 U.S. App. LEXIS 2046 ...................... 20
*Skinner v. Switzer*, 562 U.S. 521 (2011) ........................................................ 27
*Sprint Communications, Inc. v. Jacobs*, 134 S. Ct. 584 (2013) ........................ 51
*Tyler v. Supreme Judicial Court of Massachusetts*,
914 F.3d 47, 51–52 (1st Cir. 2019) ........................................ 23, 27, 36, 37
*United States v. Reyes*, 49 F.3d 63 (2d Cir. 1995) ............................................ 30
*Velazquez v. S. Fla. Fed. Credit Union*,
546 Fed. Appx. 854, 2013 U.S. App. LEXIS 22848, 2013 WL 5977166 .... 34
*Veranda Beach Club v. Western Surety*, 936 F.2d 1364, 1370 (1st Cir. 1991) ... 2

*Whiteford v. Reed*, 155 F.3d 671, 674 (3d Cir. 1998) ........................................ 21

**State Statutes**

RSA 173-B:5 ........................................................................................ 4, 40
RSA 498:1 ........................................................................................... 39
RSA 502-A ........................................................................................... 39
RSA 633:3-a, I.(c) .............................................................................. 40, 42
RSA 633:3-a, II.(a) ................................................................................ 40
RSA 633:3-a, III-a. ........................................................................... 4, 9, 39
RSA 633:3-a, III-c. ........................................................................... *passim*

**Federal Statutes**

28 U.S.C. § 1291 ..................................................................................... 1
28 U.S.C. § 1331 ..................................................................................... 1
28 U.S.C. § 1343 ..................................................................................... 1
28 U.S.C. § 1367(a) .................................................................................. 1
42 U.S.C. § 1983 ................................................................................ 28, 42

**State Cases**

*Carleton v. Balagur*, 162 N.H. 501 (2011) ................................................ 30
*State v. Gubitosi*, 153 N.H. 79 (2005) ..................................................... 30

**Court Rules**

Fed. R. App. Proc. 32(a)(1)(C) .................................................................. 5

## JURISDICTIONAL STATEMENT

This is an appeal from final orders of the district court dismissing this case, denying plaintiff's motion for preliminary injunction, and denying plaintiff's Rule 59 Motion to amend the judgement. Addendum 6. The district court had subject-matter jurisdiction under 28 U.S.C. § 1331, § 1343 and § 1367(a).

On November 4, 2019, the district court issued a Memorandum Opinion granting defendant's motion to dismiss and denied plaintiff's motion for preliminary injunction. (*Steven J. McAuliffe,* J.) Addendum 9 – 20.

On December 2, 2019, plaintiff filed a timely notice of appeal and Rule 59(e) motion. Addendum 7. The district court denied the Rule 59(e) motion on January 7, 2020. Addendum 8. Plaintiff timely filed an amended notice of appeal on January 12, 2020 as to the Rule 59(e) motion denied as well as the dispositive November 4, 2019 opinion and judgement. Addendum 8, 22. This Court has jurisdiction pursuant to 28 U.S.C. § 1291 because the November 4, 2019 decision is a final order or judgment that disposes of all parties' claims.

## STATEMENT OF ISSUES

1. Whether the district court erred in dismissing plaintiff's entire amended complaint and denying his motion for preliminary injunction?

2. Whether the district court improperly dismissed plaintiff's generic facial constitutional challenge to N.H. Rev. Stat. Ann. 633:3-A, III-c.?

3. Whether the district court improperly applied the Rooker-Feldman doctrine to dismiss plaintiff's claims for declaratory and injunctive relief against the "extended terms" added to the base state protective order?

4. Whether the district court improperly rejected plaintiff's well-pleaded facts when granting the motion to dismiss?

5. Whether the district court engaged in judicial activism, malice, and hasty disposal of plaintiff's claims without attention to his thoroughly developed legal arguments?

## STANDARD OF REVIEW

Issues 1, 2, 3, and 4 present issues of law that are subject to *de novo* review. *Doyle v. Hasbro*, 103 F.2d 186, 190 (1st Cir. 1996).

Issue 5 both challenges the district court's apparent factual findings in ruling on a legal motion to dismiss, to be reversed upon a finding of clear error, *American Cyanamid v. Capuano*, 381 F.3d 6, 21 (1st Cir. 2004), and challenges discretionary decisions of the district court, to be reversed on a finding of abuse of discretion, *Veranda Beach Club v. Western Surety*, 936 F.2d 1364, 1370 (1st Cir. 1991).

## STATEMENT OF THE CASE

This case is a pinnacle of two legal follies. First, it is a textbook overzealous misapplication of the *Rooker-Feldman* doctrine in violation of the supreme court's precedent in *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280 (2005). Second, it is a depressing revelation of the status of *pro se* litigation in modern American courts in which the undersigned's elaborate strivings at legal competency have earned him all but cruel disdain and arbitrary denial of fair process.

### A. Factual Background

#### *1. General Overview*

The state court record indicates the following. *See generally*, Appendix 27 – 42. In 2016, *pro se* plaintiff Paul Maravelias was a senior at Dartmouth College studying economics. A late-2016 spat between his and another local family devolved into a mercurial feud. *Id.* David DePamphilis was offended after Maravelias, a gentleman and honorable suitor, unsuccessfully asked his daughter Christina on a date. *Id.* The parties had been neighbors and close friends for nearly a decade. Maravelias never contacted DePamphilis's daughter after the rejection, but DePamphilis weeks-later renewed the argument with Maravelias and finally texted his parents, "that's the last straw". *Id.* Days later, DePamphilis's daughter filed a petition against Maravelias whom she had not seen in weeks. On 2/7/2017,

Maravelias was subject to a New Hampshire civil "stay-away" protective order issued under N.H. Rev. Stat. Ann. ("RSA") 633:3-a, III-a. *Id.*

The following year in 2018, DePamphilis obtained an extension of the order. Then, in summer 2018, local state court judge John J. Coughlin unlawfully subjected Maravelias to a host of additional commandments and baseless provisions, nominally as "extended terms" to the restraining order, criminalizing his constitutionally protected right to possess and use public internet social media exhibits as court documents to defend himself against the defamatory misuse of New Hampshire's civil restraining orders he faced. *Id.* at 31, 60 – 64. These so-called "extended terms" appended at random to the base civil stay-away restraining order were 1) *ultra vires*, in complete excess of the kinds of relief RSA 173-B:5 permits New Hampshire courts to grant as part of such civil injunctions, 2) issued by a court lacking any equity powers to issue injunctions broader than that specifically delineated by statute, and 3) in rampant violation of Maravelias's state and federal constitutional rights. *Id*. at 71 – 80.

### *2. Christina DePamphilis's Cruel Social Media Cyberbullying Against Maravelias and Illegitimate "Stalking Order" Legal Abuse*

The lower state court admitted evidence of the following. After obtaining the restraining order against Maravelias, Christina DePamphilis used her "social media"

(a public website) in 2017 to make vulgar, incitative harassment posts against Maravelias using her and boyfriend's middle-fingers to attempt to elicit a disorderly reaction from Maravelias. *Id*. at 24 – 25 (original state court record image digitally restored after photocopy corruption), 36 – 37, 60. The context of DePamphilis's derisive harassment enlisting her new boyfriend was that, a few weeks prior, Maravelias had made a failed romantic invitation to DePamphilis. *Id*. DePamphilis committed this cruel, abusive conduct over social media at a time when (1) she had a so-called "stalking" "protective order" against Maravelias and when (2) she laughably claimed to have "fear" of Maravelias – that is, while cyberbullying him. *Id*. Maravelias never spoke a word to DePamphilis after the rejection; her incitative vulgar bullying weeks-later was inexplicable and causeless. *Id*. Maravelias printed copies of DePamphilis's profane social media posts and used them as legal exhibits at a May-June 2018 hearing before Defendant Coughlin on DePamphilis's remorseless motion to extend the duration of the same "protective" order she had wantonly abused while herself cyberstalking and bullying Maravelias. *Id*. at 24 – 25.

Pursuant to <u>Fed. R. App. Proc.</u> 32(a)(1)(C), and because the reproduction of this image in the record has been tainted by photocopying, DePamphilis's public internet incitation post to Maravelias – baiting him to violate her own no-contact order – is reproduced as apparent in the state court record:






Appendix 24 – 25 (District ECF Doc #24-1, App. to NHSC Merits Brief).

### *3. Christina DePamphilis's Other and Overtly Criminal Conduct She Depicted on Public Social Media*

The lower state court also admitted evidence of Christina DePamphilis's public internet social media posts documenting her illegal underage drinking and narcotic activities. *See e.g.*, Appendix 26 (original state court record image digitally restored after photocopy corruption), 31, 37. Maravelias likewise entered some of these as legal exhibits at the 2018 Hearing where legally relevant to challenge her claims he caused her "reasonable fear" for her "safety".

After being exposed as, at best, a vexatious litigant acting in bad-faith, the DePamphilis family sought to criminalize Maravelias's self-defense against their abuse. His public court exhibits of DePamphilis cyberbullying him all too clearly painted a true picture of DePamphilis's illegitimate legal retaliation campaign against Maravelias. The DePamphilis family had their attorney, Simon R. Brown of Preti, Flaherty PLLP, file a 7/2/18 Motion requesting the NH Circuit Court enjoin the following provision against Maravelias as part of the restraining order:

> "Respondent shall not gain access to or possess any of Petitioner's social media communications either directly or through a third party;"

Appendix 92 (Amended Complaint, Exhibit A).

Sly DePamphilis could have sought this relief in her previous proper RSA 633:3-a, III-c. motion to obtain the further extension of duration of the restraining order in which the statute guarantees Maravelias a right to a hearing and direct appeal on the merits. Rather, DePamphilis strategically postponed the endeavor until after the trial court's 6/15/18 ruling thereon, confident Judge Coughlin would dispense his idiosyncratic blind approval on whatever DePamphilis's lawyer asked even while circumventing the typical annual RSA 633:3-a, III-c. renewal process.

#### *4. N.H. Local District Judge John J. Coughlin Blesses Christina DePamphilis's Cyberbullying and Pictured Criminal Conduct on 8/7/18 by Criminalizing Maravelias's Self-Defensive Court Exhibits*

Ignoring Maravelias's 13 pages of Objection argument (Appendix 93 – 106), Judge John Coughlin scribbled "granted" on DePamphilis's request without giving so much as a word of explanation. Appendix 111. He cited no legal authority for his act nor indicated he had even read a lick of Maravelias's thorough Objection. *Id*. Certain inexplicable procedural irregularities eliminated any doubt of Defendant Coughlin's bad-faith malice and patently unreasonable conduct against Maravelias. Appendix 65 – 66 (Amended Complaint, at ¶36 – 42). Defendant Coughlin's 8/7/18 Order does not contain any finding with respect to Maravelias's constitutional claims. Appendix 111. Instead of conducting any judicial inquiry, Defendant Coughlin wrote an exiguous, reflexive scribbling of the words "granted as to

Petitioner's request for relief A.;B1;B2:B3" without resolving neither Maravelias's constitutional arguments nor DePamphilis's response thereto. *Id.*

## B. Procedural Background of The Related State Case

### *1. The First Restraining Order (2/7/17 – 2/6/18), Issued Under RSA 633:3-a, III-a. on 2/7/17.*

DePamphilis's original restraining order was not issued under the statute which Maravelias's dismissed Amended Complaint seeks to declare unconstitutional. Subsection III-a. of RSA 633:3-a. controls the process for new civil restraining orders. Addendum, 23. Such civil protective orders, obtainable on the preponderance of evidence standard without any necessary showing of criminal conduct, but only that the defendant caused "reasonable fear", have a duration of one year. *Id.*

After the one-year expiration, the plaintiff can move to further extend the duration of such orders according to Subsection III-c. which has a radically lower standard than Subsection III-a. for new restraining orders. Addendum, 24.

### *2. The Second Restraining Order (2/6/18 – 2/5/19), Extended in Duration Under RSA 633:3-a, III-c. on 6/15/18.*

DePamphilis moved for a further extension under subsection III-c. in early 2018. Appendix 30. This is the statute which Maravelias challenges, with its radically overbroad "safety and well-being" standard that would virtually in all cases

be satisfied, because the psychological contentment of the plaintiff alone of winning the legal relief serves her mental “well-being”. Addendum, 24. Defendant John J. Coughlin, after a three-day hearing, granted this extended duration restraining order on 6/15/18. Appendix 60.

### ***3. The Distinct Addition of The “Extended Terms” by DePamphilis’s Motion in August 2018***

Defendant Coughlin’s imposition of the “extended terms” was a separate act on 8/7/18, postdating by nearly two months his prior granting the 2018 restraining order extension to begin with on 6/15/18. Appendix 60, 62, 110 – 112. Unlike the preceding June extension of duration, the “extended terms” were not granted under RSA 633:3-a, III-c. nor under any statute. Appendix, 77 – 80. The Defendant Coughlin did not cite any legal authority under which he granted the “extended terms”, delegating to himself nonexistent equity jurisdiction as a judge of the NH Circuit Court, District Division. *Id*. at 79, 111.

### ***4. Maravelias’s 2018 NHSC Appeal, Which Did Not Adjudicate The Legality of the “Extended Terms”***

Maravelias filed an appeal in August 2018 (“2018 NHSC Appeal”) of the denial of his motion to reconsider the 6/15/18 extension of duration of the order and also the “extended terms” that had just been applied to it. Appendix 69. The NHSC issued an unpublished, preliminary Final Order dated 1/16/19 which plays a pivotal

role in this case. Appendix 2 – 12, (ECF Doc #26-1, "2018 NHSC Final Order"). The mandate issued on 2/21/19. Appendix 23 (NHSC Docket Report of Case No. 2018-0483).

While the NHSC affirmed the further extension into 2019, issued pursuant to RSA 633:3-a, III-c., of the duration of the restraining order (the primary issue within the appeal), it declined to adjudicate Maravelias's claims against the "extended terms". Appendix 12.

Despite Maravelias's multiple pages of appellate brief argument on the illegality of the "extended terms" and contrary to the district court's own correct observation that "[Maravelias's] various claims were extensively briefed, in both his original appellate brief and his reply brief" in its Memorandum Opinion dismissing this lawsuit (Addendum 13) the NHSC claimed that "[e]ach of the defendant's remaining arguments is not sufficiently developed to warrant further review. See Blackmer, 149 N.H. at 49." and gave <u>not a single word more treatment</u> to the "extended terms" issue in the 2018 NHSC Appeal. Appendix 12.

