UNITED STATES COURT OF APPEALS
FOR THE FIRST CIRCUIT

No. 19-2244

PAUL MARAVELIAS,

*Plaintiff–Appellant*

v.

JOHN J. COUGHLIN, Senior Judge, 10th Circuit Court – District Division, in his individual and official capacity; GORDON J. MACDONALD, New Hampshire Attorney General; PATRICIA G. CONWAY, Rockingham County Attorney, in her official capacity; TOWN OF WINDHAM, NH; GERALD S. LEWIS, Chief of Police, Town of Windham, in his official capacity, WINDHAM POLICE DEPARTMENT,

*Defendants–Appellees*

_____

Appeal from an Order of the United States District Court
for the District of New Hampshire
_____

BRIEF FOR DEFENDANTS-APPELLEES
_____

For GORDON J. MACDONALD:
Samuel R.V. Garland, No. 1189913
Assistant Attorney General
N.H. Department of Justice
Civil Bureau
33 Capitol Street
Concord, NH 03301-6397
(603) 271-3650
samuel.garland@doj.nh.gov

Weston R. Sager
NH Bar No. 269463*
Attorney
N.H. Department of Justice
Appeals Unit
33 Capitol Street
Concord, NH 03301-6397
(603) 271-3671
weston.sager@doj.nh.gov
*First Circuit application pending*

For JOHN J. COUGHLIN:
Laura E. Lombardi, No. 104633
Senior Assistant Attorney General
N.H. Department of Justice
Civil Bureau
33 Capitol Street
Concord, NH 03301-6397
(603) 271-3650
laura.lombardi@doj.nh.gov

For TOWN OF WINDHAM ex rel.
WINDHAM POLICE DEP'T, and
GERALD S. LEWIS:
Eric A. Maher, No. 1191871
Donahue, Tucker, & Ciandella, PLLC
16 Acadia Lane
Exeter, NH 03833
(603) 778-0686
emaher@dtclawyers.com

Nancy J. Smith, No. 25497
Senior Assistant Attorney General
N.H. Department of Justice
Civil Bureau
33 Capitol Street
Concord, NH 03301-6397
(603) 271-3650
nancy.smith@doj.nh.gov

For PATRICIA CONWAY:
Christopher Cole, No. 8725
Sheehan Phinney Bass & Green, PA
1000 Elm Street, P.O. Box 3701
Manchester, NH 03105-3701
(603) 627-8223
ccole@sheehan.com

# **TABLE OF CONTENTS**

STATEMENT OF THE CASE AND FACTS ..................................................1

SUMMARY OF THE ARGUMENT ......................................................9

STANDARD OF REVIEW ............................................................11

ARGUMENT .........................................................................13

I.    Maravelias's claims are barred by the *Rooker-Feldman* doctrine.................13

    A.    Maravelias's facial constitutional challenge to RSA 633:3-a, III-c does not evade the *Rooker-Feldman* jurisdictional bar.......................16

        i.    New Hampshire state courts issued a final judgment on Maravelias's facial constitutional challenge to RSA 633:3-a, III-c............................................................16

        ii.    Maravelias's facial constitutional challenge is precluded by *Rooker-Feldman* because it is directed at overturning New Hampshire state court judgments..............................19

    B.    Maravelias's arguments regarding the social media modification are precluded by the *Rooker-Feldman* doctrine. ......................................21

        i.    The date the mandate was issued is not the date of the final state court judgment for purposes of *Rooker-Feldman*....................23

        ii.    The relevant state court litigation is not ongoing. ...................24

        iii.    Maravelias cannot evade *Rooker-Feldman* by alleging that the New Hampshire circuit court's decisions were *ultra vires*.......26

II.    This lawsuit should be dismissed because it is moot. ...................30

III.    Maravelias lacks standing against the defendants.........................36

IV.    Maravelias's claims against Judge Coughlin are barred by absolute judicial immunity.........................................................................38

V.    Maravelias's claims of "improper judicial activism" are false. ....................40

    A.    The district court did not improperly construe the facts against Maravelias. ........................................................................40

i

     B.     The district court was not biased against Maravelias. ........................40

CONCLUSION ..................................................................................................42

CERTIFICATE OF COMPLIANCE........................................................................45

CERTIFICATE OF SERVICE ...............................................................................45

## <u>TABLE OF AUTHORITIES</u>

### Cases

*ACLU of Mass. v. United States Conf. of Catholic Bishops*, 705 F.3d 44
(1st Cir. 2013) .................................................................... 30, 31
*Appeal of Silva*, 172 N.H. 183 (2019)....................................................26
*Atlas Brew Works, LLC v. Barr*, No. 19-5258, 2020 WL 4106557
(D.C. Cir. July 15, 2020) ................................................................34
*Barchock v. CVS Health Corp.*, 886 F.3d 43 (1st Cir. 2018) ...................11
*Bass v. Butler*, 116 F. App'x 376 (3d Cir. 2004)....................... 15, 19, 21
*Cheney v. U.S. Dist. Court for D.C.*, 541 U.S. 913 (2004)......................41
*Cok v. Cosentino*, 876 F.2d 1 (1st Cir. 1989) .........................................38
*Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800 (1976) .31
*Davison v. Gov't of Puerto Rico-Puerto Rico Firefighters Corps.*, 471 F.3d 220
(1st Cir. 2006) .................................................................................11
*Di Giambattisa v. McGovern*, 974 F.2d 1329 (Table), 1992 WL 214444
(1st Cir. Sept. 4, 1992).................................................................38
*District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983)..............13
*Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280 (2005) 13, 14, 15, 23
*Federación de Maestros de Puerto Rico v. Junta de Relaciones del Trabajo de
Puerto Rico*, 410 F.3d 17 (1st Cir. 2005) .........................................23
*Ford v. Bender*, 768 F.3d 15 (1st Cir. 2014) ................................... 30, 31
*Garry v Geils*, 82 F.3d 1362 (7th Cir. 1996) .........................................20
*Goldstein v. Galvin*, 19 F.3d 16 (1st Cir. 2013) ....................................38
*Gordo-Gonzalez v. United States*, 873 F.3d 32 (1st Cir. 2017 ........ 11, 40
*Gulla v. North Strabane Twp.*, 146 F.3d 168 (3d Cir. 1998)...................17
*Hochendoner v. Genzyme Corp.*, 823 F.3d 724 (1st Cir. 2016) ..............36
*Homola v. McNamara*, 59 F.3d 647 (7th Cir. 1995) .............................20
*In re James*, 940 F.2d 46 (3d Cir. 1991)................................................29
*Klimowicz v. Deutsche Bank Nat'l Tr. Co.*, 907 F.3d 61 (1st Cir. 2018) ........ passim
*Lyons v. L.A.*, 461 U.S. 95 (1982)............................................... 36, 37
*Mireles v. Waco*, 502 U.S. 9 (1991)......................................................38
*Phillips Exeter Academy v. Howard Phillips Fund, Inc.*, 196 F.3d 284
(1st Cir.1999) ...............................................................................12
*Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923)................................13

*Ross-Simons of Warwick, Inc. v. Baccarat, Inc.*, 217 F.3d 8 (1st Cir. 2000) ..........12

*Simes v. Huckabee*, 354 F.3d 823 (8th Cir. 2004) ...................................................17

*Sinapi v. R.I. Bd. of Bar Examiners*, 910 F.3d 544 (1st Cir. 2018) ........................15

*Stump v. Sparkman*, 435 U.S. 349 (1978).......................................................... 38, 39

*Swartz v. Heartland Equine Rescue*, 940 F.3d 387 (7th Cir. 2019) .......................18

*Thomas R.W., By & Through Pamela R. v. Massachusetts Dep't of Educ.*,
    130 F.3d 477 (1st Cir. 1997)...........................................................................33

*Tyler v. Supreme Judicial Court of Mass.*, 914 F.3d 47 (1st Cir. 2019)......... passim

*United States v. Browne*, 834 F.3d 403 (3d Cir. 2016)..................................... 28, 39