The critical and dispositive fact bears repeating that, while the 2018 NHSC Appeal rejected Maravelias' request to vacate the temporal extension of the duration of the entire restraining order into 2019, <u>it did not adjudicate</u> his distinct challenge, raised within the same appeal, to the 8/7/18 "extended terms". Further, the NHSC

was well-aware of the separateness of this issue which it disregarded, as indicated said Order's introductory procedural summary:

> "The defendant, Paul Maravelias, appeals orders of the Circuit Court (Coughlin, J.), following a three-day evidentiary hearing, extending a civil stalking final order of protection in favor of the plaintiff, Christina DePamphilis, for one year, see RSA 633:3-a, III-c (Supp. 2018), and modifying the order's terms. He argues that: (1) … and (5) the trial court erred by modifying the protective order."

*Id.* at 2. (Emphasis added)

### 5. *The 2018 NHSC Appeal Further Declined To Adjudicate The Facial Constitutional Challenge Against RSA 633:3-a, III-c.*

In addition to skimping on the "extended terms", the 2018 NHSC Appeal disregarded Maravelias's facial challenge. It only unfavorably adjudicated his as-applied challenge that the particular 6/15/18 Order of the NH Circuit Court violated his constitutional rights. Appendix 11 – 12. But regarding his facial challenge against RSA 633:3-a, III-c., the 2018 NHSC Appeal concluded that "the defendant's facial-overbreadth and void-for-vagueness arguments are not preserved". Appendix 11.

### 6. *The Third Restraining Order (2/5/19 – 2/4/20), Extended in Duration Under RSA 633:3-a, III-c. on 3/8/19, And The Reapplication of The "Extended Terms" Thereto on 3/8/19*

After the suit was filed, the lower state court further extended the restraining order and re-imposed the "extended terms" on 3/8/19. Appendix 19 – 20. Subsequent to the 11/4/19 Memorandum Opinion below and the docketing of the instant appeal, the state restraining order expired altogether and the "extended terms" are not currently in effect against Maravelias. Appendix 1. (3/1/20 Order of NH Circuit Court, a public record relevant to appellate inquiry but not in district court record below). Nevertheless, this appeal is not moot, as described in the argument below.

### *7. The 2019 NHSC Appeal And The Non-Finality of The State Proceedings as of May 2019*

In the suit below, defendants joined in Defendant Attorney General's 5/17/19 Motion to Dismiss under Rule 12(b)(1) for lack of subject matter jurisdiction according to the Rooker-Feldman doctrine. Addendum 5.

While the 3/8/19 Order in the lower state court proves that the state proceedings were non-final at the 2/11/19 filing of this suit, Maravelias's 5/31/19 NHSC Notice of Appeal (direct appeal on the merits of the lower state court's denial of his motion to reconsider the 3/8/19 Order further extending the duration of the restraining order) proves that they were likewise non-final at the time of his Objection to the Rule 12(b)(1) Motion to Dismiss. Appendix 13 – 22.

## C. Procedural Background of The Federal Suit At Bar

### *1. This Suit Seeks Two Distinct Categories of Relief Not To Be Conflated or Confused With Each Other*

After exhausting his ability in state courts to obtain an adjudication on the constitutionality and legality of the "extended terms", Maravelias filed the instant suit under 42 U.S.C. § 1983 on 2/11/19. Addendum 1. The original and amended complaints are structurally similar. This case has two components.

First, while not challenging the base restraining order itself, he seeks declaratory relief that the additional social media "extended terms" thereto are illegal and injunctive relief prohibiting their enforcement. Appendix 87 – 88 (Amended Complaint, Prayers for Relief I. – VI., IX.).

Second, in the interest of judicial economy and in lieu of filing a separate lawsuit, he seeks declaratory relief that RSA 633:3-a, III-c. (pertaining to the legal standard for extending the temporal duration a NH civil protective order) is facially unconstitutional in violation of the federal constitution. *Id*. at 88 (Amended Complaint, Prayers for Relief VII. – VIII.) The latter is a generic legal question which the state courts repeatedly refused to adjudicate – despite being given many opportunities by Maravelias – and is entirely disconnected from the facts and circumstances of the particular injunction he faced.

The 2/11/19 filing date of this suit is significant inside the Rooker-Feldman inquiry. This date was after the second restraining order containing the "extended terms" had expired on 2/6/19 but before the lower state court's 3/8/19 Order on the merits on DePamphilis's 2019 motion under RSA 633:3-a, III-c. to obtain a longer-duration restraining order.[1] Appendix 19 – 20. This 3/8/19 lower state court order reapplied the extended terms to Maravelias after this suit was filed. *Id*.

### *2. Maravelias's 6/3/19 Memorandum*

Maravelias objected to defendants' joint Rule 12(b)(1) Motion to Dismiss and filed an elaborate 6/3/19 memorandum of law showing multiple distinct reasons why the Rooker-Feldman doctrine does not apply to this case. District ECF Doc #33-1. The Court could easily decide this appeal by analyzing this document alone and the defendants' responses thereto.

Of crucial importance is Maravelias's well-developed argument that the "extended terms" were not just simply unconstitutional, but more directly were issued in total absence of the NH Circuit Court's limited jurisdiction and are *ultra vires*, having no statutory or equitable authority. Appendix 63, 71, 77 – 80 (Amended

[1] As is custom practice, the lower state court had a temporary provisional order during the interim period pending the hearing and its ultimate 3/8/19 Order on the merits. There is no argument, briefing, response, right to engage in such argument, or decision whatsoever pertaining to the "extended terms" as part of the customary temporary provisional order pending the state court hearing.

Complaint, ¶35, 89 – 91, 124 – 129); Appendix 46 – 52 (Maravelias 6/3/19 Memorandum, District ECF# 33-1, partially excerpted here to show this issue was raised to the district court though ignored in the 11/4/19 Memorandum Opinion).

The 6/3/19 Memorandum also finds significance in Maravelias's eventual allegation in this brief that the district court ignored wide swaths of dispositive arguments raised before it and evinced in general an improper dismissive attitude.

### *3. The District Court's Dismissal of All Claims*

The district court implicitly denied Maravelias's request for a hearing (Appendix 45) on the Rule 12(b)(1) motion and issued a 11/4/19 Memorandum Opinion dismissing the entire suit for lack of subject matter jurisdiction pursuant to the Rooker-Feldman doctrine. Addendum, 9 – 20 ("Memorandum Opinion"). The district court included multiple pages of seeming extrajudicial opining, taking an advocacy position for DePamphilis in what appears to be blind feminist advocacy, and regurgitating DePamphilis's irrelevant accusations from the initial 2017 state restraining order as if they were facts proven in a criminal prosecution. *Id.*

While the district court briefly alluded in *dicta* to "judicial immunity" and "*res judicata*" in a passing footnote, it based its decision on nothing other than the Rooker-Feldman doctrine. Addendum, 11. The instant appeal is therefore confined the issue of subject matter jurisdiction. It does not afford Maravelias a fair and full

opportunity to litigate these other issues which defendants could raise upon a reverse and remand disposition.

#### 4. *The Moot Denial of Maravelias's Motion for Preliminary Injunction*

Maravelias had also filed a motion for preliminary injunction and extensive memorandum of law (ECF Doc #23, 23-1) which the district court "denied for want of jurisdiction" as part of its overzealous Rooker-Feldman dismissal and on no other grounds. Addendum 6.

Since the "extended terms" are no longer in effect, the requested injunctive relief is now moot. However, all claims for declaratory relief are not moot as described in the argument below.

## SUMMARY OF ARGUMENT

Assuming *arguendo* the Rooker-Feldman doctrine prohibits plaintiff's "extended terms" declaratory and injunctive relief claims, it was error for the district court to dismiss his general facial constitutional challenge because it does not require reviewing the specific application of the statute nor is directed towards undoing any such application.

Furthermore, the Rooker-Feldman doctrine does not preclude Maravelias's claims relating to the "extended terms" because they do not seek to overturn any

final state court judgment. The district court was incorrect that plaintiff's requested federal relief would "overturn" the 2018 NHSC Appeal because said state appellate disposition did not adjudicate Maravelias's claims brought against the "extended terms". Further, even if it did, the date of the mandate thereof was after the instant federal suit was filed and therefore inert to the Rooker-Feldman jurisdictional disqualification. Further, since that appeal only addressed the state restraining order which expired on 2/6/19, and since this suit was filed on 2/11/2019 after the expiration of the original "extended terms" order yet before the state court re-applied the "extended terms" on 3/8/19, the claims constitute non-prohibited parallel state-federal litigation. Additionally, the finality requirement of Rooker-Feldman was never met, and the doctrine's exception to extrajurisdictional state court orders squarely applied.

## ARGUMENT

Two Rooker-Feldman doctrinal axioms bear repeating at the outset to guide the Court's review.

First, "[f]or Rooker-Feldman purposes, courts must look to the situation as it existed when the federal suit was commenced." *Coggeshall v. Mass. Bd. of Registration of Psychologists*, 604 F.3d 658, 664 n.6 (1st Cir. 2010). "The fact that the state proceedings have now run their course does not call for a different

conclusion." *Id.* "If federal litigation is initiated before state proceedings have ended, then – even if the federal plaintiff expects to lose in state court and hopes to win in federal court – the litigation is parallel, and the Rooker-Feldman doctrine does not deprive the court of jurisdiction." *Federación de Maestros de P.R. v. Junta de Relaciones del Trabajo de P.R.*, 410 F.3d 17, 24 (1st Cir. 2005). "When there is parallel state and federal litigation, Rooker-Feldman is not triggered simply by the entry of judgment in state court. This Court has repeatedly held that 'the pendency of an action in the state court is no bar to proceedings concerning the same matter in the Federal court having jurisdiction.'" *Exxon*, 544 U.S. 280 125 S. Ct. 1517 at *1526 – 1527 (quoting *McClellan v. Carland*, 217 U.S. 268, 30 S. Ct. 501, 54 L. Ed. 762, 1910 U.S. LEXIS 1960). "[N]either *Rooker* nor *Feldman* supports the notion that properly invoked concurrent jurisdiction vanishes if a state court reaches judgment on the same or related question while the case remains *sub judice* in a federal court." *Id*.

Second, the Rooker-Feldman doctrine cannot foreclose federal jurisdiction over claims that were never actually adjudicated by state courts, regardless of whether they were raised in state courts. "[I]f [litigants] do raise federal claims in their state court defense, and the state court declines to address them, then according to the district court in this case they are also barred from bringing those claims in

federal court. No principle of federalism suggests or requires such a result." *Simes v. Huckabee*, 354 F.3d 823, 2004 U.S. App. LEXIS 2046. "[T]o woodenly apply the doctrine where the state court passed on the constitutional issues is to divorce the doctrine from its rationale." *Id.* (Emphasis added) "[T]he Rooker-Feldman doctrine does not bar federal claims brought in federal court when a <u>state court previously presented with the same claims declined to reach their merits</u>". *Id.* (Emphasis added) "[T]he [state] [c]ourt was not empowered to evaluate Bass's facial claims after it found that the issue had been waived. Therefore, the facial constitutionality of Section 415 was not actually decided by the [state] [c]ourt, and the issue is not barred by Rooker-Feldman on that basis." *Bass v. Butler*, 116 F. App'x 376, 383 (3d Cir. 2004).

The Rooker-Feldman doctrine has never prohibited federal district courts from exercising subject matter jurisdiction over claims never actually adjudicated in state courts, even prior to the Supreme Court's 2005 decision in *Exxon* further narrowed the doctrine. *See e.g., Gulla v. North Strabane Twp.*, 146 F.3d 168, 1998 U.S. App. LEXIS 11909 (vacating improper application of *Rooker-Feldman* because the state court "did not adjudicate the merits of [plaintiff's] constitutional claims"). "[T]his court has consistently held that where a state action does not reach the merits

of a plaintiff's claims, then Rooker-Feldman does not deprive the federal court of jurisdiction." *Whiteford v. Reed*, 155 F.3d 671, 674 (3d Cir. 1998).

## I. THE DISTRICT COURT ERRED BY DISMISSING PLAINTIFF'S FACIAL CONSTITUTIONAL CHALLENGE TO N.H. REV. STAT. ANN. 633:3-A, III-C.

The district court's most obvious error was to dismiss Maravelias's facial constitutional challenge under the Rooker-Feldman doctrine. The Supreme Court has clarified this doctrine only applies "to cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments". *Exxon*, 544 U.S. at *280. The *Feldman* court itself recognized that "United States district courts ... have subject-matter jurisdiction over general challenges to state [statutes] ... which do not require review of a final state-court judgment in a particular case." *D.C. Court of Appeals v. Feldman*, 460 U.S. 462, 486, 103 S. Ct. 1303, 1317 (1983). Even assuming the Rooker-Feldman doctrine does bar Maravelias's other claims for relief (against the particular "extended terms", *see infra*), it cannot additionally prohibit the general facial challenge. As such, the judgment below must be reversed and remanded for further proceedings.

### A. There Is No Existing State Judgment On This Claim Possibly To "Reject"

Pursuant to *Exxon*, there is no such conflicting "state-court judgment" to speak of. The 2018 NHSC Appeal did not adjudicate whether RSA 633:3-a, III-c. was facially constitutional. *See supra*, "Procedural Background of The Related State Case", <u>Heading 5</u>. Maravelias's facial constitutional claims against this statute could not possibly complain of "injuries caused" by a "state-court judgment" because there is no such state judgment to "review and reject". *Id.,* 544 U.S. at *283.

As previously established, since the state courts did not decide the facial constitutionality of RSA 633:3-a, III-c., Rooker-Feldman cannot bar this claim.

### B. Unanimous Precedent Confirms The Rooker-Feldman Doctrine Does Not Prohibit Facial Challenges Against State Laws

United States Courts of Appeal unanimously permit district courts to hear facial constitutional challenges against a state law like the one Maravelias brings. *See e.g., Schneider v. Colegio de Abogados de P.R.*, 917 F.2d 620 (1st Cir. 1990)*;* *Bass, supra*, 116 F. App'x 376 ("with respect to Bass's facial challenge to the constitutionality of Section 415, Rooker-Feldman does not apply"); *Dale v. Moore,* 121 F.3d 624, 626-27 (11th Cir. 1997) (noting federal district courts jurisdiction over facial constitutional challenges); *Mothershed v. Justices of the Supreme Court*, 410 F.3d 602, 606 (9th Cir. 2005) ("The doctrine does not, however, prohibit a plaintiff

from presenting a generally applicable legal challenge to a state statute in federal court, even if that statute has previously been applied against him in state court litigation"); *Howard v. Whitbeck*, 382 F.3d 633, 640 (6th Cir. 2004) ("[W]e conclude that Howard's complaint fairly presented a general challenge to the statute, sufficient to give the district court jurisdiction."); *Greenberg v. Zingale*, 138 F. App'x 197, 200 (11th Cir. 2005) ("[T]he district court had jurisdiction to address Greenberg's facial constitutional challenges to [a Florida state law]") (distinguishing from as-applied constitutional challenge against state law which was prohibited by Rooker-Feldman), *et alia*.