*United States v. Caramadre*, 807 F.3d 359 (1st Cir. 2015)....................................40

*Uzuegbunam v. Preczewski*, 781 F. App'x 824 (11th Cir. 2019) .................... 33, 34

*Vigueira v. First Bank*, 140 F.3d 12 (1st Cir. 1998)...............................................11

*Zenon v. Guzman*, 924 F.3d 611 (1st Cir. 2019)....................................................38

## Statutes

28 U.S.C. §1257 ......................................................................................................24

RSA 175-B:5 ...........................................................................................................28

RSA 633:3-a .............................................................................................................32

RSA 633:3-a, III-c ............................................................................................ passim

## Rules

Fed. R. Civ. P. 12 ....................................................................................................40

Fed. R. Civ. P. 15(a)(2)...........................................................................................34

Fed. R. Civ. P. 15(a)(3)...........................................................................................34

iv

## STATEMENT OF THE CASE AND FACTS

### A. Original stalking petition and first appeal in New Hampshire state courts

On February 7, 2016, the New Hampshire 10th Circuit Court – District Division – Derry (*Stephen*, J.) (the "circuit court") granted Christina DePamphilis's petition for a civil stalking order against Maravelias. ECF Doc. #33-4 at 40.[1] Maravelias appealed this stalking order to the New Hampshire Supreme Court. *DePamphilis v. Maravelias*, 2017 WL 3468651 (N.H. July 28, 2017) (unpublished). On July 28, 2017, the New Hampshire Supreme Court affirmed the circuit court's grant of the civil stalking order. *Id.*

### B. Extension of stalking petition, social media modification, and second appeal in New Hampshire state courts

On January 5, 2018, DePamphilis moved to extend the civil stalking order for another year. ECF Doc. #22 at 5, ¶ 15. On January 12, 2018, the circuit court (*DeVries*, J.) issued an initial extension of the civil stalking order. ECF Doc #33-4 at 15. In May and June 2018, the circuit court (*Coughlin*, J.) held a three-day hearing on the merits of DePamphilis's motion to extend. ECF Doc. #22 at 6, ¶ 21;

---

[1] The facts underlying the disputes between DePamphilis and Maravelias are addressed in *DePamphilis v. Maravelias*, No. 2018-0483 (N.H. Jan. 16, 2019) (unpublished) (ECF Doc. #26-1) and *DePamphilis v. Maravelias*, 2017 WL 3468651 (N.H. July 28, 2017) (unpublished). *See also* Pl.'s Add. 10 (noting that this case "has been extensively litigated over the years and the relevant factual background has been set forth at length in earlier judicial opinions").

ECF Doc. #33-4 at 6–7. On June 15, 2018, Judge Coughlin extended the stalking order through February 5, 2019. ECF Doc. #22 at 6, ¶ 23; ECF Doc. #33-4 at 6–7.

During the May/June 2018 hearing, Maravelias submitted screenshots from social media accounts he alleged belonged to DePamphilis. ECF Doc. #22 at 5–6, ¶¶ 19–20, 22. Concerned that Maravelias would continue to stalk her social media accounts, on July 2, 2018, DePamphilis moved to modify the stalking order to include the following restriction: "Respondent shall not gain access to or possess any of Petitioner's social media communications either directly or through a third party" (the "social media modification"). ECF Doc. #22-1 at 2, ¶ 6.a.; *see also* ECF Doc. #22 at 6–7, ¶¶ 24–25. Maravelias filed an objection with the circuit court, arguing, among other things, that the requested social media modification violated his free speech rights under the state and federal constitutions; that the modification was unconstitutionally vague and overbroad; and that the modification denied him due process. ECF Doc. #22 at 7–8, ¶¶ 27–28; *see generally* ECF Doc. #22-2 at 5–12. On August 7, 2018, Judge Coughlin approved the social media modification over Maravelias's objection. ECF Doc. # 22 at 7, ¶ 31; ECF Doc. #22-5.

On August 16, 2018, Maravelias appealed the extension of the stalking order and the social media modification to the New Hampshire Supreme Court. *See*

*generally* ECF Docs. #26-1, #26-2, #26-3, #26-4. In his notice of appeal,

Maravelias raised nine questions of law, including the following five:

> 1. Is 633:3-a, III-c unconstitutionally overbroad or otherwise void for vagueness facially or as applied to this case?
>
> . . .
>
> 5. Did the trial court violate Defendant Maravelias's procedural due process rights?
>
> 6. Did the trial court violate *de novo* Defendant's rights afforded by substantive due process or by the specific advance notice requirement of 173-B:3, I, and/or wrongly re-commit similar violations previously committed by the initial protective order by virtue of extending it?
>
> . . .
>
> 8. Did Judge Coughlin commit a class B felony violation of RSA 641:5, I (B) in granting Plaintiff's 7/2/18 post-trial motion for expanded protective orders, forbidding Maravelias *inter alia* from even "possessing" her vulgar harassment social media posts against him, which are public legal exhibits necessary for his legal defense?
>
> 9. Did the trial court err in granting Plaintiff's 7/2/18 post-trial motion for additional expanded protective orders?

ECF Doc. #26-2 at 3.

In his New Hampshire Supreme Court briefs, Maravelias argued, among

other things, that RSA 633:3-a, III-c was unconstitutional, overbroad, and

impermissibly vague. *See* ECF Doc #26-3 at 10, 30–45; ECF Doc. #26-4 at 12–17.

He also argued that Judge Coughlin violated his constitutional rights by granting

3

the social media modification to the stalking order. *See* ECF Doc. #26-3 at 10, 54–57;[2] ECF Doc. #26-4 at 19–21.

On January 16, 2019, the New Hampshire Supreme Court affirmed the extension of the stalking order and the social media modification. *See* ECF Doc. #26-1 at 1. The New Hampshire Supreme Court rejected Maravelias's facial challenge to RSA 633:3-a, III-c because it was not adequately preserved for appellate review. *Id.* at 8–11. The New Hampshire Supreme Court also considered and denied Maravelias's as-applied challenge to that statute. *Id.* Additionally, the New Hampshire Supreme Court rejected Maravelias's other arguments, which included his challenge to the social media modification, as "not sufficiently developed to warrant further review." *Id.* at 11.

**C. Appeal of state court judgments to the federal district court**

Maravelias did not attempt to appeal the January 16, 2019 New Hampshire Supreme Court decision to the Supreme Court of the United States.[3] *See* Pl.'s Add. 13–14. Instead, on February 11, 2019, Maravelias filed this action—a new federal lawsuit in the United States District Court for the District of New Hampshire

---

[2] In making the latter argument, Maravelias incorporated by reference the objection he filed in circuit court to DePamphilis's motion seeking the modification. *See* ECF Doc. #26-3 at 56–57.

[3] Maravelias did, however, file a writ of certiori to the U.S. Supreme Court in a different matter, which was denied. *Maravelias v. DePamphilis*, 140 S. Ct. 204, 205 L. Ed. 2d 124 (2019) (denying writ of certiori).

challenging the legality of the stalking order and the social media modification. *See generally* ECF Doc. #1. Maravelias named as defendants (i) Judge Coughlin in both his official and individual capacities; (ii) Gordon MacDonald, the New Hampshire Attorney General, in his official capacity; (iii) Patricia Conway, the Rockingham County Attorney, in her official capacity; (iv) the Town of Windham ex rel. Windham Police Department (the "Town of Windham"); and (vi) Gerald S. Lewis, Chief of the Windham Police Department, in his official capacity (individually, "Chief Lewis," and together with the Town of Windham, the "Windham Defendants"). *Id.* at 1, 3–4, ¶¶ 9–14.