### C. The Wrongly Dismissed Claim Is Not Directed Towards Undoing a Prior State Judgment

The district court cited *Tyler v. Supreme Judicial Court of Massachusetts*, 914 F.3d 47, 51–52 (1st Cir. 2019) in which this Court affirmed the exercise of the Rooker-Feldman doctrine to prohibit a constitutional challenge materially incomparable to Maravelias's. "It is true that the Rooker-Feldman doctrine does not bar a general attack on the constitutionality of a state law that does not require review of a judicial decision in a particular case." *Id*. The Court recognized an exception to this principle in cases where "the relief sought in federal court is directed towards undoing the prior state judgment." *Id*.

The district court's reasoning that Maravelias's general facial challenge against RSA 633:3-a, III-c. was an "effort[] to vacate the Modified Stalking Order by undermining the validity of its statutory source, RSA 633:3-a" is without merit.[2] Addendum 18.

First, even if the "extended terms" did have a statutory source, the constitutional claims are facial and disconnected from the claims against the "extended terms". They constitute an independent claim which to this day could be brought in a separate lawsuit notwithstanding that the state restraining order against Maravelias has subsequently expired. Indeed, there is no reference to the "extended terms" nor the restraining order itself whatsoever in these claims in the Amended Complaint:

> "VII. Enter a declaratory judgment that New Hampshire RSA 633:3-a, III-c. is unconstitutionally overbroad on its face in violation of the First and Fourteenth Amendments to the U.S. Constitution;
>
> VIII. Enter a declaratory judgment that New Hampshire RSA 633:3-a, III-c. is unconstitutionally vague on its face in violation of the Fourteenth Amendment to the U.S. Constitution;"

Appendix 88 (Amended Complaint, Prayers for Relief VII. – VIII.)

---

[2] The district court also seemed to ignore that Maravelias challenges solely subsection III-c. of RSA 633:3-a and not the entire statute.

"[T]he dismissal of the as-applied claim on the basis of Rooker-Feldman does not mean that the facial challenge cannot be allowed to proceed." *Howard*, 382 F.3d at *640. Even if the first component of Maravelias's suit did attack the constitutionality of the entire underlying restraining order issued pursuant to RSA 633:3-a, III-c. – which it does not – the Rooker-Feldman doctrine would only prohibit the latter and not the general facial challenge against the statute.

Second, even if the general constitutional challenge were in some way connected to the claims against the "extended terms", the latter do not have any "statutory source". They were added by a rogue motion in the local NH Circuit Court months after the RSA 633:3-a, III-c. proceeding ended on 6/15/18, after a three day hearing, to grant the extension of temporal duration of the restraining order. Appendix 71 (Amended Complaint, ¶89 – 91). RSA 633:3-a, III-c. does not allow a litigant to file a motion long after the renewal proceeding and ask that extremified commandments be appended to the existing order. Addendum 24. In fact, this is not even permitted within the yearly renewal request proceeding where the right to an evidentiary hearing is guaranteed. *Id*. Assuming the act of seeking a declaratory judgment that an *ultra vires* court order modification is unconstitutional and injunctive relief prohibiting the enforcement thereof is tantamount to an attempt to "undo" said order, Maravelias sought such an "undoing" narrowly against the

"extended terms" which were not issued under RSA 633:3-a nor any statute. Appendix 87 (Amended Complaint, Prayers for Relief I. – VI.). Nowhere in his lawsuit does Maravelias seek a declaratory judgment that the underlying state restraining order itself is unconstitutional or an injunction barring enforcement of its inherent terms other than the "extended terms" unlawfully appended outside the yearly hearing. This is abundantly clear from the Amended Complaint's first prayer for relief:

> "I. Issue a preliminary injunction prohibiting all non-judicial Defendants and their officials, employees, and agents from implementing or enforcing the said "extended terms" to the civil protective order against Maravelias in New Hampshire Circuit Court Case No. 473-2016-CV-00124;"

(Emphasis added) Appendix 87 (Amended Complaint, Prayer for Relief I.).

### D. Though No Longer Subject To Any State Order, Maravelias Continues To Have Standing To Challenge RSA 633:3-a, III-c.

The ultimate proof that Maravelias's wrongly dismissed facial challenge is not "directed towards undoing [a] prior state court judgment" is that he has continuing standing, desire, and ability to bring this facial challenge even though the entire state restraining order – "extended terms" and otherwise – has subsequently expired and been "dismissed as of February 04, 2020 by court order". Appendix 1 (3/2/20 Order of NH Circuit Court).

Having been injured by RSA 633:3-a, III-c., Maravelias has standing and can use federal courts to challenge this state law allegedly in violation of his federal rights. Since the restraining order and "extended terms" are now entirely non-existent, Maravelias's continued standing to bring a facial challenge against RSA 633:3-a, III-c. is proof that the latter "presents an independent claim" and that the district court erred by dismissing it under the Rooker-Feldman doctrine. *Tyler*, *supra*, at *51 (quoting *Skinner v. Switzer*, 562 U.S. 521 (2011)). The district court failed to appreciate that, while "the relief Tyler seeks [was] entirely predicated on her insistence that the SJC erred in the 2017 adjudication of her case", Maravelias's facial claim that RSA 633:3-a, III-c. is unconstitutional could be held true without any inquiry whatsoever into the legality of the "extended terms". *Id*. Indeed, while Tyler's "attempt to reframe the case as an independent challenge to the Massachusetts law [was] therefore 'felled by [her] own complaint'", Maravelias's Amended Complaint makes <u>zero reference whatsoever</u> to the "extended terms" nor to the particular state restraining order against him at Paragraphs ¶148 – 168 of his Amended Complaint (Appendix 82 – 87) where he pleads the facial challenge. *Tyler,* at *51 – 52 (internal citation omitted).

Maravelias properly preserved federal jurisdiction over the facial challenge with the 2/11/19 filing of this suit. At the very least, the Court should partially

reverse the judgment below and remand to allow Maravelias to amend his complaint to proceed with at least the facial challenge.

## II. THE DISTRICT COURT ERRED BY FINDING THE ROOKER-FELDMAN DOCTRINE BARRED PLAINTIFF'S CLAIMS FOR DECLARATORY AND INJUNCTIVE RELIEF REGARDING THE "EXTENDED TERMS".

It may appear that, while the district court erred in its hyperactive dismissal of the general facial challenge, it rightly dismissed the other claims directly challenging the "extended terms". Maravelias acknowledges that such is the fate of most similar Rooker-Feldman cases in the 42 U.S.C. § 1983 context. However, there are unique and legitimate factors to this case whereby the Rooker-Feldman doctrine did not foreclose federal jurisdiction on any of Maravelias's claims at all.

### A. The District Court Erroneously Treated Maravelias's Limited Claims Against The "Extended Terms" As Assertions The Entire State Restraining Order Was Unlawful

In its Memorandum Opinion, the district court coined the novel term "Modified Stalking Order" as a way of lumping-together the base civil restraining order (the extension of duration of which the 2018 NHSC Appeal upheld), with the draconian "extended terms" unlawfully added thereto which this suit narrowly challenged, prohibiting the possession of public social media exhibits. Addendum 13. The district court then deployed this false equivalence to misapply the Rooker-

Feldman doctrine to dismiss the entire suit, incorrectly citing the 2018 NHSC Appeal as a preclusive state judgment.

### B. Federal Subject Matter Jurisdiction Exists Where The State Courts Never Adjudicated These Claims Before 2/11/19

#### *1. The 2018 NHSC Appeal Contains No Conflicting Judgment*

The 2018 NHSC Appeal affirmed the lower state court's 6/15/18 Order granting DePamphilis's RSA 633:3-a, III-c. motion for a temporal extension of the duration of the base restraining order into 2/5/19. However, the 2018 NHSC Appeal ignored, said nothing about, and declined to adjudicate Maravelias's claims against the "extended terms" effectuated by the lower state court's distinct 8/7/18 Order months after the RSA 633:3-a, III-c. renewal proceeding.. *See supra*, "Procedural Background of The Related State Case", Heading 4. *See also* District ECF Doc #33-1, at *12 (Maravelias's 6/3/19 Memorandum), "Procedural History".

As exhaustively demonstrated above, the Rooker-Feldman doctrine cannot apply to claims never adjudicated in state court. Prayers for Relief I. – VI. of Maravelias's Amended Complaint which seek declaratory and injunctive relief – requiring the "extended terms" to be found unlawful – do not conflict with any state court judgment to the contrary. Ergo, the district court erred by dismissing these claims in its false conflation thereof with Maravelias's state appellate challenge

against the 6/15/18 state court order renewing the restraining order for another year, which the 2018 NHSC Appeal *did* adjudicate.

### ***2. Even If The 2018 NHSC Appeal Had Adjudicated These Claims, Its 2/21/19 Mandate Postdates This Suit's Filing***

In an alternate reality where the 2018 NHSC Appeal did adjudicate and reject Maravelias's challenges against the "extended terms", the district court still would have erred in dismissing these claims because the date of the mandate in the 2018 NHSC Appeal was 2/21/19, 11 days after this case was filed, creating a permitted circumstance of parallel state-federal litigation. Appendix 23 (NHSC Docket Report showing 2/21/19 Mandate in Case No. 2018-0483).

While the NHSC's preliminary Final Order in the 2018 NHSC Appeal is dated 1/16/19, "the date of the mandate, not the date of the issuance of the decision, is the effective date of an appellate court's decision, that the mandate is the order and that the court's opinion merely gives the reason supporting the order." *Carleton v. Balagur*, 162 N.H. 501 (2011) (quoting *State v. Gubitosi*, 153 N.H. 79 (2005) at *81 – 82). The New Hampshire Supreme Court is not alone in following this common rule. *See e.g.*, *Celaya v. Schriro*, 691 F. Supp. 2d 1046 (D. Ariz. 2009); *United States v. Reyes*, 49 F.3d 63 (2d Cir. 1995). "An appellate court's mandate controls all issues that were actually considered and decided by the appellate court". *Kashner Davidson*

*Sec. Corp. v. Mscisz*, 601 F.3d 19, 23 (1st Cir. 2010); *NLRB v. Goodless Bros. Elec. Co.*, 285 F.3d 102, 107 (1st Cir. 2002).

While this appears to be an infrequent circumstance, the Eleventh Circuit has explicitly agreed with Maravelias in an unpublished opinion. *See Bertram v. HSBC Mortgage Services Inc. (In re Bertram*), 17-11774 (11th Cir. Nov. 5, 2018).

> "At the time that the Bertrams brought the adversary proceeding, the state court had overruled their objection and the Fourth District Court of Appeal had affirmed the trial court. But the Fourth District Court of Appeal had not yet issued the mandate. Because the mandate had not issued, the state action had not yet reached a point where neither party sought further action, meaning the state court litigation challenging the foreclosure sale had not yet ended. *See Nicholson*, 558 F.3d at 1275. It is true that this litigation was pending when the Fourth District Court of Appeal issued its mandate, bringing an end to the state court litigation challenging the foreclosure sale. The Rooker-Feldman doctrine does not bar the Bertrams' claims challenging the foreclosure sale because the doctrine 'cannot spring into action and vanquish properly invoked subject matter jurisdiction in federal court when state proceedings subsequently end.' *Id*. at 1275 n.13."

*Id.* at *14, citing *Nicholson v. Shafe*, 558 F.3d 1266 (11th Cir. 2009).

This Court's Rooker-Feldman case law is necessarily in agreement with the Eleventh Circuit's holding that the date of the state court mandate is the effective date of a state judgment for Rooker-Feldman purposes. "If federal litigation is initiated before state proceedings have ended, then – <u>even if the federal plaintiff</u>

expects to lose in state court and hopes to win in federal court – the litigation is parallel, and the Rooker-Feldman doctrine does not deprive the court of jurisdiction." *Federación de Maestros de P.R.,* 410 F.3d at *24. (Emphasis added) That a preliminary final order from a state appellate court might give a litigant a preview of an expected outcome (notwithstanding either party's right to petition the state court for rehearing or reconsideration prior to the issuance of the mandate) and might therefore create an "expectation", does not incur a Rooker-Feldman prohibition, as this Court openly alluded to in the above-emphasized text from its precedential decision in *Federación*.

## C. The State Proceedings Were Non-Final

In *Federación*, this Court interpolated from *Exxon* a three-prong test to determine finality of state proceedings for Rooker-Feldman purposes. Maravelias's 6/3/19 Memorandum showed that, by this standard, the proceedings are non-final. The claims at bar constitute non-prohibited parallel state-federal litigation.

### *1. The District Court Violated The Federación Precedent*

This Court has held:

> "First, when the highest state court in which review is available has affirmed the judgment below and nothing is left to be resolved, then without a doubt the state proceedings have 'ended.' … Second, if the state action has reached a point where neither party seeks further action, then the state proceedings have also 'ended.' … Third, if

> the state court proceedings have finally resolved all the federal questions in the litigation, but state law or purely factual questions (whether great or small) remain to be litigated, then the state proceedings have 'ended' within the meaning of *Rooker-Feldman* on the federal questions at issue."

*Federación de Maestros de P.R.,* 410 F.3d at *18 – 20.

In the district court litigation, Maravelias applied the existence of his pending 5/31/19 Notice of Appeal to the NHSC ("2019 NHSC Appeal") to the three-prong *Federación* test:

> "Here, Maravelias has just days-ago initiated a state appeal to the New Hampshire Supreme Court on 5/31/19 to challenge the 'extended terms' recently re-imposed on 3/8/19 into the new, ongoing 2019 protective order, almost one month after this suit was initiated. *See* [5/31/19 NHSC Notice of Appeal] at 3, ¶13 ('Did the trial court violate Maravelias's state or federal constitutional rights by re-imposing the summer 2018 'extended terms'?'). Accordingly, everything is 'left to be resolved' by the state appellate court at this time. … It hardly bears repeating that, here, Maravelias (a 'party' in the state proceeding) has initiated a currently-pending state appeal where he 'seeks further action' and solicits the NHSC to review the 'extended terms', *inter alia*. … Likewise, the pending state appeal aims to resolve federal constitutional questions both on the 'extended terms' and on the facial overbreadth and/or vagueness of RSA 633:3-a, III-c. *See* [5/31/19 NHSC Notice of Appeal], at ¶1 ("Is RSA 633:3-a, III-c. unconstitutionally overbroad or void for vagueness on its face or as-applied to this case?"), ¶2-3, ¶13 (*see supra*), ¶14."