In his original federal complaint, Maravelias alleged that the social media modification to the stalking order violated the First Amendment to the United States Constitution (Count 1); violated Part I, Article 22 of the New Hampshire Constitution (Count 2); violated his substantive and procedural due process rights under the Fourteenth Amendment to the United States Constitution (Counts 3 through 5); violated the Fourteenth Amendment's Equal Protection Clause (Count 6); and violated the Federal Constitution's prohibition of ex post facto laws (Count 7). *Id.* at 10–21, ¶¶ 45–98. He also alleged that RSA 633:3-a, III-c was facially overbroad in violation of the First Amendment (Count 8) and was facially void for vagueness in violation of the Fourteenth Amendment (Count 9). *Id.* at 22–25, ¶¶ 99–118. Maravelias asked the district court to declare the social media

modification and RSA 633:3-a, III-c unconstitutional and to enjoin the defendants from enforcing either against him.[4] *Id.* at 26, ¶¶ I–IX.

On April 17, 2019, the New Hampshire Attorney General moved to dismiss Maravelias's complaint in its entirety pursuant Rule 12(b)(1). *See generally* ECF Doc. #10. The Attorney General argued that, because Maravelias had already litigated the same and similar claims in New Hampshire state courts, the federal district court lacked jurisdiction under the *Rooker-Feldman* doctrine. *See generally id.* Each of the other defendants also filed motions to dismiss or joined in their co-defendants' motions. *See generally* ECF Doc. #11, #12, #18.

On May 6, 2019, Maravelias filed an amended complaint. ECF Doc. #22. The amended complaint contained the same substantive allegations as the original complaint. *Compare* ECF Doc. #1 at 26, ¶¶ I–IX *with* ECF Doc. #22 at 33–34, ¶¶ I–IX. In addition, Maravelias introduced several new paragraphs designed to evade the *Rooker-Feldman* jurisdictional bar. *See* ECF Doc. #22 at 15–17, ¶¶ 74–92.

---

[4] Maravelias also requested, both in his original complaint and through a separate motion, *see* ECF Doc. #2, that the district court issue a temporary restraining order "prohibiting Defendants and their officials, employees, and agents from implementing or enforcing the [social media modification," *see* ECF Doc. #1 at 26, ¶ I; ECF Doc. #22 at 33, ¶ I. The district court denied this request on February 11, 2019. ECF Doc. #4; Pl.'s App. 53.

Each defendant filed a motion to dismiss Maravelias's amended complaint, arguing that the district court lacked jurisdiction under the *Rooker-Feldman* doctrine. *See generally* ECF Docs. #24, #25, #26, #27, #28. In addition, Judge Coughlin argued that he was entitled to judicial immunity, *see* ECF Doc. #27 at 4–7, and the Windham Defendants argued that Maravelias lacked standing, *see* ECF Doc. #25 at 5–8.

On November 4, 2019, the district court (McAuliffe, J.), issued an order dismissing Maravalias's amended complaint in its entirety. Pl.'s Add. 9–21. The district court held that it lacked jurisdiction under the *Rooker-Feldman* doctrine because Maravelias's claims were "undeniably an effort to invalidate the Modified Stalking Order that was upheld by the state supreme court before Maravelias instituted this action." *Id.* at 15. The district court also noted that, had the case not been dismissed on *Rooker-Feldman* jurisdictional grounds, Maravelias's claims would have been barred by *res judicata* and Judge Coughlin would have been entitled to absolute judicial immunity.[5] *Id.* at 19 n.4.

On December 2, 2019, Maravelias filed a Rule 59(e) motion to alter or amend the district court's order. ECF Docs. #45, #45-1. Maravelias alleged manifest errors of law and fact and accused Judge McAuliffe of libel and other

---

[5] The district court also noted that Maravelias's claims "appear[ed] to be frivolous, meritless, and misguided." Pl.'s Add. 14.

misconduct. ECF Docs. #45, #45-1. Each defendant objected. ECF Docs. #51, #52, #53, #54. On January 7, 2019, the district court issued an endorsed order denying Maravelias's Rule 59(e) motion for the reasons stated in the defendants' objections.

This appeal followed.

## SUMMARY OF THE ARGUMENT

Maravelias's claims have already been adjudicated by New Hampshire state courts. The lawsuit he filed in federal district court was intended to re-litigate and undermine these final state court decisions.

In a comprehensive and well-reasoned order, the federal district court dismissed Maravelias's lawsuit in its entirety because it lacked jurisdiction to adjudicate Maravelias's claims under the *Rooker-Feldman* doctrine.

Maravelias contends on appeal that the district court's decision should be reversed for two reasons[6]:

| Claim I: | The district court erred in dismissing his lawsuit for lack of jurisdiction pursuant to the *Rooker-Feldman* doctrine. Pl.'s Br. 18–44. |
|---|---|
| Claim II: | The district court erred because it did not accept Maravelias's well-pleaded factual allegations as true and was biased against Maravelias. Pl.'s Br. 45–51. |

Maravelias's arguments are meritless. This Court should affirm the federal district court's decision because Maravelias's claims were barred pursuant to the *Rooker-Feldman* doctrine. Alternatively, Maravelias's lawsuit should be dismissed because (1) his claims are now moot, and (2) Maravelias lacks standing against the

---

[6] Maravelias is not appealing the district court's denial of his request for injunctive relief. *See* Pl.'s Br. 17 (acknowledging that because the social media modification allegedly is "no longer in effect, the requested injunctive relief is now moot").

defendants. Additionally, Maravelias's claims against Judge Coughlin fail because Judge Coughlin is entitled to absolute judicial immunity.

Finally, this Court should affirm the district court's decision because Maravelias has provided insufficient support that the district court misapplied the facts or that it was biased against him.

## STANDARD OF REVIEW

"Federal courts are courts of limited jurisdiction." *Klimowicz v. Deutsche Bank Nat'l Tr. Co.*, 907 F.3d 61, 64 (1st Cir. 2018) (quoting *Kokkonen v. Guardian Life Ins. Co.*, 511 U.S. 375, 377 (1994)). "[A] party seeking to invoke the jurisdiction of a federal court must bear the burden of demonstrating the existence of such jurisdiction." *Gordo-Gonzalez v. United States*, 873 F.3d 32, 35 (1st Cir. 2017) (citation omitted). Dismissal is appropriate when "the facts [alleged] in the plaintiff's complaint, taken at face value, fail to bring the case within the court's subject-matter jurisdiction." *Id.* at 48 (citation omitted). "The pleading standard . . . is the same as applies under Rule 12(b)(6)—that is, the plaintiff must state a claim for relief that is plausible on its face." *Id.* (citation, brackets, and internal quotation marks omitted). Well-pleaded facts must be "non-conclusory and non-speculative." *Barchock v. CVS Health Corp.*, 886 F.3d 43, 48 (1st Cir. 2018) (citation and internal quotation marks omitted). "[B]ald conclusions, unrelieved rhetoric, and pejorative epithets" are excluded. *Vigueira v. First Bank*, 140 F.3d 12, 15 (1st Cir. 1998).

Dismissals for lack of subject matter jurisdiction are reviewed *de novo*. *Davison v. Gov't of Puerto Rico-Puerto Rico Firefighters Corps.*, 471 F.3d 220, 222 (1st Cir. 2006). This Court is not "bound by the trial court's rationale, but may affirm its judgment for any valid reason that finds support in the record." *Ross-*

11

*Simons of Warwick, Inc. v. Baccarat, Inc.*, 217 F.3d 8, 10–11 (1st Cir. 2000) (citing

*Phillips Exeter Academy v. Howard Phillips Fund, Inc.*, 196 F.3d 284, 288 (1st

Cir.1999)).

## ARGUMENT

### I.    Maravelias's claims are barred by the *Rooker-Feldman* doctrine.

Maravelias contends that the federal district court erred when it dismissed his lawsuit pursuant to the *Rooker-Feldman* doctrine. *See* Pl.'s Br. 18–44. This argument fails because Maravelias previously litigated these claims in New Hampshire state courts.

The *Rooker-Feldman* doctrine "preserves the [United States] Supreme Court's exclusive jurisdiction over appeals from final state-court judgments by divesting lower federal courts of jurisdiction to hear certain cases brought by parties who have lost in state court."[7] *Klimowicz*, 907 F.3d at 64 (citations and internal quotation marks omitted). *See generally* 28 U.S.C. § 1257. The doctrine "applies to cases brought by state-court losers complaining of injuries caused by state-court judgments that were rendered before the district court proceedings commenced and invite district court review and rejection of those judgments." *Klimowicz*, 907 F.3d at 64 (citations, brackets, and internal quotation marks omitted)*; Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005); *Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 416 (1923); *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 476 (1983).