Maravelias 6/3/19 Memorandum, District ECF Doc #33-1, p. 17 – 18. *See also* Appendix 13 – 22 (Maravelias's 5/31/19 NHSC Rule 7 Notice of Mandatory Appeal initiating Christina DePamphilis v. Paul Maravelias (NHSC Case No. 2019-0306)).

In summary, the state proceedings were non-final 1) because Maravelias had initiated a state appeal of the 3/8/19 Order reapplying the "extended terms" to him after the instant suit was filed and 2) because said state appeal sought adjudications of the federal constitutional questions. *Accord Velazquez v. S. Fla. Fed. Credit Union*, 546 Fed. Appx. 854, 2013 U.S. App. LEXIS 22848, 2013 WL 5977166. "[L]ogic dictates that if a state court issues a judgment and the losing party … does not allow the time for appeal to expire (but instead, files an appeal), then the state proceedings have not ended." *Id*.

### ***2. The District Court Woefully Mischaracterized Maravelias's Non-Finality Argument***

Despite the obvious fact that Maravelias's non-finality argument was overwhelmingly predicated on the existence of the then-pending 2019 NHSC Appeal seeking further action and review of federal constitutional claims, the district court radically mischaracterized Maravelias's argument in its Memorandum Opinion:

> "And, finally, the court notes that Maravelias's efforts to demonstrate that Rooker-Feldman does not apply because the stalking order remains subject to renewal and, therefore,

> there has been no 'final judgment' in the case, are equally unpersuasive and meritless."

Addendum 10 (11/4/19 Memorandum Opinion).

Maravelias's argument was not that "the stalking order remains subject to [theoretical, potential] renewal and, therefore, there has been no 'final judgment' in the case" as the district court rashly claimed in its palpable anger towards Maravelias. Rather, Maravelias pointed to the concrete and actual 2019 NHSC Appeal he had initiated on 5/31/19. The district court goes on to call Maravelias's non-finality argument "equally unpersuasive and meritless [as his other arguments]" even after showcasing its reckless disregard for what Maravelias's non-finality argument in fact was. One is left to wonder whether the district court even read Pages 17 – 18 of Maravelias's 6/3/9 Memorandum in support of his opposition to the Rule l2(b)(1) Motion to Dismiss: Maravelias directly or indirectly refers to the newly pending "state appeal" <u>a total of seven (7) times</u> in these two pages. Only in one single diminished footnote did Maravelias even once raise the valid notion, to suggest non-finality, that DePamphilis herself had declared an intent to return next year to further extend the duration of the restraining order. This footnote (n.4, Page 18, District ECF Doc #33-1) appears *after* the section applying the fact of the newly pending "state appeal" to the three-prong *Federación* test to show non-finality.

### *3. The District Court Misapplied Tyler Which Is Distinguishable*

The district court created further reasonable doubt that it had even read Maravelias's 6/3/19 Memorandum when it proceeded to misapply *Tyler* which dismissed certain claims under the Rooker-Feldman doctrine. This Court rejected Tyler's unsuccessful argument that the state proceedings in her case were not ended because, even though "her family court matters 'will remain pending for at least another ten years'" … "she offer[ed] no suggestion that the [state court] will ever reconsider the federal claims she presses here." *Tyler*, 914 F.3d at *52.

Unlike *Tyler*, Maravelias cited to the district court the exact numbered "Questions Presented" he listed on his 2019 NHSC Appeal docketing form which constituted "the federal claims [he] presses here". *Id.* To wit, Maravelias noted to the district court his 5/31/19 NHSC Notice of Appeal contained:

> "*See* [5/31/19 NHSC Notice of Appeal] at 3, ¶13 ('Did the trial court violate Maravelias's state or federal constitutional rights by re-imposing the summer 2018 'extended terms'?'). … [T]he pending state appeal aims to resolve federal constitutional questions both on the 'extended terms' and on the facial overbreadth and/or vagueness of RSA 633:3-a, III-c. *See* [5/31/19 NHSC Notice of Appeal], at ¶1 ("Is RSA 633:3-a, III-c. unconstitutionally overbroad or void for vagueness on its face or as-applied to this case?"), ¶2-3, ¶13 (*see supra*), ¶14." *Ibid.*

Despite this incontrovertible fact, the district court falsely stated:

> "Here, as in Tyler, there is no suggestion that the state courts will again consider the federal questions presented by the Modified Stalking Order. The New Hampshire Supreme Court's affirmance of the trial court's decision to enter the Modified Stalking Order was final and Maravelias's constitutional challenges to that order will not be revisited." Addendum 18 – 19 (11/4/19 Memorandum Opinion, p. 10 – 11).

The district court 1) ignored Maravelias's new 5/31/19 NHSC Notice of Appeal of the lower state court's new 2019 3/8/19 Order granting the third extended-duration restraining order and reapplying the "extended terms" thereto, 2) ignored Maravelias's verbose notice of said 5/31/19 Notice of Appeal in his 6/3/19 Memorandum, and 3) expanded upon its duplicitous usage of false equivalencies. Building upon its false conflation of A) the 8/7/18 "extended terms" and B) the distinct prior 6/15/18 extension of duration of the restraining order under RSA 633:3-a, III-c. by using the novel term "Modified Stalking Order", the district court in this part created yet another false conflation between Maravelias's completed 2018 NHSC appeal of the second restraining order and his newly pending 2019 NHSC appeal of the third restraining order. The two appeals originated from and attacked different final decisions on the merits (dated 6/15/18 and 3/8/19, respectively) of the NH Circuit Court. Maravelias's 2019 NHSC Appeal of the 2019 – 2020 restraining order has nothing to do with his previous 2018 NHSC Appeal of the 2018 – 2019 restraining order. *Cf. Klimowicz v. Deutsche Bank Nat'l Tr. Co.*,

907 F.3d 61, 66 (1st Cir. 2018) (upholding exercise of Rooker-Feldman doctrine where "the plaintiff could have pursued [state appeal] of the [state court] judgment" but where, unlike Maravelias, she "forfeited that opportunity … by neglecting to [initiate an] appeal" in state court). Regardless, as previously discussed *ad nauseum*, the 2018 NHSC Appeal reached the merits of neither on the "extended terms" challenge nor the facial challenge against RSA 633:3-a, III-c.

### D. The "Extended Terms" Are *Ultra Vires* In Complete Absence Of Jurisdiction And Thus Void *Ab Initio*

It is disturbing that the district court completely disregarded what is perhaps Maravelias's most significant argument. Although the Rooker-Feldman doctrine prohibits federal court review even of final state court judgments which blatantly violate federal constitutional rights, it does not apply if the state "judgment" is issued without jurisdiction and therefore void *ab initio*. *In re James*, 940 F.2d 46 (3d Cir. 1991). Federal district courts "have the power to vacate … state court judgments that are considered void ab initio." *Id.* at *52. "Sound jurisprudential reasons underlie this concept. Because a void judgment is null and without effect, the vacating of such a judgment is merely a formality and does not intrude upon the notion of mutual respect in federal-state interests". *Id*. While even blatantly erroneous state judgments are preclusive under Rooker-Feldman, a void judgment "is one which, from its inception, was a complete nullity and without legal effect" and does not trigger the

Rooker-Feldman bar. *Ibid*. (quoting *Lubben v. Selective Serv. Sys. Local Bd. No. 27*, 453 F.2d 645, 649 (1st Cir. 1972)).

Maravelias provided the district court with robustly developed argument that Defendant John J. Coughlin granted the "extended terms" *ultra vires* in complete absence of jurisdiction. Appendix 63, 71, 77 – 80 (Amended Complaint, ¶35, 89 – 91, 124 – 129); Appendix 46 – 52 (Maravelias 6/3/19 Memorandum, District ECF# 33-1). Maravelias offers a concise summary here.

Defendant Coughlin had no authority to impose further terms against Maravelias through the restraining order, which would be an equitable remedy, where not explicitly authorized to so in New Hampshire statutory law. This is because New Hampshire law reserves equity powers to the NH Superior Court and the NH Supreme Court. *See* RSA 498, "Equity Powers and Proceedings", 498:1, "Jurisdiction". Addendum 24. Defendant Coughlin's limited jurisdiction in the NH Circuit Court – District Division is defined in RSA 502-A, "District Courts", "Jurisdiction", 502-A:11 – 502-A:17-a (granting NH Circuit Court – District Division jurisdiction over legal reliefs in civil cases where "damages claimed do not exceed $25,000" and giving no equitable powers).

Turning then to the statute, RSA 633:3-a, III-a., controlling the initial issuance of such restraining orders, commands that "[t]he types of relief that may be granted

… shall be the same as those set forth in RSA 173-B.”. Addendum 23. RSA 173-B:5, “Relief”, accordingly sets forth a listing of the specific protective order terms which the legislature has permitted state courts to enjoin against defendants of such orders. Maravelias reproduces this list in Paragraph ¶126 of his Amended Complaint. Appendix 78 – 79. Prohibiting “possession” of anything (other than “firearms”) is not one of the specific, limited forms relief permitted. *See* RSA 173-B:5, I. Nor is “possession” listed anywhere in the exclusive “single acts” enumerated in RSA 633:3-a, II.(a) for which the state may criminally enforce violations of such civil protective orders under RSA 633:3-a, I.(c). Addendum 23.

Accordingly, Judge Coughlin exceeded his jurisdictional authority by issuing the “extended terms” *ultra vires*, in complete absence of authority, and likewise voided his judicial immunity. *See also* District ECF Doc #34 (Maravelias Opposition to Defendant John J. Coughlin Motion to Dismiss) (further discussion of voided judicial immunity).

The district court’s 11/4/19 Memorandum Opinion, however, contains not a shred of acknowledgement that this argument was even raised to it.

### E. Declaratory Judgment Is Not Moot: Maravelias Wishes To Amend His Complaint To Seek Damages Based On The Theory That The "Extended Terms" Were Unlawful

During the pendency of the state restraining order and "extended terms" against him, in fear of further retaliation and unjust prosecution using the DePamphilis restraining order as an excuse, Maravelias did not dare to seek certain legal remedies which he now seeks. Appendix 64 – 67 (Amended Complaint, ¶43 – 63).

While Maravelias's first and ninth prayers for preliminary and permanent injunctive relief respectively are moot, the remaining prayers II. – VI. for declaratory judgment that the "extended terms" were illegal and violated his rights are not moot. Neither are the facial constitutional claims (VII. – VIII.) moot, nor claim X. which seeks an award of "reasonable costs and disbursements of this action" under applicable law. Appendix 87 – 88 (Amended Complaint, p. 33 – 34).

Maravelias now seeks 1) nominal damages against Defendant Coughlin, able to show that judicial immunity was voided, and 2) nominal and compensatory damages against the Windham Defendants, who caused injury to Maravelias by making threats in bad-faith to bring false arrest against Maravelias under the "extended terms". Appendix 64 – 69, 72 – 82 (Amended Complaint, ¶43 – 51, ¶63 – 73, ¶93 – 147). These reliefs are contingent upon the "extended terms" having been

illegal and violative of Maravelias's rights. These reliefs are encapsulated in Maravelias's prayer for relief XI., that the district court "grant any further relief as may be deemed just and proper". Appendix 88.

"A case 'becomes moot only when it is impossible for a court to grant any effectual relief whatever to the prevailing party.'" *Chafin v. Chafin*, 568 U. S. 165, 172 (2013). "'As long as the parties have a concrete interest, however small, in the outcome of the litigation, the case is not moot.'" *Ibid*. Upon a reverse and remand disposition, the district court could 1) award nominal damages against Defendant Coughlin after a finding that he voided judicial immunity and violated rights, 2) award nominal and/or compensatory damages against the Windham Defendants for their unlawful threats to arrest Maravelias on terms of a restraining order criminally unenforceable under RSA 633:3-a, I.(c)., 3) award Maravelias costs for this action, and, most essentially of all, 4) allow Maravelias to proceed with his improperly dismissed facial constitutional challenge against RSA 633:3-a, III-c.

The district court has a "virtually unflagging" obligation to exercise jurisdiction over these remaining claims for which Maravelias can make colorable legal arguments under applicable law for relief. *Colorado River Water Conservation Dist. v. United States*, 424 U. S. 800, 817 (1976). Maravelias brought his claims against the unlawfully applied "extended terms" under 42 U.S.C. § 1983 which

permits the recovery of damages against municipalities such as the Windham Defendants. *Monell v. New York City Dept. of Social Servs.*, 436 U. S. 658, 695 – 701 (1978). Even at this stage, Maravelias has already alleged the Windham Defendants have caused him harm, distress, and irreparable injury from chilling of free speech rights through their bad-faith threats to enforce the extrajurisdictional, unconstitutional, and otherwise non-enforceable "extended terms".[3] Appendix 64 – 67 (Amended Complaint, ¶43 – 63). *See also* District ECF Doc #23-1, p. 6 – 7.

Even if Maravelias ultimately fails to show he suffered any injury beyond the imposition of the illegal federal-rights-depriving "extended terms" themselves, "[w]hen a plaintiff 's constitutional rights have been violated, nominal damages may be awarded without proof of any additional injury." *N.Y. State Rifle & Pistol Ass'n v. City of N.Y.*, 206 L. Ed. 2d 798, 140 S. Ct. 1525 (*Alito*, J., dissenting) (2020). This bedrock proposition is hardly disputed. *See Carey v. Piphus*, 435 U. S. 247, 98 S. Ct. 1042, 55 L. Ed. 2d 252 (1978); *Memphis Community School Dist. v. Stachura*,

[3] Though beyond the Rooker-Feldman limelight of the district court's dismissal below on the sole grounds of alleged lack of subject matter jurisdiction, Maravelias's 5/13/19 Memorandum of Law in Support of Motion of Preliminary Injunction (District ECF Doc #23-1) discusses the Windham Defendants' bad-faith enforcement threats of the "extended terms" and explains how said "extended terms" are criminally unenforceable under RSA 633:3-a, I.(c) (*nota bene*: Subsection I.(c). pertaining to criminal penalties for violation of civil protective orders, not to be confused with Subsection III-c. mentioned frequently elsewhere), because "possession" is not a "single act" enumerated in RSA 633:3-a, II.(a).

477 U. S. 299, 106 S. Ct. 2537, 91 L. Ed. 2d 249 (1986); *Project Vote/Voting for America, Inc. v. Dickerson*, 444 Fed. Appx. 660, 661 (4th Cir. 2011) (nominal damages for constitutional free speech violation). "Claims for damages or other monetary relief automatically avoid mootness, so long as the claim remains viable." *Griffin v. N.H. Dep't of Emp't Sec.*, No. 09-cv-00250-SM, 2009 U.S. Dist. LEXIS 120278, at *13 (D.N.H. Nov. 16, 2009) (citing 13C Charles A. Wright, Arthur R. Miller & Edward H. Cooper, Fed. Prac. & Proc. § 3533.3 (3d ed. 2008)). "Noneconomic damages such as loss of enjoyment are available in §1983 litigation". *N.Y. State Rifle & Pistol Ass'n*, 206 L. Ed. 2d at *810. "Even a 'live claim for nominal damages will prevent dismissal for mootness.'" *Id.*, quoting *Bernhardt v. County of L.A.,* 279 F.3d 862, 872 (9th Cir. 2002).