---

[7] Congress may vest federal district courts with appellate jurisdiction over certain state-court judgments. *See, e.g.*, 28 U.S.C. § 2254(a). This is not applicable here.

Federal district courts "are empowered to exercise original, not appellate, jurisdiction." *Exxon Mobil Corp.*, 544 U.S. at 283. "Where federal relief can only be predicated upon a conviction that the state court was wrong, it is difficult to conceive the federal proceeding as, in substance, anything other than a prohibited appeal of the state-court judgment." *Tyler v. Supreme Judicial Court of Mass.*, 914 F.3d 47, 50 (1st Cir. 2019) (citation and internal quotation marks omitted). "[T]he *Rooker-Feldman* jurisdictional bar is not contingent upon an identity between the issues actually litigated in the prior state-court proceeding and the issues proffered in the subsequent federal suit." *Id.* (same omissions). Instead, "the critical datum is whether the plaintiff's federal suit is, in effect, an end-run around a final state-court judgment." *Id.* (same omissions).

The district court correctly dismissed Maravelias's lawsuit pursuant to the *Rooker-Feldman* doctrine. After the New Hampshire Supreme Court issued its final order on January 16, 2019 regarding Maravelias's challenges to the extension of the stalking order and the social media modification, Maravalias could have sought appellate review in the Supreme Court of the United States. *See Klimowicz*, 907 F.3d at 64; 28 U.S.C. § 1257. He did not.

Instead, on February 11, 2019—nearly one month after the New Hampshire Supreme Court issued its final order—Maravelias filed this lawsuit in federal district court. This lawsuit was designed to (1) invalidate the New Hampshire

14

circuit court's issuance, extensions, and modifications of the stalking order, and (2) overturn the New Hampshire Supreme Court orders affirming these decisions. To grant Maravelias's requested relief, the federal district court would have needed to overrule decisions made by the New Hampshire circuit court and the New Hampshire Supreme Court. This is impermissible under the *Rooker-Feldman* doctrine. *See, e.g.*, *Exxon Mobil Corp.*, 544 U.S. 280; *Sinapi v. R.I. Bd. of Bar Examiners*, 910 F.3d 544, 549 (1st Cir. 2018).

Maravelias claims that the federal litigation is parallel to the New Hampshire state court litigation. *See, e.g.*, Pl.'s Br. 19. This is incorrect. Maravelias filed this federal lawsuit weeks after the New Hampshire state court litigation had concluded. In contrast to the cases on which Maravelias relies, Maravelias did not file this lawsuit while the relevant state court litigation was ongoing. *See, e.g.*, *Bass v. Butler*, 116 F. App'x 376, 379–80 (3d Cir. 2004) (filing federal lawsuit before the state court litigation had concluded); *Exxon Mobil Corp.*, 544 U.S. at 289–91 (same). This federal litigation was not parallel to Maravelias's state court litigation—Maravelias instead appealed to the federal district court for relief from "injuries allegedly caused by [] state-court judgments." *See, e.g.*, *Klimowicz*, 907 F.3d at 65. This is barred by the *Rooker-Feldman* doctrine. *See id.*

**A. Maravelias's facial constitutional challenge to RSA 633:3-a, III-c does not evade the *Rooker-Feldman* jurisdictional bar.**

Maravelias claims that the *Rooker-Feldman* doctrine bar does not apply to his facial constitutional challenge to RSA 633:3-a, III-c. *See* Pl.'s Br. 21–28. This argument likewise fails for several reasons.

**i. New Hampshire state courts issued a final judgment on Maravelias's facial constitutional challenge to RSA 633:3-a, III-c.**

Maravelias contends that the *Rooker-Feldman* doctrine does not apply because there is no "conflicting state-court judgment" to preclude his facial constitutional challenge to RSA 633:3-a, III-c. Pl.'s Br. 22. This is factually incorrect.

Maravelias raised the identical constitutional challenge in the New Hampshire Supreme Court in an attempt to overturn the extended stalking order and the social media modification. *See, e.g.*, ECF Doc. #26-2 at 3; ECF Doc #26-3 at 10, 30–45; ECF Doc. #26-4 at 12–17. This argument was rejected by the New Hampshire Supreme Court in its January 16, 2019 order. ECF Doc. #26-1 at 9–10. Under *Rooker-Feldman*, Maravelias cannot raise this claim again at the federal district court. *See Tyler*, 914 F.3d at 51–52.

Maravelias cannot avoid *Rooker-Feldman* because the New Hampshire Supreme Court held that this challenge was not adequately preserved on appeal. Unlike the cases upon which Maravelias relies, the New Hampshire Supreme

16

Court did not rule that it lacked jurisdiction to resolve Maravelias's facial

constitutional challenge to RSA 633:3-a, III-c. *Compare* ECF Doc. #26-1 at 9–10

*with, e.g.*, *Simes v. Huckabee*, 354 F.3d 823, 827 (8th Cir. 2004) (noting that

certain claims may be raised in federal court when the state court dismissed the

claim for lack of jurisdiction); *Gulla v. North Strabane Twp.*, 146 F.3d 168, 172–

73 (3d Cir. 1998) (noting that certain claims may be raised in federal court when

the state court dismissed the claim for the plaintiff's lack of standing).

Rather, Maravelias had a full and fair opportunity to pursue this claim in

New Hampshire circuit court and the New Hampshire Supreme Court. *See, e.g.*,

ECF Doc. #26-4 at 12–14 (Maravelias arguing that "RSA 633:3-a, III-c is

Unconstitutional" and that the "Issue Was Manifoldly Preserved."). Maravelias

could have challenged the constitutionality of RSA 633:3-a, III-c in the New

Hampshire circuit court to preserve this argument for appeal at the New Hampshire

Supreme Court, but he failed to do so. Under *Rooker-Feldman*, this is sufficient to

prevent the federal district court from adjudicating this claim. *See, e.g.*, *Simes*, 354

F.3d at 827 (noting that *Rooker-Feldman* may not apply if "plaintiffs have not been

given a reasonable opportunity to raise their federal claims in the state

proceedings"); *Klimowicz*, 907 F.3d at 66 (holding that a plaintiff's claim was

barred by *Rooker-Feldman* because she neglected to post the required appeal bond

in the state court litigation); *Swartz v. Heartland Equine Rescue*, 940 F.3d 387, 392

17

(7th Cir. 2019), *cert. denied*, 206 L. Ed. 2d 464 (Mar. 23, 2020) (noting that

plaintiffs must have "had a 'reasonable opportunity' to litigate in state court the

claims they are bringing in their federal case for the [*Rooker-Feldman*] bar to

apply" (citation omitted)).

Maravelias's facial constitutional challenge to RSA 633:3-a, III-c would be

barred by *Rooker-Feldman* even if the New Hampshire Supreme Court had not

issued a final ruling on this issue. As Maravelias concedes in his New Hampshire

Supreme Court briefing, this facial constitutional challenge was raised and rejected

in the New Hampshire circuit court. *See* ECF Doc. #26-4 at 12–14. Even assuming

the New Hampshire Supreme Court did not render a decision on Maravelias's

facial constitutional challenge to RSA 633:3-a, III-c, the New Hampshire circuit

court's decision would constitute a final state-court judgment for purposes of

*Rooker-Feldman*. *See, e.g.*, *Klimowicz*, 907 F.3d at 66 (holding that a lower court

judgment was a final state-court judgment when the plaintiff forfeited her right to

appeal by failing to post the required appeal bond); *Swartz*, 940 F.3d at 392.