This case is not moot. Maravelias should be allowed to obtain an adjudication on the merits of his claims that the "extended terms" are [were] unlawful and that RSA 633:3-a, III-c. is [and still is] facially unconstitutional. The Court should reverse and remand to allow Maravelias 1) to proceed with his facial challenge and 2) to seek permission to amend his complaint to claim damages now that there is lesser cause to fear retaliatory false arrest and malicious prosecution as a result, with the subsequent expiration and dismissal of the state restraining order on 2/4/20 since the filing of this appeal.

## III. THE DISTRICT COURT'S MEMORANDUM OPINION IS IMPROPER JUDICIAL ACTIVISM CRAFTED IN EVIDENT MALICE.

### A. The District Court Improperly Stated Extrajudicial Opinions, Unfounded Personal Attacks, and Factual Findings Contrary to Maravelias's Well-Pleaded Allegations

For good reason, Maravelias alleged in Paragraph ¶16 of his Amended Complaint,

> "Maravelias has long maintained that the said 'protective' order litigation is an illegitimate, bad-faith campaign of malicious harassment orchestrated by DePamphilis's father David DePamphilis. Maravelias claims DePamphilis committed perjury to obtain the order. During cross-examination, DePamphilis even admitted that Maravelias never actually spoke certain words to her which she claimed (maliciously) in her petition he said."

Appendix 59.

Judge McAuliffe was evidently offended. Even though this entire case centers around an unlawful repression of Maravelias's right to even posses public social media images of Christina DePamphilis, her boyfriend, and David DePamphilis, incitatively middle-fingering Maravelias while DePamphilis laughably claimed to "fear" him, in an attempt to get Maravelias arrested for violating her fake restraining order, Judge McAuliffe ensured to publicize his personal opinion "that Christina has a well-founded fear for her personal safety". Addendum 11.

This was an inappropriate attack for Judge McAuliffe to make because his position as a federal judge was not to opine on the merits of the underlying state restraining order. Indeed, his Memorandum Order is adamant elsewhere the state court decisions "will not be revisited". Addendum 19.

Judge McAuliffe seized Maravelias's case as an opportunity to broadcast[4] his disturbing advocacy and personal persuasions about the past DePamphilis-Maravelias state case. Doing so on a Rule 12 motion ruling, he violated the law that "the court must 'accept as true all well-pleaded facts set out in the complaint and indulge all reasonable inferences in favor of the pleader.'" *Camp v. Bimbo Bakeries USA, Inc.*, 2018 U.S. Dist. LEXIS 211776 (*Steven J. McAuliffe*, J.) (quoting *SEC v. Tambone*, 597 F.3d 436, 441 (1st Cir. 2010)). The first five (5) pages of his Memorandum Opinion indicate an inversion of his duty, viewing the facts in the light *least* favorable to Maravelias.

While Judge McAuliffe might make a good pundit or political news reporter, it was unbecoming of the federal judiciary to prejudice Maravelias by making factual findings in a context where Maravelias had no opportunity to defend himself. The

[4] Judge McAuliffe succeeded in damaging Maravelias. His libelous Memorandum Opinion now appears in the first results for a Google search of Maravelias's name, as district court judgments are automatically published on numerous public court reporting websites.

Memorandum Opinion does not state, for instance, "the state court found that DePamphilis's testimony was credible that she perceives Maravelias's obsession with Christina has not abated over the years, and rejected Maravelias's conflicting testimony". Rather, he positively declared "Maravelias's obsession with Christina has not abated over the years" in his own personal voice, as if a dogmatic proclamation of undisputed gospel. Addendum 3.

Judge McAuliffe should have kept his omniscient, auto-apotheotic epiphanies to himself for three reasons. First, he does not personally know Maravelias so he cannot say whether Maravelias has an "unabated obsession" with the person who has been legally abusing him for multiple years. Second, the state court record indicates Maravelias does not have any "obsession". Maravelias liked DePamphilis when she was 16 and invited her on a date in a charming stunt in 2016. Appendix 27, 33. The offer having been declined, he then rapidly lost interest[5] once he soon discovered she was fornicating with a 21-year-old man at age 16. Appendix 37, 43. The subsequent four years have been characterized by his valiant self-defense of DePamphilis's gratuitous legal attacks and wanting to have nothing to do with DePamphilis. Under these facts, that Maravelias does not have an "obsession" is

[5] Upon information and belief, Maravelias excludes both non-virgin and vexatious litigant women from his prospects.

pellucid, let alone a "reasonable inference[] in favor of the pleader" required within Rule 12 adjudications. *Bimbo Bakeries USA, Inc., supra*. Third, whether Maravelias has an "obsession" is immaterial to the relief requested in this lawsuit.

A reasonable person could infer that Judge McAuliffe crossed the line of professionalism and entered the realm of partiality, bias, and antagonistic misconduct. Perplexed, Maravelias was left with the only speculation his naming Judge John J. Coughlin as a defendant may have "offend[ed] an apparent sacred fraternity". District ECF Doc #45-1, p. 2. For instance, Judge McAuliffe's Memorandum Opinion twice opines that Maravelias "pushed the restrictions embodied in that order to their very limits" and "again pushed the limits of that order". Addendum 12. This behavior of Judge McAuliffe is perplexing for three reasons. First, it is not illegal to "push the restrictions" of an order which implicitly criminalizes otherwise lawful conduct. Second, whether Maravelias "pushed the restrictions … to their limits" is immaterial to the sole legal question at this stage of whether federal subject matter jurisdiction exists. Third, in law, a bad person can have a good argument, and a good person can have a bad argument. Therefore, it reflects poorly on the federal judiciary for Judge McAuliffe seemingly to mitigate his erroneous disposition by showing that Maravelias is a bad person.

Malice can be inferred by the district court's extensive and elaborate expenditure of time spent scrutinizing the state court record to malign Maravelias in over four pages of unilateral activism as compared to the exiguous nature of its legal review of the Rooker-Feldman issue at bar, ignoring and mischaracterizing gaping swaths of Maravelias's arguments as shown above.

### B. An Objective Fact-Pattern Suggests Judge McAuliffe's Prejudice Against Maravelias

Instead of spending time to think of three redundant, progressively intensifying adjectives to quip that "each of Maravelias's claims appears to be frivolous, meritless, and misguided" (Addendum 6), Judge McAuliffe could have alternatively devoted this time to 1) reading the part of Maravelias's Amended Complaint and 6/3/19 Memorandum which spoke of the "extended terms" being issued without jurisdiction and voiding judicial immunity and 2) reading the part of Maravelias's 6/3/19 Memorandum which pointed-out his new 2019 state appeal raised federal questions to be revisited in state courts. Then he could have explained why these robust, well-developed arguments which he ignored were "frivolous, meritless, and misguided" to provide for meaningful appellate review.

A reasonable person in Maravelias's shoes can look back and conclude that this case had already been decided against him on Day 1. In order to taste the counterfactual, Maravelias has the scientific benefit of having experienced litigating

another suit in the district court, mostly simultaneous, involving a different dispute (*Maravelias v. NH Supreme Court*, et al., 1:19-CV-00487(JL)). The latter suit, however, had a different decisionmaker.

Whereas Judge McAuliffe in the case below denied Maravelias even trite and routine accommodations such as permission for ECF filing (Addendum 4) or a hearing on the complex Rule 12(b)(1) Motion, Judge LaPlante in Maravelias's other case permitted ECF filing and granted a hearing on a similar dispositive Rule 12 motion. While Judge LaPlante in said case ultimately issued a 10/17/19 Order which was largely unfavorable to Maravelias, he did so with thoroughness, professionalism, and exacting attention to each of Maravelias's claims. The same cannot be said of the Memorandum Opinion below. Moreover, the other case likewise involved a dismissal of claims under the Rooker-Feldman doctrine, yet a comparable facial constitutional challenge was properly allowed to proceed. Furthermore, Judge McAuliffe's initial denial of Maravelias's Application for a Temporary Restraining Order made use of ancient Younger abstention case law (Appendix 53 – 54), denying the relief under the factors espoused in *Middlesex County Ethics Comm. V. Garden State Bar Ass'n*, 457 U.S. 423, 432 (1982), whereas the correct precedent – the superseding Supreme Court decision in *Sprint*

*Communications, Inc. v. Jacobs*, 134 S. Ct. 584 (2013) – would have likely dictated a different outcome.

The pattern here is clear to Maravelias and further counsels towards reversing the judgment of the district court below.

## CONCLUSION

The instant appeal beckons the Honorable Court to enact Chief Justice Marshall's widely quoted aphorism reminding that federal courts "have no more right to decline the exercise of jurisdiction which is given, than to usurp that which is not given." *Cohens v. Virginia*, 6 Wheat. 264, 404 (1821). The district court erroneously declined to exercise the subject matter jurisdiction it rightfully had.

———♦———

WHEREFORE, PREMISES CONSIDERED, Defendant-Appellant Paul Maravelias respectfully requests The Honorable Court issue an Opinion:

I. Vacating the November 4, 2019 Judgment of the district court below;

II. Remanding for further proceedings; and

III. Granting any such further relief as may be deemed just and proper.

———♦———

Respectfully submitted,

PAUL J. MARAVELIAS,

*pro se*

/s/ Paul J. Maravelias

Paul J. Maravelias
34 Mockingbird Hill Road
Windham, New Hampshire
03087
paul@paulmarv.com
(603) 475-3305

## CERTIFICATE OF COMPLIANCE

I, Paul Maravelias, hereby certify pursuant to Fed. R. App. Proc. 32(g)(1) that the foregoing Appellant's Brief complies with the type-volume limitation of Fed. R. App. Proc. 32(a)(7)(B), the typeface requirements of Fed. R. App. Proc. 32(a)(5), and the type style requirements of Fed. R. App. Proc. 32(a)(6) because it contains 10,796 words and has been prepared in a proportionally space typeface using Microsoft® Word for Microsoft 365 in Times New Roman 14-point font.

Dated: May 13th, 2020



/s/ Paul J. Maravelias

Paul J. Maravelias
34 Mockingbird Hill Road
Windham, New Hampshire
03087
paul@paulmarv.com
(603) 475-3305

## CERTIFICATE OF SERVICE

I, Paul Maravelias, being a registered electronic filer in the Court's ECF system, certify that on this date an electronic original copy of the within Appellant's Brief and Appendix are being filed through the Court's electronic-filing system pursuant to Fed. R. App. Proc. 25(a)(B)(ii) and Local Rule 25.0 and, further stating pursuant to Fed. R. App. Proc. 25(d)(1)(B), that the following registered electronic service contacts of counsel of record for defendants are being electronically served thereby:

**Nancy J. Smith, Esq.**
*Counsel for Defendant John J. Coughlin*
NH Attorney General's Office (Civil)
Civil Bureau
33 Capitol St
Concord, NH 03301−6397
603 271−3650
Email: nancy.smith@doj.nh.gov

**Anthony Galdieri, Esq.**
*Counsel for Defendant New Hampshire Attorney General*
Office of the Attorney General (NH)
Civil Bureau
33 Capitol St
Concord, NH 03301−6397
603 271−1214
Email: anthony.galdieri@doj.nh.gov

**Samuel R.V. Garland, Esq.**
*Counsel for Defendant New Hampshire Attorney General*
NH Attorney General's Office (Civil)
Civil Bureau
33 Capitol St
Concord, NH 03301−6397
603 271−3650
Email: samuel.garland@doj.nh.gov

**Christopher Cole, Esq.**
*Counsel for Defendant Patricia G. Conway*
Sheehan Phinney Bass & Green PA
1000 Elm St
PO Box 3701
Manchester, NH 03105−3701
603 627−8223
Email: ccole@sheehan.com

**Eric Alexander Maher, Esq.**
*Counsel for the Windham Defendants, Gerald S. Lewis, Chief of Police, and Town of Windham ex rel. Windham Police Department*
Donahue Tucker & Ciandella PLLC
16 Windsor Lane
Exeter, NH 03833
603 778−0686
Fax: 603 772−4454
Email: emaher@dtclawyers.com

Dated: May 13th, 2020

/s/ Paul J. Maravelias

Paul J. Maravelias
34 Mockingbird Hill Road
Windham, New Hampshire
03087
paul@paulmarv.com
(603) 475-3305

## ADDENDUM

District Docket Report.......................................................................................... 1

11/4/19 Memorandum Opinion Granting Rule 12(b)(1) Motion to Dismiss All Claims ............................................................................. 9

11/4/19 Entry of Final Judgment.......................................................................... 21

Amended Notice of Appeal ..................................................................................... 22

Excerpted N.H. Rev. Stat. Ann. ("RSA") Statutory Provisions....................... 23

AJrecused,APPEAL,CLOSED

# U.S. District Court
# District of New Hampshire (Concord)
# CIVIL DOCKET FOR CASE #: 1:19−cv−00143−SM

| | |
|---|---|
| Maravelias v. Coughlin et al<br>Assigned to: Judge Steven J. McAuliffe<br>Case in other court: Circuit Court of Appeals, 19−02244<br>Cause: 28:1331 Fed. Question | Date Filed: 02/11/2019<br>Date Terminated: 11/04/2019<br>Jury Demand: Plaintiff<br>Nature of Suit: 440 Civil Rights: Other<br>Jurisdiction: Federal Question |

**Plaintiff**

| | | |
|---|---|---|
| **Paul Maravelias** | represented by | **Paul Maravelias**<br>34 Mockingbird Hill Rd<br>Windham, NH 03087<br>603 475−3305<br>PRO SE |

V.