Even if Maravelias raised the facial constitutional challenge to RSA 633:3-a,

III-c for the first time in the federal district court, which he did not, this claim is

still precluded under the *Rooker-Feldman* doctrine. Although *Rooker-Feldman*

"does not bar a general attack on the constitutionality of a state law that does not

require review of a judicial decision in a particular case," that exception does not

apply "if the relief sought in federal court is directed toward undoing the prior state judgment." *Tyler*, 914 F.3d at 51 (citations and internal quotation marks omitted). The district court lacked jurisdiction over this claim because it was directed at undoing prior New Hampshire state court judgments regarding the stalking order and the social media modification. *Id.*; *Klimowicz*, 907 F.3d at 66–67 (1st Cir. 2018) ("[A] plaintiff cannot escape the *Rooker-Feldman* bar through the simple expedient of introducing a new legal theory in the federal forum that was not broached in state courts."). The district court properly held that it lacked jurisdiction over this claim.

### ii. Maravelias's facial constitutional challenge is precluded by *Rooker-Feldman* because it is directed at overturning New Hampshire state court judgments.

Maravelias contends that his facial constitutional challenge to RSA 633:3-a, III-c is categorically exempt from the *Rooker-Feldman* doctrine. Pl.'s Br. 21–23. This is incorrect.

Federal claims that are "inextricably intertwined" with state court judgments are barred by the *Rooker-Feldman* doctrine. *Bass*, 116 F. App'x at 384. Federal claims are considered "inextricably intertwined" with state court judgments if, in granting the relief sought, the federal court "must either determine that the state judgment[s] [were] erroneously entered or render the state court's judgment[s] ineffectual." *Id.* "[T]he *Rooker-Feldman* jurisdictional bar is not contingent upon

an identity between the issues actually litigated in the prior state-court proceeding and the issues proffered in the subsequent federal suit." *Tyler*, 914 F.3d at 51 (citations and internal quotation marks omitted). Instead, "the critical datum is whether the plaintiff's federal suit is, in effect, an end-run around a final state-court judgment." *Id.* (same omissions).

Maravelias's facial constitutional challenge to RSA 633:3-a, III-c is barred by *Rooker-Feldman* because it is "inextricably intertwined" with final New Hampshire state court judgments. *See, e.g.*, *Homola v. McNamara*, 59 F.3d 647, 650–51 (7th Cir. 1995) (concluding that *Rooker-Feldman* barred challenge to state-court contempt order that resulted from an underlying state court judgment). The sole purpose of this facial challenge is to invalidate the New Hampshire circuit court's stalking order and social media modification and the New Hampshire Supreme Court's affirmances of those decisions. *See Tyler*, 914 F.3d 47; *see also Garry v Geils*, 82 F.3d 1362, 1367 & n.10 (7th Cir. 1996) (holding that it is "particularly apparent" that a plaintiff is seeking to overturn a state court judgment "in cases where the federal plaintiff is actually suing the state court or state court judges"). Maravelias's challenge would have necessarily required the federal district court to reverse decisions of the New Hampshire circuit court and New Hampshire Supreme Court. *See, e.g.*, *DePamphilis*, 2017 WL 3468651 (N.H. July 28, 2017) (unpublished)*;* ECF Doc. #26-1. This is barred under *Rooker-Feldman*.

20

## B. Maravelias's arguments regarding the social media modification are precluded by the *Rooker-Feldman* doctrine.

Maravelias claims he can evade *Rooker-Feldman* because he allegedly raised new arguments in federal district court challenging the social media modification that were not decided in New Hampshire state courts. Pl.'s Br. 28–30. This is legally and factually inaccurate.

Maravelias raised the same challenge to the social media modification in his appeal to the New Hampshire Supreme Court. *See* #26-3 at 10, 54–57; ECF Doc. #26-4 at 19–21. In its order affirming the circuit court's judgment, the New Hampshire Supreme Court wrote that Maravelias was appealing both "orders . . . extending a civil stalking final order of protection . . . and modifying the order's terms." ECF Doc. #26-1 at 1. Although the New Hampshire Supreme Court did not delve into detail about Maravelias's claims regarding the social media modification, it rejected the challenges by holding they were "not sufficiently developed to warrant further review." *Id.* at 11. This constitutes a final state-court judgment for purposes of *Rooker-Feldman*. *See, e.g.*, *Tyler*, 914 F.3d at 50–51 (holding that there was a final state court judgment on claims where the state court held that "nothing in them that required discussion." (citations, brackets, and internal quotation marks omitted)); *Bass*, 116 F. App'x at 382 ("[A] state court decision may activate *Rooker–Feldman* even if the state court only 'implicitly' ruled upon the relevant issue.").

21

Further, as in *Tyler*, there is no suggestion that the New Hampshire state courts will revisit Maravelias's legal challenges to the modified stalking order. *See, e.g.*, *Tyler*, 914 F.3d at 52 (rejecting plaintiff's claims that the state court proceedings had not yet ended and could continue for another ten years). The New Hampshire Supreme Court's January 16, 2019 affirmance of the extended stalking order and the social media modification was final. Maravelias could have appealed to the United States Supreme Court for appellate review of this decision. *See Tyler*, 914 F.3d at 50 ("[T]he only federal court with statutory jurisdiction to review a state court's decision is the [United States] Supreme Court."); 28 U.S.C. § 1257. He, however, did not do so.

Finally, even if Maravelias had not challenged the social media modification on appeal, Maravelias's federal lawsuit would still be subject to the *Rooker-Feldman* jurisdictional bar. Maravelias argued that the social media modification was unconstitutional in the New Hampshire circuit court. *See* ECF Doc. #22 at 7–8, ¶¶ 27–28, 30; *see also* ECF Doc. #22-7; ECF Doc. #22-2 at 5–12. The circuit court rejected Maravelias's arguments when it granted the social modification over Maravelias's objection. ECF Doc. #22-5. If Maravelias had not appealed that determination, the New Hampshire circuit court's order would have become the final state court judgment. In such a scenario, Maravelias's claims would have been precluded by *Rooker-Feldman*. *See, e.g.*, *Klimowicz*, 907 F.3d at 66 (holding

that a lower court judgment could constitute a final state-court judgment for

*Rooker-Feldman* purposes).

### i. The date the mandate was issued is not the date of the final state court judgment for purposes of *Rooker-Feldman*.

Maravelias argues that the state-court actions were not final because he filed

this federal action before the New Hampshire Supreme Court issued its mandate.

*See* Pl.'s Br. 30–32. *See* ECF Doc. No. 33 at 21. This position is mistaken.

Neither the United States Supreme Court nor the First Circuit has required

that a mandate be entered before a state-court judgment is considered final for

*Rooker-Feldman*. Rather, the United States Supreme Court has limited *Rooker-*

*Feldman* to cases where "the losing party in state court filed suit in federal court

after the state proceedings ended, complaining of an injury caused by the state-

court judgment and seeking review and rejection of that judgment." *Exxon Mobil*

*Corp.*, 544 U.S. at 291; *see also Federación de Maestros de Puerto Rico v. Junta*

*de Relaciones del Trabajo de Puerto Rico*, 410 F.3d 17, 24 (1st Cir. 2005) (noting

that under *Exxon Mobil Corp.*, a state court judgment is sufficiently final for

operation of the *Rooker-Feldman* doctrine "when the state court proceedings have

ended." (citations, brackets, and quotation marks omitted)). For *Rooker-Feldman*

purposes, the underlying state-court proceedings in this case ended January 16,

2019—the date the New Hampshire Supreme Court entered its final order affirming the extended stalking order and the social media modification.

Tying the end of state-court proceedings to the issuance of a mandate would undermine the purpose of *Rooker-Feldman*. The New Hampshire Supreme Court often issues mandates days, if not weeks, after it issues decisions. *See* N.H. Sup. Ct. R. 24; N.H. Sup. Ct. R. 22. If the end of state-court proceedings is considered to be the date the mandate is issued, rather than the date the final decision is issued, state-court litigants could routinely evade *Rooker-Feldman* by racing to file a lawsuit in federal district court during this interim period. The *Rooker-Feldman* doctrine is designed to preserve the exclusive jurisdiction of the Supreme Court of the United States to hear appeals from final state-court judgments. *See Klimowicz*, 907 F.3d at 64–65. If dissatisfied state-court litigants were permitted to file in federal district court during this timeframe, it would render the *Rooker-Feldman* doctrine obsolete, and allow litigants to evade the procedural and jurisdictional requirements of 28 U.S.C. §1257. Such a loophole cannot exist.