**Defendant**

| | | |
|---|---|---|
| **John J. Coughlin**<br>*Senior Judge, 10th Circuit Court−District Division, in his individual and offical capacity* | represented by | **Nancy J. Smith**<br>NH Attorney General's Office (Civil)<br>Civil Bureau<br>33 Capitol St<br>Concord, NH 03301−6397<br>603 271−3650<br>Email: nancy.smith@doj.nh.gov<br>*ATTORNEY TO BE NOTICED* |

**Defendant**

| | | |
|---|---|---|
| **NH Attorney General**<br>*other*<br>Gordon MacDonald | represented by | **Anthony Galdieri (NHAG)**<br>Office of the Attorney General (NH)<br>Civil Bureau<br>33 Capitol St<br>Concord, NH 03301−6397<br>603 271−1214<br>Email: anthony.galdieri@doj.nh.gov<br>*ATTORNEY TO BE NOTICED*<br><br>**Samuel R.V. Garland**<br>NH Attorney General's Office (Civil)<br>Civil Bureau<br>33 Capitol St<br>Concord, NH 03301−6397<br>603 271−3650<br>Email: samuel.garland@doj.nh.gov<br>*ATTORNEY TO BE NOTICED* |

**Defendant**

| | | |
|---|---|---|
| **Patricia G. Conway**<br>*Rockingham County Attorney, in her official capacity*<br>*other*<br>Patricia G. Conway | represented by | **Christopher Cole**<br>Sheehan Phinney Bass & Green PA<br>1000 Elm St<br>PO Box 3701<br>Manchester, NH 03105−3701<br>603 627−8223<br>Email: ccole@sheehan.com<br>*ATTORNEY TO BE NOTICED* |

**Defendant**

| | | |
|---|---|---|
| **Windham, NH, Town of** | represented by | **Eric Alexander Maher**<br>Donahue Tucker & Ciandella PLLC<br>16 Windsor Lane<br>Exeter, NH 03833<br>603 778−0686<br>Fax: 603 772−4454<br>Email: emaher@dtclawyers.com<br>*LEAD ATTORNEY*<br>*ATTORNEY TO BE NOTICED* |

**Defendant**

| | | |
|---|---|---|
| **Gerald S. Lewis**<br>*Chief of Police, Town of Windham, in his official capacity* | represented by | **Eric Alexander Maher**<br>(See above for address)<br>*LEAD ATTORNEY*<br>*ATTORNEY TO BE NOTICED* |

| Date Filed | # | Page | Docket Text |
|---|---|---|---|
| 02/11/2019 | 1 | | COMPLAINT against Patricia G. Conway, John J. Coughlin, Gerald S. Lewis, NH Attorney General, Windham, NH, Town of (Filing fee $400 receipt number 14649017428) filed by Paul Maravelias. (Attachments: # 1 Summonses, # 2 Certification of Notice to Defendants)(bt) (Entered: 02/11/2019) |
| 02/11/2019 | 2 | | MOTION for Emergency Ex Parte Application for Temporary Restraining Order and Order to Show Cause re: Preliminary Injunction filed by Paul Maravelias. **HEARING REQUESTED.** (Attachments: # 1 Declaration in Support, # 2 Proposed Order)(bt) (Entered: 02/11/2019) |
| 02/11/2019 | | | Case assigned to Judge Steven J. McAuliffe. The case designation is: 1:19−cv−143−SM. Please show this number with the judge designation on all future pleadings. (bt) (Entered: 02/11/2019) |
| 02/11/2019 | | | NOTICE. This case has been designated for Electronic Case Filing. All further submissions shall be filed in compliance with the Administrative Procedures for Electronic Case Filing. Pro se litigants are not required to file electronically and may continue to file documents in paper format. Persons filing electronically are strongly encouraged to complete the interactive training modules available on the courts website. To access these modules, click HERE. (bt) (Entered: 02/11/2019) |

| | | | |
|---|---|---|---|
| 02/11/2019 | 3 | | Summonses issued by mail as to Patricia G. Conway, John J. Coughlin, Gerald S. Lewis, NH Attorney General, Windham, NH, Town of. **Counsel shall serve all documents in accordance with Fed. R. Civ. P. 4.** (Attachments: # 1 Notice ECF)(bt) (Entered: 02/11/2019) |
| 02/11/2019 | 4 | | **ORDER denying 2 Motion for Emergency Ex Parte Application for Temporary Restraining Order and Order to Show Cause re: Preliminary Injunction. So Ordered by Judge Steven J. McAuliffe.(lml)** (Entered: 02/11/2019) |
| 03/27/2019 | 5 | | REQUEST FOR ISSUANCE OF SUMMONS/WAIVER by Paul Maravelias.(lml) (Entered: 03/29/2019) |
| 03/27/2019 | 7 | | Returns of Service Executed as to Patricia G. Conway, NH Attorney General, Windham, NH, Town of by Paul Maravelias. Served/Mailed on 3/27/2019. Answer Follow Up on 4/17/2019. The court only follow up date DOES NOT include 3 additional days that may apply per FRCP 6(d) and FRCrP 45(c).(lml) (Entered: 03/29/2019) |
| 03/29/2019 | 6 | | Summons issued by mail as to John J. Coughlin. **Counsel shall serve all documents in accordance with Fed. R. Civ. P. 4. NOTICE: Counsel shall print and serve the summons and all attachments in accordance with Fed. R. Civ. P. 4.** (Attachments: # 1 Notice ECF) (lml) (Entered: 03/29/2019) |
| 04/16/2019 | 8 | | *Town of Windham, Windham Police and Gerald Lewis* ANSWER to 1 Complaint, *and Brief Statement of Defenses* filed by Gerald S. Lewis, Windham, NH, Town of.(Maher, Eric) (Entered: 04/16/2019) |
| 04/17/2019 | 9 | | NOTICE of Attorney Appearance by Samuel R.V. Garland on behalf of NH Attorney General Attorney Samuel R.V. Garland added to party NH Attorney General(pty:dft).(Garland, Samuel) (Entered: 04/17/2019) |
| 04/17/2019 | 10 | | MOTION to Dismiss filed by NH Attorney General. Follow up on Objection on 5/1/2019. The court only follow up date DOES NOT include 3 additional days that may apply per FRCP 6(d) and FRCrP 45(c). (Attachments: # 1 Exhibit A − 1/16/19 NH Supreme Court Order)(Garland, Samuel) Modified on 4/17/2019 to add exhibit description (lml). (Entered: 04/17/2019) |
| 04/17/2019 | 11 | | MOTION to Dismiss filed by John J. Coughlin. Attorney Nancy J. Smith added to party John J. Coughlin(pty:dft). Follow up on Objection on 5/1/2019. The court only follow up date DOES NOT include 3 additional days that may apply per FRCP 6(d) and FRCrP 45(c).(Smith, Nancy) (Entered: 04/17/2019) |
| 04/17/2019 | 12 | | NOTICE of Defendant Patricia Conway's Joinder In Gordon J. MacDonald's Motion to Dismiss by Patricia G. Conway. Attorney Christopher Cole added to party Patricia G. Conway(pty:dft).(Cole, Christopher) Modified on 4/18/2019 to link to doc. no. 10 (lml). (Entered: 04/17/2019) |
| 04/18/2019 | 13 | | NOTICE of Attorney Appearance by Anthony Galdieri (NHAG) on behalf of NH Attorney General Attorney Anthony Galdieri (NHAG) added to party NH Attorney General(pty:dft).(Galdieri (NHAG), Anthony) (Entered: 04/18/2019) |
| 04/18/2019 | 14 | | NOTICE of Attorney Appearance by Eric Alexander Maher on behalf of Gerald S. Lewis (Maher, Eric) (Entered: 04/18/2019) |
| 04/18/2019 | 15 | | |

| | | | |
|---|---|---|---|
| | | | NOTICE of Attorney Appearance by Eric Alexander Maher on behalf of Windham, NH, Town of (Maher, Eric) (Entered: 04/18/2019) |
| 04/18/2019 | 16 | | NOTICE of Attorney Appearance by Christopher Cole on behalf of Patricia G. Conway (Cole, Christopher) (Entered: 04/18/2019) |
| 04/19/2019 | | | NOTICE OF PRETRIAL CONFERENCE. Pretrial Conference set for 6/3/2019 11:00 AM before Magistrate Judge Andrea K. Johnstone. Follow up on Discovery Plan 5/28/2019. Please note pursuant to Title 28 USC 636(c) and Local Rule 73.1, the parties may consent to have the case reassigned to the Magistrate Judge, but are free to withhold consent without adverse consequences.(vln) (Entered: 04/19/2019) |
| 04/19/2019 | 17 | | PRO SE MOTION to Obtain ECF Login and Password filed by Paul Maravelias. Follow up on Objection on 5/3/2019. (lml) (Entered: 04/22/2019) |
| 04/26/2019 | 18 | | MOTION to Dismiss filed by Gerald S. Lewis, Windham, NH, Town of. Follow up on Objection on 5/10/2019. The court only follow up date DOES NOT include 3 additional days that may apply per FRCP 6(d) and FRCrP 45(c).(Maher, Eric) (Entered: 04/26/2019) |
| 05/04/2019 | | | **ENDORSED ORDER** ***Text of Order: The pretrial conference is cancelled and will be rescheduled after resolution of the pending Motions to Dismiss (doc. nos. 10, 11 & 18). Given the issues raised in the motion, the court finds good cause to extend the deadline for issuing the scheduling order pursuant to Fed. R. Civ. P. 16(b) to after the rescheduled pretrial conference.*** **So Ordered by Judge Steven J. McAuliffe. (lml)** (Entered: 05/06/2019) |
| 05/06/2019 | 19 | | OBJECTION to 10 MOTION to Dismiss filed by Paul Maravelias. Follow up on Reply on 5/13/2019. (lml) (Entered: 05/08/2019) |
| 05/06/2019 | 20 | | OBJECTION to 11 MOTION to Dismiss filed by Paul Maravelias. Follow up on Reply on 5/13/2019. (lml) (Entered: 05/08/2019) |
| 05/06/2019 | 21 | | OBJECTION to 18 MOTION to Dismiss filed by Paul Maravelias. Follow up on Reply on 5/13/2019. (lml) (Entered: 05/08/2019) |
| 05/06/2019 | 22 | | AMENDED COMPLAINT with Jury Demand against Paul Maravelias. (Attachments: # 1 Exhibit A − Petitioner's Motion for Modification of Stalking, # 2 Exhibit B − Respondent's Objection to Motion for Modification, # 3 Exhibit C − Petitioner's Reply to Objection, # 4 Exhibit D − Endorsed Order denying Objection, # 5 Exhibit E − Endorsed Order granting Relief, # 6 Exhibit F − Endorsed Order granting Motion for Modification, # 7 Exhibit G − Surreply)(lml) (Entered: 05/08/2019) |
| 05/13/2019 | 23 | | MOTION for Preliminary Injunction filed by Paul Maravelias. Served on 5/13/2019. Follow up on Objection on 5/28/2019. (Attachments: # 1 Memorandum of Law, # 2 Declaration in Support of Motion, # 3 Proposed Order)(lml) (Entered: 05/13/2019) |
| 05/14/2019 | | | **ENDORSED ORDER denying 17 Pro Se Motion to Obtain ECF Login and Password.** ***Text of Order: Denied without prejudice to renewing the motion after the pending motions to dismiss are resolved.*** **So Ordered by Judge Steven J. McAuliffe. (lml)** (Entered: 05/15/2019) |
| 05/16/2019 | 24 | | |

| | | | |
|---|---|---|---|
| | | | MOTION to Dismiss *to Amended Complaint* filed by Gerald S. Lewis, Windham, NH, Town of. Follow up on Objection on 5/30/2019. The court only follow up date DOES NOT include 3 additional days that may apply per FRCP 6(d) and FRCrP 45(c).(Maher, Eric) (Entered: 05/16/2019) |
| 05/16/2019 | 25 | | BRIEF/MEMORANDUM *in Support of Motion to Dismiss Amended Complaint* by Gerald S. Lewis, Windham, NH, Town of (Attachments: # 1 Exhibit Ex A to Memorandum, # 2 Exhibit Ex B to Memorandum)(Maher, Eric) Modified on 6/19/2019 to link to doc. no. 24 (lml). (Entered: 05/16/2019) |
| 05/17/2019 | | | NOTICE of ECF Filing Errors re: 25 Brief filed by Gerald S. Lewis, Windham, NH, Town of. Document should have been filed as an attachment to the main document (AP 2.5(a)). Exhibits or attachments shall be followed by a short description of the document and shall not exceed five words. AP 2.5(a). NO ACTION REQUIRED − FOR INFORMATIONAL PURPOSES ONLY AND MERELY INTENDED TO EDUCATE ALL PARTIES IN THE CASE. If the filing party has any questions concerning this notice, please contact the judge's case manager at 603−226−7326.(lml) (Entered: 05/17/2019) |
| 05/17/2019 | 26 | | MOTION to Dismiss Amended Complaint filed by NH Attorney General. Follow up on Objection on 5/31/2019. The court only follow up date DOES NOT include 3 additional days that may apply per FRCP 6(d) and FRCrP 45(c). (Attachments: # 1 Exhibit Exhibit A − NHSC Notice of Appeal, # 2 Exhibit Exhibit B − NHSC Notice of Appeal, # 3 Exhibit Exhibit C − NHSC Merits Brief, # 4 Exhibit Exhibit D − NHSC Reply Brief)(Garland, Samuel) Modified on 5/20/2019 to add: amended complaint text (lml). (Entered: 05/17/2019) |
| 05/20/2019 | 27 | | MOTION to Dismiss *Amended Complaint* filed by John J. Coughlin. Follow up on Objection on 6/3/2019. The court only follow up date DOES NOT include 3 additional days that may apply per FRCP 6(d) and FRCrP 45(c).(Smith, Nancy) (Entered: 05/20/2019) |
| 05/20/2019 | 28 | | NOTICE of Defendant Patricia Conway's Notice that she Joins in Gordon J. MacDonald's Motion to Dismiss the Plaintiff's Amended Complaint by Patricia G. Conway.(Cole, Christopher) Modified on 5/21/2019 to link to doc. no. 26 (lml). (Entered: 05/20/2019) |
| 05/22/2019 | 29 | | Returns of Service Executed as to Gerald S. Lewis, Windham, NH, Town of by Paul Maravelias. Served/Mailed on 5/13/2019. Answer Follow Up on 6/3/2019. (lml) (Entered: 05/22/2019) |
| 05/28/2019 | 30 | | OBJECTION to 23 MOTION for Preliminary Injunction filed by NH Attorney General. Follow up on Reply on 6/4/2019. The court only follow up date DOES NOT include 3 additional days that may apply per FRCP 6(d) and FRCrP 45(c). (Garland, Samuel) (Entered: 05/28/2019) |
| 05/29/2019 | 31 | | NOTICE of Defendant Patricia Conway's Notice that She Joins in Gordon J. MacDonald's Objection to the Plaintiff's Motion for Preliminary Injunction by Patricia G. Conway.(Cole, Christopher) Modified on 6/4/2019 link to doc. no. 23 (lml). (Entered: 05/29/2019) |
| 05/31/2019 | 32 | | NOTICE for Joinder re: 30 Objection to Motion, filed by Gerald S. Lewis, Windham, NH, Town of. (Maher, Eric) Modified on 6/4/2019 to correct docket text and link to doc. no. 23 (lml). (Entered: 05/31/2019) |