### ii. The relevant state court litigation is not ongoing.

Maravelias contends that *Rooker-Feldman* does not apply because the state court proceedings are ongoing. Pl.'s Br. 32–38. Maravelias's argument is misplaced.

24

On March 8, 2019, the New Hampshire circuit court extended the stalking order for another year. *Id.* at 33. On May 31, 2019, Maravelias filed an appeal with the New Hampshire Supreme Court challenging this extension. *Id*. Maravelias alleges that, in light of this new appeal, the litigation in New Hampshire state courts is ongoing. *Id.*

Maravelias's contention fails for two reasons. First, Maravelias is not contesting the circuit court's March 2019 order in this federal lawsuit. Rather, Maravelias is challenging the New Hampshire circuit court's June 2018 extension of the stalking order and August 2018 imposition of the social media modification. *See generally* ECF Doc. #22. This lawsuit is not, and never was, a challenge to the circuit court's March 2019 order extending the stalking order and social media modification; it is an attempt to re-litigate and appeal Judge Coughlin's June 2018 and August 2018 orders. *See generally id.*

This Court rejected a similar argument in *Tyler*. 914 F.3d 47. In that case, this Court concluded that there was "no suggestion that the [state court would] ever reconsider" the claims the plaintiff raised in federal court. *Id.* at 52 (citation omitted). There is likewise no suggestion that the New Hampshire circuit court or the New Hampshire Supreme Court will reconsider Maravelias's legal challenges

to the June 2018 and August 2018 orders.[8] Similar to *Tyler*, the state-court

judgments with respect to these orders are final state-court judgments for purposes

of *Rooker-Feldman*.

Second, as a practical matter, Maravelias should not be able to avoid

*Rooker-Feldman* upon filing a new appeal in state court. If this were so, state-court

losers could easily sidestep *Rooker-Feldman* by filing a new appeal in state court

concurrently with filing an appeal in federal district court. This would undercut the

purpose of *Rooker-Feldman*: to prevent dissatisfied state-court litigants from using

the federal district court as a forum for appellate review. *See Klimowicz*, 907 F.3d

at 64–65.

### iii. Maravelias cannot evade *Rooker-Feldman* by alleging that the New Hampshire circuit court's decisions were *ultra vires*.

Maravelias claims that the can evade *Rooker-Feldman* because the New

Hampshire circuit court allegedly acted in clear absence of jurisdiction when it

imposed the social media modification. Pl.'s Br. 38–39; ECF #22 23–26. This

argument is unavailing.

---

[8] Maravelias also would be barred from relitigating the legal issues associated with the June and August 2018 orders under the doctrine of collateral estoppel. *See generally Appeal of Silva*, 172 N.H. 183, 191–92 (2019) (setting forth elements of collateral estoppel).

This claim is barred by the *Rooker-Feldman* doctrine because Maravelias raised substantially similar arguments in New Hampshire state courts. *See Tyler*, 914 F.3d at 51 (holding that issues actually litigated in state court and the issues subsequently raised in federal court need not be the same for *Rooker-Feldman* to apply). In the New Hampshire Supreme Court, Maravelias claimed the New Hampshire circuit court violated his due process rights when it imposed the social media modification. ECF Doc. #26-3, at 10 ("Did the trial court violate Respondent's procedural and/or substantive due process rights?"); *id.* at 57 ("In this brief, Maravelias advances similar arguments against the underlying stalking order extension which are equally applicable to this separate order granting protective order terms. . . . Maravelias here incorporates by reference those arguments."); *see also Tyler*, 914 F.3d at 50 (noting that similar claims are barred by *Rooker-Feldman* if they attempt to overturn the state court judgement). The New Hampshire Supreme Court rejected this claim on appeal. ECF Doc. #26-1 at 11. In federal district court, Maravelias raised the near-identical allegation. ECF Doc. #22 at 23–26, ¶¶ 124–133 ("Count 5: The 'Extended Terms', . . . Violate Substantive Due Process Since They are Ultra Vires Issued in Complete Absence of Legal Authority."). The district court, therefore, did not have jurisdiction to adjudicate this claim under *Rooker-Feldman*.

Even if Maravelias were able to evade *Rooker-Feldman* on this claim—and

he cannot—there is no indication that the New Hampshire circuit court acted in

clear absence of jurisdiction by imposing the social media modification.[9] Rather,

the circuit court acted pursuant to New Hampshire statutory law. *See, e.g.*, RSA

633:3-a, III-a ("A person who has been the victim of stalking as defined in this

section may seek relief by filing a civil petition in the district court in the district

where the plaintiff or defendant resides."); RSA 633:3-a, III-c (allowing a circuit

court to "grant such relief as may be necessary to provide for the safety and well-

being of the plaintiff"); RSA 175-B:5 (providing a non-exclusive list of relief that a

circuit court may impose in a stalking order); *see also United States v. Browne*,

834 F.3d 403, 405 (3d Cir. 2016) ("The advent of social media has presented the

courts with new challenges in the prosecution of criminal offenses . . . ."). Further,

Maravelias alleges only that the New Hampshire circuit court acted beyond its

judicial authority by imposing the social media modification. *See* Pl.'s Br. 38–40.

In other words, Maravelias claims that the circuit court acted in *excess* of its

jurisdiction—not in *clear absence* of its jurisdiction. *See In re James*, 940 F.2d 46,

---

[9] If the New Hampshire circuit court lacked jurisdiction to issue the social media modification, the New Hampshire Supreme Court would have addressed this issue in its January 16, 2019 order regarding Maravelias's appeal. *See In re Guardianship of K.B.*, 172 N.H. 646, 648 (2019) (noting that the New Hampshire Supreme Court may address the jurisdiction of the trial court sua sponte); Pl.'s App. 2–12.

52–53 (3d Cir. 1991) (describing state court decisions made in clear absence of jurisdiction). This is insufficient to defeat the *Rooker-Feldman* jurisdictional bar.

**II.    This lawsuit should be dismissed because it is moot.**

This Court should also dismiss this lawsuit as moot because it is no longer

live and the parties lack a legally cognizable interest in the outcome.

"The Constitution confines the jurisdiction of the federal courts to actual

cases and controversies." *Ford v. Bender*, 768 F.3d 15, 29 (1st Cir. 2014) (citation

and internal quotation marks omitted). A case generally becomes moot "when the

issues presented are no longer 'live' or the parties lack a legally cognizable interest

in the outcome," that is, *"when the court cannot give any 'effectual relief' to the*

potentially prevailing party." *See ACLU of Mass. v. United States Conf. of*

*Catholic Bishops*, 705 F.3d 44, 52 (1st Cir. 2013) (citations and internal quotation

marks omitted).  "Events subsequent to a district court's entry of judgment may

render a case moot and preclude appellate review of the merits." *Ford*, 768 F.3d at

29. "[I]ssuance of a declaratory judgment deeming past conduct illegal is . . . not

permissible as it would be merely advisory." *See ACLU of Mass.*, 705 F.3d at 53.

"For declaratory relief to withstand a mootness challenge, the facts alleged must

show that there is a substantial controversy of sufficient immediacy and reality to

warrant the issuance of a declaratory judgment." *Id.* at 53–54.

Maravelias's lawsuit is now moot. The case is no longer live because the

stalking order that is the subject of the Amended Complaint was dismissed on

February 4, 2020 by order of the New Hampshire circuit court. *See* Pl.'s App. at 5

(Order on Motion for Return of Firearms and/or Weapons Permit). The dismissal of the stalking order is an event subsequent to the federal district court's entry of judgment that renders this case moot and precludes appellate review on the merits. *Id.*; *see also Ford*, 768 F.3d at 29; *ACLU of Mass.*, 705 F.3d at 52. A judgment on whether New Hampshire RSA 633:3-a, III-c is unconstitutional and whether the social media modification to the stalking order was unlawful would have no impact on Maravelias's rights. *See ACLU of Mass.*, 705 F.3d at 53. Instead, such a determination would be merely advisory. *See id.* Because there is no actual "case or controversy," the federal courts do not have jurisdiction. *See Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976).