| | | | |
|---|---|---|---|
| 06/03/2019 | 33 | | OBJECTION to 26 MOTION to Dismiss Amended Complaint filed by Paul Maravelias. **HEARING REQUESTED.** Follow up on Reply on 6/10/2019. (Attachments: # 1 Memorandum of Law, # 2 Exhibit A − Notice of Appeal, # 3 Exhibit B − NHSC Case Summary, # 4 Exhibit C − Appendix to NHSC Merits Brief)(lml) (Entered: 06/03/2019) |
| 06/03/2019 | 36 | | OBJECTION to 24 MOTION to Dismiss *to Amended Complaint* filed by Paul Maravelias. Follow up on Reply on 6/10/2019. (lml) (Entered: 06/05/2019) |
| 06/04/2019 | 34 | | OBJECTION to 27 MOTION to Dismiss *Amended Complaint* filed by Paul Maravelias. Follow up on Reply on 6/11/2019. (lml) (Entered: 06/05/2019) |
| 06/04/2019 | 35 | | Objection to 28 Notice of Defendant Patricia Conway's Notice that she Joins in Gordon J. MacDonald's Motion to Dismiss the Plaintiff's Amended Complaint, filed by Paul Maravelias. (lml) (Entered: 06/05/2019) |
| 06/07/2019 | 37 | | REPLY to Objection to Motion re: 23 MOTION for Preliminary Injunction filed by Paul Maravelias. Surreply due by 6/12/2019. (Attachments: # 1 Memorandum of Law)(lml) (Entered: 06/10/2019) |
| 06/10/2019 | 38 | | REPLY to Objection to Motion re 26 MOTION to Dismiss filed by NH Attorney General. Surreply due by 6/17/2019. (Garland, Samuel) (Entered: 06/10/2019) |
| 06/10/2019 | 39 | | REPLY to Objection to Motion re 24 MOTION to Dismiss *to Amended Complaint* filed by Windham, NH, Town of. Surreply due by 6/17/2019. (Maher, Eric) (Entered: 06/10/2019) |
| 06/11/2019 | 40 | | REPLY to Objection to Motion re 27 MOTION to Dismiss *Amended Complaint* filed by John J. Coughlin. Surreply due by 6/17/2019. (Smith, Nancy) (Entered: 06/11/2019) |
| 06/18/2019 | 41 | | SURREPLY to Reply to 24 MOTION to Dismiss *to Amended Complaint* filed by Paul Maravelias. (lml) (Entered: 06/19/2019) |
| 06/18/2019 | 42 | | SURREPLY to Reply to 26 MOTION to Dismiss filed by Paul Maravelias. (lml) (Entered: 06/19/2019) |
| 11/04/2019 | | | **ENDORSED ORDER denying 23 Motion for Preliminary Injunction. *Text of Order: Denied for want of jurisdiction.* So Ordered by Judge Steven J. McAuliffe. (lw)** (Entered: 11/04/2019) |
| 11/04/2019 | 43 | | **///ORDER granting 24 Motion to Dismiss to Amended Complaint; granting 26 Motion to Dismiss Amended Complaint; granting 27 Motion to Dismiss Amended Complaint; granting 28 NOTICE of Defendant Patricia Conway's Notice that she Joins in Gordon J. MacDonald's Motion to Dismiss the Plaintiff's Amended Complaint; denying as moot 10 Motion to Dismiss; denying as moot 11 Motion to Dismiss; denying as moot 12 NOTICE of Defendant Patricia Conway's Joinder In Gordon J. MacDonald's Motion to Dismiss; denying as moot 18 Motion to Dismiss. The Clerk of Court shall enter judgment in accordance with this order and close the case. So Ordered by Judge Steven J. McAuliffe.(lw)** (Entered: 11/04/2019) |
| 11/04/2019 | 44 | | **JUDGMENT is hereby entered in accordance with 43 Order on Motions to Dismiss. Signed by Daniel J. Lynch, Clerk of Court. *(Case Closed)* (lw)** |

| | | | |
|---|---|---|---|
| | | | (Entered: 11/04/2019) |
| 12/02/2019 | 45 | | RULE 53(E) MOTION to Alter or Amend Judgment filed by Paul Maravelias. Served on 12/2/2019. Follow up on Objection on 12/16/2019. (Attachments: # 1 Memorandum of Law)(lw) (Entered: 12/03/2019) |
| 12/02/2019 | 46 | | NOTICE OF APPEAL as to 43 Order on Motion to Dismiss, 44 Judgment by Paul Maravelias. Filing fee $505, receipt number 14649018600. File−stamped copy to be sent to parties/USCA by Clerks Office.<br><br>**NOTICE TO COUNSEL: Counsel should register for a First Circuit CM/ECF Appellate Filer Account at http://pacer.psc.uscourts.gov/cmecf/. Counsel and pro se parties should also review the First Circuit requirements for electronic filing by visiting the CM/ECF Information section at http://www.ca1.uscourts.gov/cmecf**(lw) (Entered: 12/03/2019) |
| 12/03/2019 | 47 | | Appeal Cover Sheet as to 46 Notice of Appeal filed by Paul Maravelias. (lw) (Entered: 12/03/2019) |
| 12/03/2019 | 48 | | Clerk's Certificate transmitting Record on Appeal to US Court of Appeals, documents numbered 43, 44, 46 through 48, re: 46 Notice of Appeal. A copy of the Notice of Appeal mailed to all parties this date.(lw) (Entered: 12/03/2019) |
| 12/03/2019 | | | Appellate Case Number: First Circuit Court of Appeals 19−2244 re: 46 Notice of Appeal filed by Paul Maravelias.(lw) (Entered: 12/03/2019) |
| 12/10/2019 | 49 | | ORDER of USCA as to 46 Notice of Appeal filed by Paul Maravelias. The appellant is directed to file a status report by January 9, 2020 and at thirty day intervals thereafter, informing this court of any action taken by the district court on the post−judgment motion. Further, the appellant is directed to inform this court whether or not he intends to file a notice of appeal or amended notice of appeal from the district court's post−judgment order. See Fed. R. App. P. 4(a)(4)(B)(ii). Failure to comply with this order may lead to dismissal of this appeal for lack of diligent prosecution. 1st Cir. R. 3.0(b). Once the district court rules on the pending motion, it is directed to forward its decision to this court forthwith.[19−2244] (ALW) (lw) (Entered: 12/10/2019) |
| 12/10/2019 | 50 | | CORRECTED ORDER of USCA as to 46 Notice of Appeal filed by Paul Maravelias. (Corrected Order issued to amend caption.) (lw) (Entered: 12/10/2019) |
| 12/16/2019 | 51 | | OBJECTION to 45 MOTION to Alter or Amend Judgment filed by NH Attorney General. Follow up on Reply on 12/23/2019. The court only follow up date DOES NOT include 3 additional days that may apply per FRCP 6(d) and FRCrP 45(c). (Garland, Samuel) (Entered: 12/16/2019) |
| 12/16/2019 | 52 | | OBJECTION to 45 MOTION to Alter or Amend Judgment filed by John J. Coughlin. Follow up on Reply on 12/23/2019. The court only follow up date DOES NOT include 3 additional days that may apply per FRCP 6(d) and FRCrP 45(c). (Smith, Nancy) (Entered: 12/16/2019) |
| 12/16/2019 | 53 | | NOTICE of Defendant Patricia Conway Joins in Gordon J. MacDonald's Objection to the Plaintiff's Rule 59(e) Motion by Patricia G. Conway.(Cole, Christopher) Modified on 12/17/2019 to link to doc. no. 45 (lw). (Entered: 12/16/2019) |

| | | | |
|---|---|---|---|
| 12/16/2019 | 54 | | OBJECTION to 45 MOTION to Alter or Amend Judgment filed by Gerald S. Lewis, Windham, NH, Town of. Follow up on Reply on 12/23/2019. The court only follow up date DOES NOT include 3 additional days that may apply per FRCP 6(d) and FRCrP 45(c). (Maher, Eric) (Entered: 12/16/2019) |
| 01/07/2020 | | | **ENDORSED ORDER denying 45 RULE 59(E) Motion to Alter or Amend Judgment.** ***Text of Order: Denied for the reasons given in the memoranda in opposition.*** **So Ordered by Judge Steven J. McAuliffe.(lw)** Modified on 1/13/2020 to change 53(E) to 59(E) (lw). (Entered: 01/07/2020) |
| 01/13/2020 | 55 | | Amended NOTICE OF APPEAL, as to 43 Order on Motions to Dismiss, 44 Judgment, Endorsed Order on Motion Rule 59(E) by Paul Maravelias. (Attachments: # 1 Cover Letter, # 2 Envelope)(lw) (Entered: 01/13/2020) |
| 01/13/2020 | 56 | | Amended Appeal Cover Sheet as to 55 Notice of Appeal Amended filed by Paul Maravelias. (lw) (Entered: 01/13/2020) |
| 01/13/2020 | 57 | | Clerk's Certificate transmitting Record on Appeal to US Court of Appeals, documents numbered 43, 44, Endorsed Order dated 1/7/20, 55 and 57, re: 55 Notice of Appeal Amended. (lw) (Entered: 01/13/2020) |

Case 1:19-cv-00143-SM Document 43 Filed 11/04/19 Page 1 of 12

UNITED STATES DISTRICT COURT

DISTRICT OF NEW HAMPSHIRE

Paul Maravelias,
Plaintiff

v.

Case No. 19-cv-143-SM-SM
Opinion No. 2019 DNH 188

Hon. John J. Coughlin;
Attorney General Gordon J. MacDonald;
Patricia G. Conway, Esq.; Town of Windham;
and the Windham Police Department,
Defendants

**O R D E R**

Pro se plaintiff, Paul Maravelias, brings this action challenging the constitutionality of a stalking order entered against him by the New Hampshire Circuit Court. He also asks the court to declare that the state statute pursuant to which that stalking order was issued is both facially overbroad and void for vagueness. He seeks injunctive and declaratory relief, invalidating the stalking order and preventing defendants from enforcing the terms of that stalking order. As defendants, Maravelias has named the state court judge who entered the stalking order, and various people and organizations he fears may enforce that order against him: the New Hampshire Attorney General, the Rockingham County Attorney, the Town of Windham, and the Windham Police Department.

Defendants move to dismiss Maravelias's amended complaint asserting, among other things, that this court lacks subject matter jurisdiction to entertain his claims under the Rooker-Feldman doctrine. Maravelias objects. For the reasons discussed, defendants' motions to dismiss are granted and the case is dismissed.

**Background**

This case has been extensively litigated over the years and the relevant factual background has been set forth at length in earlier judicial opinions. See, e.g., DePamphilis v. Maravelias, No. 2018-0483 (N.H. Jan. 16, 2019) (document no. 26-1). See also DePamphilis v. Maravelias, 2017 WL 3468651 (N.H. July 28, 2017). That background need not be recounted in detail here. It is sufficient to note that those opinions describe a history of disturbing behavior by Maravelias, stemming from his years-long obsession with a young woman named Christina, who is significantly younger than he - an obsession that began when Christina was only 11 years old.[1]

[1] At a hearing before the state circuit court, Maravelias revealed that he still possesses photographs and at least one video of Christina from when she was only 12 years old (in fact, he introduced them as exhibits to prove his claim that, even at that young age, Christina was "flirtatious" with him and dressed in a manner he described as "scantily clad.") See DePamphilis v. Maravelias, No. 2018-0483, slip op. at 6 (N.H. Jan. 16, 2019).

Maravelias's obsession with Christina has not abated over the years and has been punctuated by events that include, for example, his attempt to give Christina a new Maserati sports car when she was a sophomore in high school - an offer that was rejected in unambiguous terms. Subsequently, Maravelias either wrote or, as he claims, merely "aided the composition" of, an "anonymous" letter that was sent to Christina. The New Hampshire Supreme Court described that letter as containing "graphic allegations concerning sexual behavior" and what can best be described as ranting, abusive, and vulgar language attacking Christina, her mother, and her father. See DePamphilis v. Maravelias, No. 2018-0483, slip op. at 4 (N.H. Jan. 16, 2019). More recently, Maravelias sent an email to four teachers at Christina's high school, demanding that she be removed from the school's chapter of the National Honor Society and accusing Christina of various criminal and anti-social behaviors. It is sufficient to note that Christina has a well-founded fear for her personal safety. Indeed, she testified that she was afraid that Maravelias's fixation on her had turned "from a love obsession to now a hate obsession." DePamphilis v. Maravelias, No. 2018-0483, slip op. at 6 (N.H. Jan. 16, 2019).

By January of 2018, Maravelias was already subject to a civil stalking order that had been issued by the New Hampshire

Circuit Court, pursuant to N.H. Rev. Stat. Ann. ("RSA") 633:3-a. That order prevented Maravelias from, among other things, having any contact with Christina. Maravelias challenged that order when it was first issued (resulting in an appeal that was denied on the merits by the New Hampshire Supreme Court) and he pushed the restrictions embodied in that order to their very limits. On January 5, 2018, Christina moved the state court to extend the stalking order for another year. Following a three-day evidentiary hearing (at which Maravelias appeared, pro se, and extensively cross-examined Christina), the court granted Christina's motion and extended the protective order.

Maravelias again pushed the limits of that order, prompting Christina to petition the court to modify it by imposing greater limitations on Maravelias (including restrictions that prevent him from accessing, possessing, and disseminating materials from Christina's social media accounts). Maravelias objected, asserting numerous claims, including: (1) that the proposed restrictions would violate his free speech rights under the state and federal constitutions; (2) that the modification was unconstitutionally vague and overbroad; and, (3) if entered, the modified stalking order would deny him due process.[2]

---

[2] Maravelias also raised what might fairly be viewed as a threat against the judge, asserting that the judge "would incur

The court (Coughlin, J. - a named defendant in this litigation) rejected Maravelias's arguments and, on August 7, 2018, granted Christina's request to modify the stalking order. That order (the "Modified Stalking Order") is the subject of this litigation.

Maravelias appealed the Modified Stalking Order to the New Hampshire Supreme Court, where he challenged the substance, scope, and constitutionality of the order itself, as well as the constitutionality of the statute under which it had been issued (RSA 633:3-a). His various claims were extensively briefed, in both his original appellate brief and his reply brief. In a lengthy order dated January 16, 2019, the New Hampshire Supreme Court rejected Maravelias's legal arguments and affirmed both the trial court's extension of the pre-existing stalking order, as well as its subsequent decision to enter the Modified Stalking Order. DePamphilis v. Maravelias, No. 2018-0483 (N.H. Jan. 16, 2019).