Maravelias cannot avoid the applicability of the mootness doctrine because his claims are not capable of repetition yet evading review. *See ACLU of Mass.*, 705 F.3d at 56–57. "The capable-of-repetition doctrine applies only in exceptional situations." *Id.* at 57 (brackets and internal quotation marks omitted). Maravelias has not shown and cannot show that: (1) there is a reasonable expectation that he will be subjected to the same action again; and (2) the challenged action was in its duration too short to be fully litigated prior to its cessation or expiration. *See id.* Even if Maravelias asserted this exception, which he did not, he could not meet his burden because (1) he would only be subjected to the same action again if he repeated the same behavior that brought the original stalking order and the social

31

media modification, *see* RSA 633:3-a, and (2) the challenged conduct and remedy was already litigated extensively in the New Hampshire circuit court and New Hampshire Supreme Court, *see, e.g.*, ECF Doc. #26-1.

Maravelias suggests that the case is not moot because the district court could award nominal damages against Judge Coughlin and nominal or compensatory damages against the Windham Defendants. *See* Pl.'s Br. 41–44. Maravelias's argument is unavailing for several reasons. First, Maravelias has not preserved this argument. Maravelias's lengthy Amended Complaint makes no mention of any claim for nominal or compensatory damages. *See generally* ECF Doc. #22. In Maravelias's eleven prayers for relief, there is no reference to a claim for monetary damages. *See id.* at 33–34. Instead, there is one request for preliminary injunction, *id.* at 33, ¶ I, one request for a permanent injunction, *id.* at 33, ¶ IX, six requests that the social media modification be deemed unconstitutional, *id.* at 33–34, ¶ II–IV, VI–VIII, one request that the social media modification be deemed a violation of New Hampshire law, *id.* at 33, ¶ V, one request that the district court award Maravelias "the reasonable costs and disbursements of this action," *id.* at 34, ¶ X, and one request that the district court "[g]rant any further relief as may be deemed just and proper," *id.* at 34, ¶ XI. Not once in any of Maravelias's pleadings to the district court did he reference seeking nominal or compensatory damages. Because Maravelias did not articulate these damages claims in the district court, they are

32

not preserved and may not be raised on appeal. *See Thomas R.W., By & Through Pamela R. v. Massachusetts Dep't of Educ.*, 130 F.3d 477, 480 (1st Cir. 1997).

Maravelias further contends that the relief he now seeks is "encapsulated" in his prayer that the district court "grant any further relief as may be deemed just and proper." *See* Pl.'s Br. 42; ECF Doc. #22 at 34, ¶ XI. This argument is mistaken. The stock language contained in this prayer for relief invites the trial court to use its equitable powers to manage the lawsuit. A plaintiff may not rely on this "general prayer" to add new types of damages when faced with a mootness challenge. *See, e.g.*, *Thomas*, 130 F.3d at 480 (finding that claim for damages raised on appeal in order to avoid mootness was waived when the claim was based on "such further relief as this court deems just and proper" provision in complaint); *Uzuegbunam v. Preczewski*, 781 F. App'x 824, 829 (11th Cir. 2019), *cert. granted*, No. 19-968, 2020 WL 3865254 (U.S. July 9, 2020) (holding that complaint that vaguely sought "monetary damages" and contained a prayer for relief that sought nominal damages insufficient to assert claim for compensatory damages and avoid dismissal on grounds of mootness); *id.* at 830–31 (holding that a plaintiff could not evade dismissal on the basis of mootness when nominal, but compensatory, damages were the only monetary relief sought).

Moreover, allowing Maravelias to use this generic prayer for relief to assert new categories of damages would prejudice the defendants. The language

contained in this prayer failed to provide the defendants with adequate notice of the types of relief sought. For example, if Maravelias had pleaded these damages at the outset, it likely would have triggered certain defendants' insurance policies and allowed them to obtain representation through their insurance carriers. And with respect to the New Hampshire Attorney General, who was only named in his official capacity, *see* ECF Doc. #22 at 3, ¶ 10–11, and Judge Coughlin, who was named both in both his individual and official capacities, *see id.* at 3, ¶ 9, any request for damages would have triggered an Eleventh Amendment defense, which neither defendant had occasion to raise before the district court.

Finally, Maravelias alleges that he can avoid dismissal for mootness because he may amend his complaint to seek nominal and/or compensatory damages against Judge Coughlin and the Windham Defendants if this case is reversed and remanded. *See* Pl.'s Br. 41–44. Maravelias's argument is a nonstarter because (1) the district court's decision should be affirmed; (2) the district court is the court that would decide whether Maravelias may again amend his complaint, *see* Fed. R. Civ. P. 15(a)(2); and (3) Maravelias cannot supplement allegations of damages on appeal to survive a mootness challenge, *see, e.g.*, *Atlas Brew Works, LLC v. Barr*, No. 19-5258, 2020 WL 4106557, at *3 (D.C. Cir. July 15, 2020) (holding that a plaintiff cannot supplement allegations of damages "to survive mootness on appeal"); *Uzuegbunam*, 781 F. App'x at 832–33 (holding that district court did not

34

err in denying a plaintiff's request to "clarify" claim for compensatory damages in complaint when the plaintiff made no representation as to how exactly the complaint would be amended to support a request for compensatory damages).

Maravelias's lawsuit is moot and should be dismissed.

### III.     Maravelias lacks standing against the defendants.

"[T]hose who seek to invoke the jurisdiction of the federal courts must satisfy the threshold requirement imposed by Article III of the Constitution by alleging an actual case or controversy." *Lyons v. L.A.*, 461 U.S. 95, 101 (1982) (quotation omitted). A plaintiff must "demonstrate a personal stake in the outcome in order to assure that concrete adversenesss which sharpens the presentation of the issues necessary for the proper resolution of constitutional questions." *Id.* (citation and internal quotation marks omitted). "Abstract injury is not enough." *Id.* "The plaintiff must show that he has sustained or is immediately in danger of sustaining some direct injury as the result of the challenged official conduct and the injury or threat of injury must be both real and immediate, not conjectural or hypothetical." *Id.* at 101–02 (citation and internal quotation marks omitted). "[B]ecause standing is a prerequisite to a federal court's subject matter jurisdiction, the absence of standing may be raised at any stage of a case." *Hochendoner v. Genzyme Corp.*, 823 F.3d 724, 730 (1st Cir. 2016).

Maravelias lacks standing. Maravelias's lawsuit is effectively a "pre-enforcement challenge" to the extended stalking order and the social media modification. It is undisputed that Maravelias has not been arrested or indicted for violating the stalking order. Further, aside from the Windham Defendants' investigation of a complaint that Maravelias allegedly violated the stalking order,

Maravelias has not alleged that the defendants have taken any action against him. Instead, Maravelias's allegations are limited to conclusory statements that the defendants have, among other things, "chilled his public speech," "compelled him to forfeit defending his falsely maligned reputation," caused him to "tremble[] in fear of punishment," and caused him to suffer "extreme emotional distress and trauma in connection with being subject to such unlawful, arbitrary terms." ECF Doc. #22 at 11–12, ¶¶ 52–56. Maravelias has not pleaded a sufficient injury to confer standing against the defendants. *See, e.g.*, *Lyons*, 461 U.S. at 101–02 (1982) (requiring a plaintiff to plead that he has "sustained or is immediately in danger of sustaining some direct injury . . . [that is] both real and immediate, not conjectural or hypothetical" (internal quotation marks omitted)).[10]

     This lawsuit should be dismissed.

---

[10] Similarly, Maravelias's new claims for damages fail to confer standing. *See generally supra* section II.