It does not appear that Maravelias filed a petition seeking certiorari review in the United States Supreme Court. Instead,

---

liability in federal - let alone state-level - lawsuits for damages on the grounds of willful, reckless First Amendment transgression." Objection to Modified Stalking Order (document no. 22-2) at para. 21. See also id. at paras. 22 and 41.

it would seem, he proceeded directly to this court, raising essentially the same claims he pressed in state court and seeking a judicial declaration that the Modified Stalking Order: (1) violates his free speech rights, as guaranteed by both the state and federal constitutions; (2) violates both his procedural and substantive due process rights under the Fourteenth Amendment; (3) violates his equal protection rights under the Fourteenth Amendment; (4) violates the Ex Post Facto clause of the Constitution; and (5) exceeds the statutory authority vested in state courts by RSA 633:3-a. Also, in an apparent attempt to avoid the Rooker-Feldman doctrine, Maravelias's amended complaint includes a request that the court declare RSA 633:3-a both unconstitutionally broad and unconstitutionally vague on its face. Finally, as noted above, he seeks an injunction preventing any of the named defendants from enforcing the terms of the Modified Stalking Order against him.

## Discussion

While each of Maravelias's claims appears to be frivolous, meritless, and misguided, this court lacks jurisdiction to address them on the merits, given the Rooker-Feldman doctrine. Generally speaking, the Rooker-Feldman doctrine prevents a losing party in state court - like Maravelias - from seeking

subsequent federal court review of that state court judgment by asserting that the state court judgment violated the loser's federally-protected rights. See Rooker v. Fidelity Trust Co., 263 U.S. 413, 416 (1923); District of Columbia Court of Appeals v. Feldman, 460 U.S. 462, 476 (1983). See also Exxon Mobil Corp. v. Saudi Basic Indus. Corp., 544 U.S. 280, 284 (2005) ("The Rooker–Feldman doctrine, we hold today, is confined to cases of the kind from which the doctrine acquired its name: cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments."). Review of such state-court judgments can only be obtained in the United States Supreme Court. See Feldman, 460 U.S. at 476. See generally 28 U.S.C. § 1257.[3]

Here, the thrust of Maravelias's lawsuit is undeniably an effort to invalidate the Modified Stalking Order that was upheld by the state supreme court before Maravelias instituted this action. Indeed, his prayer for relief makes that abundantly clear: he seeks a judicial declaration that the Modified

---

[3] Congress may, of course, vest federal district courts with appellate jurisdiction over certain state-court judgments, as it has done in the case of habeas corpus petitions. See 28 U.S.C. § 2254(a). This is not such a case.

Case 1:19-cv-00143-SM Document 43 Filed 11/04/19 Page 8 of 12

Stalking Order is invalid and unconstitutional, and he also seeks an injunction preventing any of the named defendants from enforcing its terms against him. Under the Rooker-Feldman doctrine, this court plainly lacks subject matter jurisdiction to entertain those claims, since doing so would necessarily involve a review of the New Hampshire Supreme Court's judgment upholding the validity and enforceability of both the extended stalking order and the Modified Stalking Order. See generally Exxon Mobil Corp., 544 U.S. 280; Sinapi v. R.I. Bd. of Bar Examiners, 910 F.3d 544, 549 (1st Cir. 2018); Klimowicz v. Deutsche Bank Nat'l Tr. Co., 907 F.3d 61, 64-65 (1st Cir. 2018); McKenna v. Curtin, 869 F.3d 44, 47-48 (1st Cir. 2017); Miller v. Nichols, 586 F.3d 53, 59 (1st Cir. 2009).

It should be noted that Maravelias's efforts to circumvent the jurisdictional bar imposed by Rooker-Feldman - that is, by bringing a constitutional challenge to the facial validity of RSA 633:3-a (the state statute that authorizes the entry of stalking orders) - is unavailing. See, e.g., Tyler v. Supreme Judicial Court of Mass., 914 F.3d 47 (1st Cir. 2019). In Tyler, as in this case, the losing state court litigant did not file a petition for certiorari with the Supreme Court. Instead, like Maravelias, she brought an action in federal district court asserting that a recent decision by the Massachusetts Supreme

Judicial Court (in a case to which she was a party) had violated her Fourth and Fourteenth Amendment rights. The Court of Appeals noted that, "[t]he record makes plain that Tyler came to federal court seeking an end-run around the SJC's 2017 decision. . . . And the complaint does indeed request that the district court 'declare the Supreme Judicial Court's decision unconstitutional.' The complaint also repeatedly identifies the SJC's 2017 decision as the exclusive cause of Tyler's injury." Id. at 50. The court concluded that the Rooker-Feldman doctrine precluded the district court from exercising subject matter jurisdiction over the plaintiff's claims.

Moreover, and more to the point, the court held that the plaintiff's alternative argument (one also advanced by Maravelias) - that she was not seeking a reversal of the state-court judgment, but rather presenting an independent, general challenge to the constitutionality of state law - was insufficient to avoid Rooker-Feldman's bar to the exercise of subject matter jurisdiction.

> It is true that the Rooker-Feldman doctrine does not bar a general attack on the constitutionality of a state law that does not require review of a judicial decision in a particular case. If a federal plaintiff "presents an independent claim," it is not an impediment to the exercise of federal jurisdiction that the same or a related question was earlier aired between the parties in state court. But that

> exception does not apply if the relief sought in federal court is directed towards undoing the prior state judgment. As we have explained, the relief Tyler seeks is entirely predicated on her insistence that the SJC erred in the 2017 adjudication of her case. Her attempt to reframe the case as an independent challenge to the Massachusetts law is therefore felled by her own complaint.

Tyler v. Supreme Judicial Court of Massachusetts, 914 F.3d 47, 51–52 (1st Cir. 2019) (emphasis supplied) (citations and internal punctuation omitted). So it is in this case with respect to Maravelias's efforts to vacate the Modified Stalking Order by undermining the validity of its statutory source, RSA 633:3-a.

And, finally, the court notes that Maravelias's efforts to demonstrate that Rooker-Feldman does not apply because the stalking order remains subject to renewal and, therefore, there has been no "final judgment" in the case, are equally unpersuasive and meritless. See, e.g., Tyler, 914 F.3d at 52 (rejecting plaintiff's claims that the state court proceedings had not yet ended and could, at least in theory, continue for another 10 years). Here, as in Tyler, there is no suggestion that the state courts will again consider the federal questions presented by the Modified Stalking Order. The New Hampshire Supreme Court's affirmance of the trial court's decision to

enter the Modified Stalking Order was final and Maravelias's constitutional challenges to that order will not be revisited.

**Conclusion**

For the foregoing reasons, as well as those set forth in the legal memoranda submitted by defendants, it is plain that the Rooker-Feldman doctrine precludes this court from exercising subject matter jurisdiction over Maravelias's claims.[4] Accordingly, defendants' motions to dismiss (documents no. 24, 26, 27, and 28) are granted. Those motions to dismiss filed prior to plaintiff's submission of his amended complaint (documents no. 10, 11, 12, and 18) are denied as moot.

The Clerk of Court shall enter judgment in accordance with this order and close the case.

---

[4] It is equally plain that a number (if not all) of Maravelias's claims, were they addressed on the merits, would be barred by res judicata, by virtue of the state supreme court's final judgment in his appeal related to the Modified Stalking Order. DePamphilis v. Maravelias, No. 2018-0483 (N.H. Jan. 16, 2019). And, of course, Judge Coughlin is entitled to the protections afforded by judicial immunity. See generally Zenon v. Guzman, 924 F.3d 611, 616–17 (1st Cir. 2019) (providing what the court called a "primer on judicial immunity").

**SO ORDERED.**

Steven J. McAuliffe
United States District Judge

November 4, 2019

cc: Paul Maravelias, pro se
Nancy J. Smith, Esq.
Anthony Galdieri, Esq.
Samuel R.V. Garland, Esq.
Christopher Cole, Esq.
Eric Alexander Maher, Esq.

UNITED STATES DISTRICT COURT
DISTRICT OF NEW HAMPSHIRE

Paul Maravelias,
Plaintiff

v. Case No. 19-cv-143-SM

Hon. John J. Coughlin;
Attorney General Gordon J. MacDonald;
Patricia G. Conway, Esq.; Town of Windham;
and the Windham Police Department,
Defendants

# JUDGMENT

Judgment is hereby entered in accordance with the Order by District Judge Steven J. McAuliffe dated November 4, 2019.

The prevailing party may recover costs consistent with Fed. R. Civ. P. 54(d) and 28 U.S.C. § 1920.

By the Court:

Daniel J. Lynch
Clerk of Court

Date: November 4, 2019

cc: Paul Maravelias, pro se
Nancy J. Smith, Esq.
Anthony Galdieri, Esq.
Samuel R.V. Garland, Esq.
Christopher Cole, Esq.
Eric Alexander Maher, Esq.

Case 1:19-cv-00143-SM Document 55 Filed 01/13/20 Page 1 of 2

U.S. DISTRICT COURT DISTRICT OF NH

2020 JAN 13 PM 12: 13

FILED

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW HAMPSHIRE**

PAUL MARAVELIAS,

*Plaintiff,*

v.

JOHN J. COUGHLIN, in his individual and official capacities, GORDON J. MACDONALD, in his official capacity as Attorney General of New Hampshire, PATRICIA G. CONWAY, in her official capacity as Rockingham County Attorney, TOWN OF WINDHAM, *ex rel.* WINDHAM POLICE DEPARTMENT, and GERALD S. LEWIS, in his official capacity as Chief of Police.

*Defendants.*

Civil No. 1:19-CV-143(SM)

**AMENDED NOTICE OF APPEAL TO THE UNITED STATES COURT OF APPEALS FOR THE FIRST CIRCUIT**

The above-named Plaintiff, Paul Maravelias, hereby gives notice to the Honorable Court pursuant to Fed. R. App. P. 3(c)(1) and 4(a) that he appeals as of right to the United States Court of Appeals for the First Circuit from the Memorandum Opinion and Order (ECF Doc #43) and Judgment (ECF Doc #44) entered in the above-titled action on November 4th, 2019 and, additionally, from the Court's Order entered January 7th, 2020 denying Plaintiff's Rule 59(e) Motion to Alter or Amend Judgment. The 11/4/19 Memorandum Opinion and Order granted Defendants' motion(s) to dismiss, dismissing Plaintiff's entire complaint, and denied his motion for preliminary injunction on jurisdictional grounds. Pursuant to Fed. R. App. P. 4(a)(4)(B)(ii), this amended notice of appeal further includes the 1/7/20 Order denying the Rule 59(e) Motion.

Dated: January 10th, 2020

Respectfully submitted,

PAUL J. MARAVELIAS, *pro se*

By: /s/ Paul J. Maravelias

Paul J. Maravelias
34 Mockingbird Hill Road
Windham, NH 03087
paul@paulmarv.com
603-475-3305

**CHAPTER 633**
**INTERFERENCE WITH FREEDOM**

**Section 633:3-a**

**633:3-a Stalking. –**
I. A person commits the offense of stalking if such person:
(a) Purposely, knowingly, or recklessly engages in a course of conduct targeted at a specific person which would cause a reasonable person to fear for his or her personal safety or the safety of a member of that person's immediate family, and the person is actually placed in such fear;
(b) Purposely or knowingly engages in a course of conduct targeted at a specific individual, which the actor knows will place that individual in fear for his or her personal safety or the safety of a member of that individual's immediate family; or
(c) After being served with, or otherwise provided notice of, a protective order pursuant to RSA 173-B, RSA 458:16, or paragraph III-a of this section, or an order pursuant to RSA 597:2 that prohibits contact with a specific individual, purposely, knowingly, or recklessly engages in a single act of conduct that both violates the provisions of the order and is listed in paragraph II(a).
II. As used in this section:
(a) "Course of conduct" means 2 or more acts over a period of time, however short, which evidences a continuity of purpose. A course of conduct shall not include constitutionally protected activity, nor shall it include conduct that was necessary to accomplish a legitimate purpose independent of making contact with the targeted person. A course of conduct may include, but not be limited to, any of the following acts or a combination thereof:
(1) Threatening the safety of the targeted person or an immediate family member.
(2) Following, approaching, or confronting that person, or a member of that person's immediate family.
(3) Appearing in close proximity to, or entering the person's residence, place of employment, school, or other place where the person can be found, or the residence, place of employment or school of a member of that person's immediate family.
(4) Causing damage to the person's residence or property or that of a member of the person's immediate family.
(5) Placing an object on the person's property, either directly or through a third person, or that of an immediate family member.
(6) Causing injury to that person's pet, or to a pet belonging to a member of that person's immediate family.
(7) Any act of communication, as defined in RSA 644:4, II.
(b) "Immediate family" means father, mother, stepparent, child, stepchild, sibling, spouse, or grandparent of the targeted person, any person residing in the household of the targeted person, or any person involved in an intimate relationship with the targeted person. …
III-a. A person who has been the victim of stalking as defined in this section may seek relief by filing a civil petition in the district court in the district where the plaintiff or defendant resides. Upon a showing of stalking by a preponderance of the evidence, the court shall grant such relief

as is necessary to bring about a cessation of stalking. The types of relief that may be granted, the procedures and burdens of proof to be applied in such proceedings, the methods of notice, service, and enforcement of such orders, and the penalties for violation thereof shall be the same as those set forth in RSA 173-B. …

III-c. Any order under this section shall be for a fixed period of time not to exceed one year, but may be extended by order of the court upon a motion by the plaintiff, showing good cause, with notice to the defendant, for one year after the expiration of the first order and thereafter each extension may be for up to 5 years, upon the request of the plaintiff and at the discretion of the court. The court shall review the order, and each renewal thereof and shall grant such relief as may be necessary to provide for the safety and well-being of the plaintiff. A defendant shall have the right to a hearing on the extension of any order under this paragraph to be held within 30 days of the extension. The court shall state in writing, at the respondent's request, its reason or reasons for granting the extension. …

## CHAPTER 498
## EQUITY POWERS AND PROCEEDINGS

### Section 498:1

**498:1 Jurisdiction. –** The superior court shall have the powers of a court of equity in the following cases: charitable uses; trusts other than those trusts described in RSA 564-A:1, over which the probate court has exclusive jurisdiction as provided in RSA 547:3, I(c) and (d); fraud, accident and mistake; the affairs of partners, joint tenants or owners and tenants in common; the redemption and foreclosure of mortgages; contribution; waste and nuisance; the specific performance of contracts; discovery; cases in which there is not a plain, adequate and complete remedy at law; and in all other cases cognizable in a court of equity, except that the court of probate shall have exclusive jurisdiction over equitable matters arising under its subject matter jurisdiction authority in RSA 547, RSA 547-C and RSA 552:7.