**IV.     Maravelias's claims against Judge Coughlin are barred by absolute judicial immunity.**

"The doctrine of judicial immunity protects judges from 'civil liability for any normal and routine judicial act.'" *Di Giambattisa v. McGovern*, 974 F.2d 1329 (Table), 1992 WL 214444, at *1 (1st Cir. Sept. 4, 1992) (quoting *Cok v. Cosentino*, 876 F.2d 1, 2 (1st Cir. 1989)). The "breadth of the protection is fulsome, shielding judges even when their actions are malicious, corrupt, mistaken, or taken in bad faith . . . ." *Zenon v. Guzman*, 924 F.3d 611, 616 (1st Cir. 2019). "[W]hen a judge carries out traditional adjudicatory functions, he or she has absolute immunity for those actions." *Id.* (citing *Goldstein v. Galvin*, 19 F.3d 16, 25 (1st Cir. 2013)). "[I]mmunity is overcome only in cases where a judge is carrying out a nonjudicial action, or in instances where a judge takes an action, though seemingly 'judicial in nature,' that is 'in the complete absence of all jurisdiction.'" *Id.* at 617 (quoting *Mireles v. Waco*, 502 U.S. 9, 11–12 (1991) (per curiam)); *see also Stump v. Sparkman*, 435 U.S. 349, 356–57 (1978) ("A judge will not be deprived of immunity because the action he took was in error, was done maliciously, or was in excess of his authority; rather, he will be subject to liability only when he has acted in clear absence of all jurisdiction." (citations and internal quotation marks omitted)).

Maravelias's claims against Judge Coughlin arise from judicial rulings he made in his capacity as a New Hampshire circuit court judge. Maravelias alleges

that Judge Coughlin acted beyond his judicial authority by extending the civil stalking order and imposing the social media modification. In other words, Maravelias claims that Judge Coughlin acted in *excess* of his jurisdiction—not in *clear absence* of jurisdiction. *See* Pl.'s Br. 38–40; ECF Doc. #22 at 23–26, ¶¶ 124–33. RSA 633:3-a, III-a, III-c (endowing New Hampshire circuit courts with jurisdiction to hear civil stalking petitions, grant civil stalking orders, extend such orders, and "grant such relief as may be necessary to provide for the safety and well-being of the plaintiff"). This type of claim is barred by absolute judicial immunity. *See Stump*, 435 U.S. at 356–57; Pl.'s Add. 19 n.4.

Simply because Judge Coughlin fashioned an allegedly novel restriction does not mean that he acted in clear absence of jurisdiction. New Hampshire law surrounding civil stalking orders provides circuit courts with flexibility to fashion remedies that protect plaintiffs who feel threatened. *See* RSA 633:3-a, III-a, III-c; *see also, e.g.*, *United States v. Browne*, 834 F.3d 403, 405 (3d Cir. 2016) ("The advent of social media has presented the courts with new challenges in the prosecution of criminal offenses . . . ."). Judge Coughlin acted well within the powers provided him by New Hampshire statutory law.

Judge Coughlin is entitled to absolute judicial immunity.

**V.    Maravelias's claims of "improper judicial activism" are false.**

**A. The district court did not improperly construe the facts against Maravelias.**

Maravelias alleges that the district court drew inferences in the light least favorable to him in violation of the motion to dismiss standard. Pl.'s Br. 45–51; Fed. R. Civ. P. 12; *Gordo-Gonzalez*, 873 F.3d at 48 (citation omitted). This contention is baseless.

The district court derived the relevant factual background from public New Hampshire Supreme Court decisions. *See, e.g.*, Pl.'s Add. 10 ("This case has been extensively litigated over the years and the relevant factual background has been set forth at length in earlier judicial opinions."). Further, even if the district court did err in its factual account of the case—and it did not—Maravelias does not demonstrate how any of the alleged factual inaccuracies invalidated the district court's holding that the lawsuit was barred by the *Rooker-Feldman* doctrine. *See generally* Pl.'s Br. 45–51.

**B. The district court was not biased against Maravelias.**

Maravelias infers that, based on the tone of its order, the district court was biased against him. Pl.'s Br. 45–51. Maravelias's objection is unavailing. "[T]rial judges are not required either to mince words or to sugar-coat their views." *United States v. Caramadre*, 807 F.3d 359, 374 (1st Cir. 2015) (citations omitted). "Blunt language, without more, does not translate into a showing of judicial bias." *Id.* The

40

district court was not biased against Maravelias—it merely concluded that it did not have jurisdiction to decide Maravelias's claims and that Maravelias's claims likely were without merit.

Maravelias also speculates that the district court retaliated against him because he named a judge as a defendant in this lawsuit. *See* Pl.'s Br. 48. This unsupported allegation is inadequate to establish the existence of unlawful bias or retaliation. *Cheney v. U.S. Dist. Court for D.C.*, 541 U.S. 913, 914 (2004) ("[W]hether a judge's impartiality can 'reasonably be questioned' is to be made in light of the facts as they existed, and not as they were surmised or reported.").

The district court's ruling should be affirmed.

## CONCLUSION

WHEREFORE, the respondent respectfully requests this Court to affirm the

judgment of the United States District Court for the District of New Hampshire.

Respectfully submitted,

GORDON J. MACDONALD

By his attorneys:

July 27, 2020

*/s/ Samuel R.V. Garland*
Samuel R.V. Garland, No. 1189913
Assistant Attorney General
N.H. Department of Justice
Civil Bureau
33 Capitol Street
Concord, NH 03301-6397
(603) 271-3650
samuel.garland@doj.nh.gov

*/s/ Weston R. Sager*
Weston R. Sager, NH Bar No. 269463*
Attorney
N.H. Department of Justice
Appeals Unit
33 Capitol Street
Concord, NH 03301-6397
(603) 271-3671
weston.sager@doj.nh.gov
* *First Circuit application pending*

JOHN J. COUGHLIN

By his attorneys:

July 27, 2020

*/s/ Laura E. Lombardi*
Laura E. Lombardi, No. 104633
Senior Assistant Attorney General
N.H. Department of Justice
Civil Bureau
33 Capitol Street
Concord, NH 03301-6397
(603) 271-3650
laura.lombardi@doj.nh.gov

*/s/ Nancy J. Smith*
Nancy J. Smith, No. 25497
Senior Assistant Attorney General
N.H. Department of Justice
Civil Bureau
33 Capitol Street
Concord, NH 03301-6397
(603) 271-3650
nancy.smith@doj.nh.gov

TOWN OF WINDHAM ex rel.
WINDHAM POLICE DEP'T, and
GERALD S. LEWIS

By their attorney:

July 27, 2020

*/s/ Eric A. Maher*
Eric A. Maher, No. 1191871
Donahue, Tucker, & Ciandella, PLLC
16 Acadia Lane
Exeter, NH 03833
(603) 778-0686
emaher@dtclawyers.com

PATRICIA CONWAY

By her attorney:

July 27, 2020

*/s/ Christopher Cole*
Christopher Cole, No. 8725
Sheehan Phinney Bass & Green, PA
1000 Elm Street, P.O. Box 3701
Manchester, NH 03105-3701
(603) 627-8223
ccole@sheehan.com

## CERTIFICATE OF COMPLIANCE

1.     This brief complies with the type-volume limitation of Fed. R. App. P.

32(a)(7)(B) because, excluding the parts of the brief exempted by Fed. R. App. P.

32(f), this brief contains 8,533 words.

2.     This brief complies with the typeface requirements of Fed. R. App.

32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this

brief has been prepared in a proportionally spaced typeface using Microsoft Word

with 14-point Times New Roman.


July 27, 2020                          */s/ Samuel R.V. Garland*
                                       Samuel R.V. Garland


## CERTIFICATE OF SERVICE

I, the undersigned, do hereby certify that I have served the petitioner, who is

*pro se*, via the court's electronic filing system and via U.S. mail at the following

address:

Paul J. Maravelias
34 Mockingbird Hill Rd
Windham, NH 03087


July 27, 2020                          */s/ Samuel R.V. Garland*
                                       Samuel R.V. Garland